# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL ROUX, JOHN DUFF III, HENRY SMITH, and BRUNO NISPEL,<br><br>      Plaintiffs,<br><br>v.<br><br>KRISHNA OKHANDIAR, REMILIA CORPORATION LLC, a Delaware limited liability company, and REMILIA INDUSTRIES, LLC, a Delaware limited liability company,<br><br>      Defendants. | CIVIL ACTION NO. 1:23-CV-01056-GBW |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Bradley W. Madsen, Esq
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Tel: (801) 833-0477
bwmadsen@michaelbest.com
sjoffee@michaelbest.com
esstrassberg@michaelbest.com

Christopher P. Simon, Esq.
David G. Holmes, Esq.
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel: (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF ARGUMENT ............................................................................................ 1

III. STATEMENT OF ALLEGED FACTS................................................................................ 2
    A. Plaintiffs and Okhandiar Start a Collective Venture in 2020 through 2021. .......... 2
    B. In Late 2021 the Parties Allegedly Agreed to Eventually Form a Corporation, if Necessary, and to Grant Plaintiffs a "Significant Stake" or "Substantial Amount of Equity" Subject to Duff's First Rights. ................................................. 3
    C. The Formation of RemCorp and RemIndustries....................................................... 4

IV. ARGUMENT........................................................................................................................ 5
    A. The Standard of Decision......................................................................................... 5
    B. The First Amended Complaint Fails to State any Plausible Claim Arising From the Alleged Promises to Make Plaintiffs Equity Holders in any Entity........ 6
        1. Plaintiffs' Contract Claims (Counts I, II, IV and V) Fail in the Absence of an Enforceable Contract for Equity. ...................................... 10
        2. Plaintiffs' Claim for Declaratory Relief and Injunctions (Count III) Fails............................................................................................................ 10
        3. Plaintiffs' Claim for Promissory Fraud (Count VI) Fails. ........................ 11
        4. Plaintiffs' Claim for Negligent Misrepresentation (Count VII) Fails....... 12
        5. Plaintiffs' Claim for Promissory Estoppel (Count VIII) Fails.................. 12
        6. Plaintiffs' Claim for Equitable Estoppel (Count IX) Fails. ...................... 13
        7. Plaintiffs' Claim For Tortious Interference With Contractual Relations (Count XIII) Fails. .................................................................... 14
    C. In the Alternative, Plaintiffs Should Be Ordered to Provide a More Definite Statement Regarding the Facts Supporting Their Claims..................................... 14

V. CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................. 5

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) ......................................................................... 6

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) .................................................................. 5, 6

*Harmon v. Del. Harness Racing Comm'n*, 62 A.3d 1198 (Del. 2013) ......................................... 13

*Hyetts Corner, LLC v. New Castle Cty.*, 2021 Del. Ch. LEXIS 208 (Del. Ch. Sep. 14, 2021) .... 13

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....................................... 6

*Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458 (3d Cir. 2021) ....................... 5

*LG Elecs., Inc. v. Asko Appliances, Inc.*, 2012 U.S. Dist. LEXIS 86214 (D. Del. June 21, 2012) 7, 9

*Lum v. Bank of Am.*, 361 F.3d 217 (3rd Cir. 2004) ........................................................................ 11

*Luscavage v. Dominion Dental USA, Inc.*, 2007 Del. Super. LEXIS 88 (Super. Ct. Mar. 20, 2007) .................................................................................................................................... 14

*McCrone v. Acme Markets*, 561 F. App'x 169 (3d Cir. 2014) ....................................................... 6

*Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457 (D. Del. 2008) ..... 7

*Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705 (D. Del. 2017) ...................... 6

*Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, 2009 U.S. Dist. LEXIS 32201 (D. Del. Apr. 16, 2009) ................................................................................................................. 7

*Rust v. Rust*, 2023 Del. Ch. LEXIS 93 (Del. Chanc., Apr. 27, 2023) ............................................. 8

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ............................................................................. 6

*See Cavi v. Evolving Sys. NC*, 2018 U.S. Dist. LEXIS 86971 (D. Del. May 23, 2018) ............... 12

*Spizzirri v. Zyla Life Scis.*, 802 Fed. Appx. 738 (3d Cir. 2020) ..................................................... 6

*Tigo Energy Inc. v. Sma Solar Tech. Am. LLC*, 2024 U.S. Dist. LEXIS 38094 (D. Del. Mar. 4, 2024) ....................................................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 1, 5, 6, 13, 17

Fed. R. Civ. P. 8 ............................................................................................................................... 5

Fed. R. Civ. P. 9 ................................................................................................................ 7, 11, 12, 13, 14

**I.     NATURE AND STAGE OF THE PROCEEDINGS**

Krishna Okhandiar ("Okhandiar"), Remilia Corporation LLC ("RemCorp"), and Remilia Industries LLC ("RemIndustries") (collectively "Defendants") respectfully submit this brief in support of their motion to dismiss the First Amended Complaint ("FAC"; D.I. 8) of Plaintiffs Maxwell Roux ("Roux"), John Duff III ("Duff"), Henry Smith ("Smith"), and Bruno Nispel's ("Nispel") (collectively "Plaintiffs") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(f). This motion is Defendants' first response to a complaint in this matter.

**II.    SUMMARY OF ARGUMENT**

Plaintiffs fail to adequately allege facts that can support their claims for equity ownership in RemCorp or any other entity. All claims that rely upon their inadequate pleading of a contract for equity ownership must fail and be dismissed under Rule 12(b)(6). This includes Plaintiffs' causes of action sounding in contract for breach of fiduciary duty (count I), constructive trust (count II), breach of collective venture agreements (count IV), and breach of the implied covenant of good faith and fair dealing (count V). The defect also invalidates Plaintiffs' causes of action that fundamentally require a finding of a promise to grant equity ownership to Plaintiffs, including the claims for declaratory judgments and injunctions (count III), promissory fraud (count VI), negligent misrepresentation (count VII), promissory estoppel (count VIII), equitable estoppel (count IX), and tortious interference with contractual relations (count XIII).

In the alternative, if the Court agrees with Defendants that Plaintiffs have failed to adequately plead the factual basis for their claims, but concludes that dismissal of any or all of the claims targeted in this motion is not merited, Defendants ask the Court to order Plaintiffs to provide a more definite statement of their claims pursuant to Fed. R. Civ. P. 12(f). Defendants "are entitled

1

to a *pleading* that makes the allegations sufficiently clear that they can frame a responsive pleading." *Moretti v. Hertz Corp.*, 2015 U.S. Dist. LEXIS 35627, *14 (D. Del. 2015).

### III. STATEMENT OF ALLEGED FACTS

The following "facts" are those alleged by Plaintiffs in the FAC. To the extent these allegations plead plausible facts, they are presumed true for the purposes of the motion on Rule 12(b)(6) grounds. However, Defendants note their strong disagreement with many of these facts as alleged and reserve the right to challenge them if this case proceeds. As detailed below, Plaintiffs allege that they were promised an unspecified amount and type of ownership in a non-existent entity that would be formed only if all parties later agreed to the formation. Additionally, the un-specified ownership amounts were subject to express conditions that were never met, as found in an alleged agreements with Plaintiff Duff. Cumulatively, the alleged facts make clear that Plaintiffs do not plausibly allege essential and required terms of a contract for ownership of equity.

### A. Plaintiffs and Okhandiar Start a Collective Venture in 2020 through 2021.

Plaintiffs are four individuals, each of whom claims to have been, along with Okhandiar, the "founding member[s] of the unincorporated joint venture collective known as Remilia." FAC ¶¶ 6-10. Plaintiffs allege that they "met Okhandiar through a community of digital artists and began collaborating as friends in 2020 and 2021." *Id*. at ¶ 26. The five "founders" ultimately "created Remilia, an unincorporated joint venture digital art collective association . . . whose primary business is creating and distributing art NFTs and related NFT projects . . . ." *Id.* at ¶ 27. Each of the "founders" would supposedly "participate in the development, growth, operation and management of the Collective Venture," and each would contribute to the Venture, including intellectual property, but each "founder" "also "retained the right to exit the Collective Venture and remove their lifetime contributions from it at any time." *Id.* at ¶¶ 28-29.

> B.     **In Late 2021 the Parties Allegedly Agreed to Eventually Form a Corporation, if Necessary, and to Grant Plaintiffs a "Significant Stake" or "Substantial Amount of Equity" Subject to Duff's First Rights.**

Plaintiffs further allege that each of them, and Okhandiar, "was to be an equity holder in RemCo when formed and incorporated," and that the five "founders" agreed upon a management structure through which Okhandiar would hold two of the four votes necessary to approve strategic decisions for the Collective Venture. *Id.* at ¶ 31. The "founders" then claim to have "considered, negotiated, and in some instances entered into" a series of written agreements in the last six months of 2021, many of which are attached to the Amended Complaint, which memorialized and formalized what the parties had in fact agreed to. *Id.* at ¶ 32. Plaintiffs allege that these 2021 agreements included provisions to "form and incorporate a corporation" "[a]s it became necessary". *Id.* at ¶ 33, part d. Okhandiar was designated to establish the eventual corporation "when and as agreed," and the Plaintiffs "were each to be considered 'co-founders' and 'equity holders' in the [corporation], which was also supposed to include a shareholder agreement between them." *Id.* at part e. Plaintiffs clarify that it "was Okhandiar's responsibility to form [the corporation] as agreed by the Founding Group's [sic] when appropriate." *Id.* at ¶ 67. Plaintiffs define the term "Agreement" as "concerning the management of the Collective Venture and the eventual structure and formation of a corporate entity that would be owned by the Founding Group to be an agent for the Collective Venture, and how the agent-corporation would be governed and managed." *Id.* at ¶ 32. Hence, when Plaintiffs use the term "Agreements" throughout the First Amended Complaint, they are referring expressly to an agreement regarding the formation and ownership of the eventual corporation.

As to specific individuals, Plaintiffs allege it was agreed that Smith would "be recognized" as a "co-founder with significant stake in Remilia." *Id.* at ¶ 35 (citing Exhibit A to FAC, the Smith LOI); *see also id.* at ¶ 37.

3

Nispel, similarly, was allegedly recognized "[a]s a co-founder with significant stake in Remilia" and "was to be issued a significant equity stake in [the corporation] upon its formation." *See id.* at ¶¶ 40 - 41 (incorporating Exhibit B thereto, which contains quoted language at D.I. 16-1, page 8).

Duff allegedly agreed in 2021 to "the same general terms" as Smith and Nispel and was also to receive "a significant equity ownership stake." *Id*. at ¶ 43. The agreement with Duff was modified in December of 2022 (after the formation of the corporate entities, described below) when Duff executed an "Agreement to Negotiate" stating that he and Okhandiar "intend to come to an agreement on the initial shareholding distribution for Remilia Corporation LLC, with a view to produce and sign a shareholders' agreement." *See id.* at ¶ 78 (citing exhibit J with quoted language, D.I. 16-1 page 34). Duff's "shareholding allotment" would be "in writing before any further shares are issued or allotted, including to other founders, investors or employees." *Id.*

The agreement with Roux was allegedly different from the others, as Roux was "acknowledged as a Remilia co-founder and was to receive a substantial amount of equity resulting in his 'serious exposure' to RemCo's ownership." *Id.* at ¶ 42 (citing Exhibit C, D.I. 16-1, page 12). But it is not alleged that Roux signed the "LOI" agreement agreed to by the other Plaintiffs. *See id*. at ¶¶ 35 (Smith LOI), 40 (Nispel LOI), and 43 (Duff LOI). Nor is the FAC clear as to when Roux supposedly became a "co-founder," and the only document referenced in the FAC relating to Roux's role is a single "Message" supposedly sent on December 13, 2021, stating only that the sender "plan[s] to distribute equity," and that Roux "will have serious exposure." FAC at ¶ 42 and Exhibit C, D.I. 16-1 page 12).

    **C.**    **The Formation of RemCorp and RemIndustries.**

Plaintiffs allege that "by July/August 2022," a "need arose to form the envisioned agent-corporation [. . .] so that the Collective Venture could continue," and that it was "Okhandiar's

4

responsibility to form [the corporation] as agreed by the Founding Group's [sic] when appropriate." *Id*. at ¶ 67. Plaintiffs then accuse Okhandiar of unilaterally forming a corporation, RemCorp, in July of 2022 as an attempt to seize control of the Collective Venture and excluding Plaintiffs as "equity owners." *Id*. at ¶ 72. Okhandiar allegedly formed a second corporation, RemIndustries, in October of 2022, and did not include Plaintiffs as "equity owners." *Id*. at ¶ 73. By November 15, 2022, Plaintiffs "beleiv[ed] they were already equity owners of RemCorp" and even "members of its Executive Board[.]" *Id*. at ¶ 76. In December of 2022, Duff executed the Agreement to Negotiate, described above, which stated that he "intend[ed] to come to an agreement on the initial shareholding distribution for Remilia Corporation LLC, with a view to produce and sign a shareholders' agreement." *See id.* at ¶ 78. On August 22, 2023, Plaintiffs requested, among other things and alternatives, "that they be issued their equity shares and control of RemCorp" by way of correspondence from their attorneys. *Id*. at ¶ 82.

## IV. ARGUMENT

### A. The Standard of Decision.

Rule 12(b)(6) permits the Court to evaluate the allegations of a complaint, to consider integral documents attached thereto, and to dismiss claims when the pleaded facts cannot establish that the plaintiff is entitled to relief.

> To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of

5

> action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).
>
> In evaluating a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Federal Rule of Civil Procedure 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Id.* **The court may consider** matters of public record and **documents attached to, "integral to[,] or explicitly relied upon in" the complaint.** *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 Fed. Appx. 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

*Tigo Energy Inc. v. Sma Solar Tech. Am. LLC*, 2024 U.S. Dist. LEXIS 38094, *7-8 (D. Del. Mar. 5, 2024) (emphasis added). Here, Plaintiffs have attached numerous exhibits to their FAC, each of which are "explicitly relied upon" in their pleading. Thus, the Court may consider each of those documents in connection with this motion without running afoul of any relevant law, and without the need to convert this to a motion for summary judgment.

Plaintiffs also assert a number of claims that are either directly grounded in, or ultimately premised upon, claims of fraud. Such are subject to a higher standard on a motion to dismiss. Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

**B.     The First Amended Complaint Fails to State any Plausible Claim Arising From the Alleged Promises to Make Plaintiffs Equity Holders in any Entity.**

Delaware law provides clear guidance on what a plaintiff must plead in order to state an actionable claim for breach of contract, and how a court is to evaluate the adequacy of those allegations:

> Under Delaware law a contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms." *Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc*., 2009 U.S. Dist. LEXIS 32201, at *5 (D. Del. Apr. 16, 2009). (internal quotation and citation omitted).
>
> In other words, an enforceable contract exists where a reasonable person would conclude that the parties had reached a definite and final agreement on all essential terms. *Id.* The test for determining whether all essential terms have been agreed upon is "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that the agreement concluded the negotiations." *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461.

*LG Elecs., Inc. v. Asko Appliances, Inc.*, 2012 U.S. Dist. LEXIS 86214, *4 (D. Del. June 21, 2012).

Here, Plaintiffs do not and cannot allege facts that, even if assumed to be true, would satisfy this standard. The most glaring problem for Plaintiffs is the omission of any allegations identifying the number of shares or amount of ownership interest that any—let alone all—of the Plaintiffs would receive under this supposed contract. Rather, Plaintiffs repeatedly plead only that they would receive "a significant" or "substantial stake" in the company. *See, e.g.,* FAC ¶¶ 35 and 37 (Smith), 41 (Nispel), 42 (Roux), 43 (Duff).

The Plaintiffs not only do not plead that there was ever an agreement reached on these fundamental points but, in fact, affirmatively allege that no such agreement had been reached. For example, in Paragraph 78 of the FAC, Plaintiffs allege that Okhandiar and Duff entered into an "Agreement to Negotiate," a copy of which they also attached to the FAC as Exhibit J (D.I. 16-1, pgs. 33 – 44). The "Agreement to Negotiate" states on its face that Okhandiar and Duff, "intend to come to an agreement on an initial shareholding distribution for Remilia corporation," which makes it undeniable that no agreement was reached regarding the number of shares that Duff would receive. The defects in the alleged facts are magnified when the timing of the allegations is considered. Plaintiffs allege that in "July/August of 2022" the Collective Venture needed to form

7

a corporation. *See* FAC ¶ 67. It was in July of 2022 that Okhandiar formed RemCorp (*see id.* at ¶ 72) and in October of 2022 that RemIndustries was formed (*see id.* at ¶ 73). At the latest, Plaintiffs "believed they were already equity owners of RemCorp" by November 15, 2022, *Id.* at ¶ 76. Yet only **after** those events (i.e., in December 2022) do Plaintiffs allege that Duff entered into the "Agreement to Negotiate", which agreement makes it entirely clear that there is not yet an agreement for ownership with any Plaintiff. *See id.* at ¶ 78.

Where Plaintiffs have not alleged and cannot allege a meeting of the minds on fundamental aspects of the supposed contract—including the amount of ownership, the nature of ownership, a method by which ownership would be determined, a resolution of the conditions found in Duff's Agreement to Negotiate, and myriad other essential details—they have failed, as a matter of law, to allege an actionable breach of contract. *See Rust v. Rust*, 2023 Del. Ch. LEXIS 93, *12 (Del. Chanc., Apr. 27, 2023) (there must be "a meeting of the minds for a valid contract to have been formed. . . [W]here the facts show no agreement on a material term, there is no contract.").

Moreover, the "Agreement to Negotiate" states that, "unless otherwise agreed by consent of both Parties, the shareholding allotment of Party B [Duff] will be agreed upon in writing **before any further shares are issued or allotted, including to other founders, investors, or employees of the Company.**" FAC ¶ 78 (quoting Exhibit J, D.I. No. 16-1 at p. 35 (emphasis added)). Crucially, according to the allegations relied upon by Plaintiffs in the FAC, because no agreement was ever reached between Okhandiar and Duff regarding Duff's equity stake, it would have been impossible for any agreement to have been reached with any of the other Plaintiffs, all of whom claim to be "founders, investors, or employees of the Company."

Plainly, the number of shares—or the percentage interest, or some method for determining the amount of ownership interests—that each of the Plaintiffs would receive for their efforts is one

8

of the "terms that the parties themselves regarded as essential," and agreement on that particular item was necessary to find that the parties' negotiations had "concluded." *LG Elecs., Inc.* at *4. Yet the Plaintiffs themselves plead not only that such negotiations had not concluded, but that the negotiation process had not even begun. Indeed, the "Agreement to Negotiate" would have had no purpose if "negotiations had concluded."[1]

What Plaintiffs allege here is not even an "agreement to agree," which itself would be short of an enforceable contract, but rather an "Agreement to Negotiate" with the hope that an agreement might be reached. That is much too far removed from an agreement on the essential terms of a contract to state an actionable breach of contract claim. Even if all the facts alleged in the FAC are assumed to be true, those allegations do not inform how a decision maker would allocate the ownership interests in the Remilia entities, because the Plaintiffs have not even alleged what their understanding is of what interests they were supposed to receive, let alone that there was an agreement reached on that critically important term of the supposed contracts.

Indeed, where the Plaintiffs themselves cannot even allege that they were promised specific numbers of shares or amount of ownership interest, it would be impossible for the Court to enter a judgment—let alone issue declaratory relief—directing how many shares, if any, each of the Plaintiffs should receive. Nor have Plaintiffs alleged—nor can they allege—facts with the particularity required by Rule 9(b) as is required for their claims sounding in fraud or mistake.

---

[1] Duff does not allege any breach of the Agreement to Negotiate, suggesting that Duff either does not believe the Agreement to Negotiate is enforceable, or does not believe it was breached. Nor does Duff allege that the negotiations contemplated by the Agreement to Negotiate yielded any definitive or enforceable agreement on the number of shares that Duff would receive, if any.

9

      1.    <u>Plaintiffs' Contract Claims (Counts I, II, IV and V) Fail in the Absence of an Enforceable Contract for Equity.</u>

The gravamen of the majority of Plaintiffs' claims is their contention that they formed a contract with one or more of the Defendants wherein Plaintiffs were promised equity in RemCorp or some other legal entity. That allegation is a central component of the first nine counts in the Amended Complaint and the thirteenth claim for tortious interference with contractual relations.

Plaintiffs' causes of action I, II, IV and V sound in contract and fundamentally require a finding of an enforceable agreement. Indeed, Plaintiffs plead, in sum and substance, that each of them reached an enforceable agreement with Okhandiar whereby each of the "Founding Group members would be co-founders and equity holders in RemCo . . . ." FAC ¶ 119 (regarding count IV, breach of collective venture agreements); *see also id.* at ¶ 92 (addressing count I, breach of fiduciary duty and stating "Okhandiar breached his duties of care, loyalty and good faith when he formed RemCorp [without] . . . includ[ing] each of the Plaintiffs as equity shareholders"); ¶ 101 (regarding count II, constructive trust and stating "Plaintiffs trusted Okhandiar . . . to distribute equity and shares as agreed"); and ¶ 129 (count V, breach of fiduciary duty, alleging breach when "Okhandiar unilaterally created RemCorp and Remindustries").

This fundamental pleading failure infects not only Plaintiffs' aforementioned contract-based claims, but also their claims for declaratory judgments (count III), promissory fraud (count VI), negligent misrepresentation (count VII), promissory estoppel (count VIII), equitable estoppel (count IX), and tortious interference with contractual relations (count XIII), as further described below.

      2.    <u>Plaintiffs' Claim for Declaratory Relief and Injunctions (Count III) Fails.</u>

Plaintiffs ask the Court to declare "[u]nder a construction of the Agreements" that "Plaintiffs, and each of them, are equity owners in Remco." *Id*. at ¶ 108. Plaintiffs also request

"the issuance of equity . . . and the delivery of an acceptable shareholders' or operating agreement." *Id.* at ¶ 109. Conspicuously, Plaintiffs do not ask the Court to declare how much of the corporation Plaintiffs, individually or collectively, would own. This is undoubtedly because Plaintiffs know they had no agreement setting forth the amount of ownership interest or any other vital terms. The Court cannot declare the contractual rights of the parties when the pleading does not state sufficient facts to support such a claim and, accordingly, Plaintiffs' claim for declaratory relief in count III should be dismissed.

### 3. Plaintiffs' Claim for Promissory Fraud (Count VI) Fails.

Because count VI sounds in fraud, it must be pled with particularity. "In order to satisfy Rule 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3rd Cir. 2004). Yet, with respect to the supposed promises of equity, Plaintiffs allege only that: (a) Smith was told he would receive "a significant stake in RemCo once it was formed"; (b) Nispel was told "he would be a co-founder of RemCo," with no allegation that he was promised equity; (c) Duff would be an "equity owner of RemCo in whatever form it would be created"; and (d) Roux "would have 'serious exposure' to equity" once RemCo was formed. FAC ¶ 133. None of the Plaintiffs allege what percentage of the company they would receive or how such an amount would be determined.

Nor could the Plaintiffs provide such information given Duff's claim that his share of the equity—to be negotiated following execution of the Agreement to Negotiate—would have to be set **before** anyone else's share could be determined. Moreover, if the number of shares to be distributed to the Plaintiffs had already been determined or agreed upon, there would have been

11

nothing for Duff to negotiate. The very Letter of Intent that Duff relies on and attaches as an exhibit to the Amended Complaint (Exhibit D, D.I. No. 16-1 at 14-17 of 47) states that, "[t]he structure of the organization as a DAO and how shares will factor in . . . is still being formalized, but you will be compensated fairly according to your role in the starting team." Such a statement cannot plausibly be grounds for a fraud claim premised on a supposed "promise" to grant equity, and the uncertainty evidenced by that statement demonstrated that no definitive or enforceable agreement on equity was ever reached. In essence, Plaintiffs cannot even describe what they were promised. Their claim in count VI fails under a Rule 12(b)(6) standard.

4. <u>Plaintiffs' Claim for Negligent Misrepresentation (Count VII) Fails.</u>

Plaintiffs also claim that Defendants are liable for negligent misrepresentation based largely on the same alleged statements giving rise to their fraud claim. This claim is also subject to Rule 9(b) and must be alleged with particularity. *See Cavi v. Evolving Sys. NC*, 2018 U.S. Dist. LEXIS 86971 (D. Del. May 23, 2018) at *5 ("I agree with Plaintiff that not only must Defendants' fraudulent inducement and equitable fraud claims meet the 9(b) standard but so too must their claims for negligent misrepresentation and unjust enrichment. The heightened pleading standard required by Rule 9(b) extends to claims of negligent misrepresentation and unjust enrichment that 'sound in fraud.'"). Plaintiffs all assert that Okhandiar caused them "to believe and understand that they held ownership interests in RemCo," but, again, they allege nothing specific about how many ownership interests any—let alone all—of them believed they held. FAC ¶ 147. Under the heightened pleading standards of Rule 9, count VII should be dismissed.

5. <u>Plaintiffs' Claim for Promissory Estoppel (Count VIII) Fails.</u>

Two of the four requisite elements of a promissory estoppel claim under Delaware law are a promise and evidence demonstrating, "that the promise must be enforced to avoid injustice."

*Harmon v. Del. Harness Racing Comm'n*, 62 A.3d 1198, 1202 (Del. 2013). The basis for Plaintiffs' promissory estoppel claim is the same "false promises described above" (FAC ¶ 150), and this claim also is subject to Rule 9(b)'s heightened pleading requirements. Plaintiffs argue that these "promises" which, by incorporation of the earlier allegations, include the supposed promise to grant equity, must be enforced, including by making Plaintiffs "equity owners" of RemCo or another entity. *Id.* at ¶ 152. But, for the reasons explained above, the alleged promise of equity is too uncertain to be enforced, because Plaintiffs themselves cannot even allege how much equity each of them was to receive. Because the "promise" upon which Plaintiffs' promissory estoppel claim is based is inadequately pled, count VIII should be dismissed.

6. <u>Plaintiffs' Claim for Equitable Estoppel (Count IX) Fails.</u>

The centerpiece of Plaintiffs' equitable estoppel claim is, again, their assertion that Defendants made "promises and statements" regarding Plaintiffs' "ownership interest in the Collective Venture, RemCorp, [and/or] RemIndustries . . . ." *Id.* at ¶ 157. This allegation is no doubt intended to satisfy the first element of a claim for equitable estoppel—to wit, "conduct by the party to be estopped that amounts to a false representation, concealment of material facts, or that is calculated to convey an impression different from, and inconsistent with that which the party subsequently attempts to assert." *Hyetts Corner, LLC v. New Castle Cty.*, 2021 Del. Ch. LEXIS 208, *19 (Del. Ch. Sep. 14, 2021) (cleaned up). It is well established in Delaware that, "the standards for establishing the elements of equitable estoppel are stringent; the doctrine is applied cautiously and only to prevent manifest injustice." *Id*. (cleaned up).

Here, for the reasons explained above, Plaintiffs have failed to plausibly plead that Defendants made any false representations relating to promises or statements of Plaintiffs' alleged ownership interests in RemCorp or any other entity. Count IX should be dismissed.

       7.      **Plaintiffs' Claim For Tortious Interference With Contractual Relations (Count XIII) Fails.**

Plaintiffs tortious interference with contractual relations claim is brought only against the entities RemCorp and RemIndustries and relies on the allegation that the Plaintiffs and Okhandiar "entered into the Collective Venture Agreements" and that "RemCorp and/or RemIndustries . . . . interfered with and disrupted the Collective Venture Agreement." FAC ¶ 183. Delaware unambiguously requires that an enforceable contract exist for a claim of tortious interference: "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Luscavage v. Dominion Dental USA, Inc.*, 2007 Del. Super. LEXIS 88, 2007 WL 901641, *2 (Del. Super. Mar. 9, 2009). "According to Delaware law, to succeed under [a tortious interference with contract] theory, there must be an actual breach of a valid and enforceable contract." *Id.* at *6. Where, as here, the pleading fails to allege facts that support a finding of a contract, the claim, in count XIII, for tortious interference with contractual relations likewise fails.

      **C.**      **In the Alternative, Plaintiffs Should Be Ordered to Provide a More Definite Statement Regarding the Facts Supporting Their Claims.**

Although Plaintiffs believe dismissal of the above-referenced claims is appropriate, if the Court agrees that Plaintiffs have failed to plead essential facts but concludes dismissal is not warranted, Defendants move in the alternative for an order requiring Plaintiffs to provide a more definite statement of the facts supporting those claims. *See* Fed. R. Civ. P. 12(f). If Plaintiffs have a good faith basis to allege that they were promised equity with sufficient specificity to justify breach of contract and fraud claims, the least they can do is include in their pleading allegations the specific amount of equity they were promised and the basis for those allegations. Those details should include the "who, what, when, where, and how" of every promise they claim was made. *See Bellinger v. Bellinger 2018 Fam. Trust*, 2024 U.S. Dist. LEXIS 56074, *4-5 (D. Del. Mar. 28,

14

2024) ("Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud or mistake. Put another way, Rule 9(b) requires that a plaintiff set forth 'the who, what, when, where, and how' of the alleged fraud.") (cleaned up).

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully requests that counts I through IX and count XIII be dismissed pursuant to Federal Rule 12(b)(6) or, in the alternative, that Plaintiffs be ordered to provide a more definite statement of the basis for their claims.

Dated: April 12, 2024

CROSS & SIMON, LLC

*/s/ David G. Holmes*
Christopher P. Simon (No. 3697)
David G. Holmes (No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel:  (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

- and -

Bradley W. Madsen, Esq
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT  84121
Tel: (801) 833-0477
bwmadsen@michaelbest.com
sjoffee@michaelbest.com
esstrassberg@michaelbest.com

*Attorneys for Defendants*

15