## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MAXWELL ROUX, JOHN DUFF III,
HENRY SMITH, and BRUNO NISPEL,

        Plaintiffs,

    v.

KRISHNA OKHANDIAR (a/k/a Rohit
Okhandiar, Charlotte Fang, Charlie Fang,
Wonyoung Jang, Miya, Xinma33, MissJo, and
Sonya); REMILIA CORPORATION LLC, a
Delaware limited liability company;
REMILIA INDUSTRIES LLC, a Delaware
limited liability company,

        Defendants.

C.A. No. 1:23-cv-01056-GBW

---

### PLAINTIFFS' ANSWERING BRIEF IN SUPPORT OF
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: May 7, 2024

**K&L GATES LLP**

Steven L. Caponi (No. 3484)
Matthew Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Telephone:  (302) 416-7000
steve.caponi@klgates.com
matthew.goeller@klgates.com

-and-

Jonathan P. Hersey (admitted *pro hac vice*)
Lea E. Gierut (admitted *pro hac vice*)
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, California  92614
Telephone:  (949) 253-0900
jonathan.hersey@klgates.com
lea.gierut@klgates.com

*Counsel for Plaintiffs Maxwell Roux, John
Duff III, Henry Smith, and Bruno Nispel*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   STATEMENT OF NATURE OF THE CASE AND STAGE OF THE
     PROCEEDING ............................................................................................... 1

II.  SUMMARY OF ARGUMENT ....................................................................... 2

III. CONCISE STATEMENT OF FACTS ............................................................ 2

     A.   Plaintiffs and Okhandiar Agree to Form and Operate a Collective Venture ......... 2

     B.   The Collective Venture Agreements Are Comprises of Various Written
          Contracts and Correspondence, and Verbal Understandings ............................... 3

     C.   Okhandiar Unilaterally Incorporated RemCorp and RemIndustries in 2022 ........ 6

     D.   Defendants' Wrongfuly Seize Control Over the Collective Ventures
          Assets, Funds, and Intellectual Property ........................................................... 7

IV.  ARGUMENT ................................................................................................. 8

     A.   Legal Standard ................................................................................................. 8

     B.   Plaintiffs Plausibly alleged that Defendants' Breached the Agreement ............... 8

          i.    The Amended Complaint Properly Alleges that the Parties Had a
                Meeting of the Minds as to the Ownership Interests Each Founding
                Group Member Would Receive in RemCo .................................................. 9

          ii.   Plaintiffs Adequately State a Claim for Breach of the Collective
                Venture Agreement as Defined in the Amended Complain .................... 11

          iii.  Each Breach of the Various Agreements Alleged in the Amended
                Compliant, On Its Own Is Sufficient to State a Claim ........................... 13

          iv.   The FAC States a Claim for Tortious Interference with Contractual
                Relations and Breach of the Implied Covenant ..................................... 13

     C.   Plaintiffs' Claims for Promissory Fraud (Count VI) and Negligent
          Misrepresentation (Count VII) Does Not Fail .................................................. 14

     D.   Breach of Fiduciary Duty (Count I), Constructive Trust (Count II) and
          Declaratory Judgments and Injunctions (Count III) Also Do Not Fail ............... 16

     E.   Plaintiffs' Claims for Promissory Estoppel (Count VIII), and Equitable
          Estoppel (Count IX) Similarly Does Not Fail ................................................... 18

     F.   Leave to Amend Should Be Granted ................................................................. 19

V.   CONCLUSION ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cavi v. Evolving Systems NC, Inc.*
  2018 WL 2372673, at *3 (D. Del. May 24, 2018)...................................................16

*Cornerstone Brands, Inc. v. O'Steen*,
  2006 WL 2788414 (Del. Ch. Sept. 20, 2006) ................................................18, 19

*Dole v. Arco*,
  921 F.2d 484 (3d Cir. 1990)...........................................................................19

*Dousman v. Kobus*,
  2002 WL 1335621 (Del. Ch. June 6, 2002) .....................................................18

*Eppley v. Univ. of Delaware*,
  No. 13-CV-99 (GMS), 2015 WL 156754 (D. Del. Jan. 12, 2015) .......................15

*Feeley v. Nhaocg, LLC*,
  62 A.3d 649 (Del. Ch. 2012)..........................................................................17

*Fini v. Remington Arms Co.*,
  1998 WL 299358 (D. Del. May 27, 1998).......................................................18

*Grande Village LLC v. CIBC Incorporated*,
  No. 14-3495, 2015 WL 1004236 (D.N.J. March 6, 2015)....................................9

*Halperin v. Moreno (In re Green Field Energy Servs.)*,
  610 B.R. 760 (D. Del. 2019) ..........................................................................17

*Harmon v. Del. Harness Racing Comm'n*,
  62 A.3d 1198 (Del. 2013) ..............................................................................18

*Hertz Corp. v. Frissora*,
  No. CV198927ESCLW, 2021 WL 2253526 (D.N.J. June 3, 2021) ...................8, 9

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*,
  286 F. Supp. 2d 369 (D. Del. 2003)................................................................14

*Indep. Cellular Tele., Inc. v. Barker*,
  No. 15171, 1997 WL 153816 (Del. Ch. Mar. 21, 1997)....................................10

*J. Leo Johnson, Inc. v. Carmer*,
  38 Del. Ch. 579 (1959) .................................................................................17

*LG Elecs., Inc. v. Asko Appliances, Inc.*,
    2012 WL 2365901 (D. Del. June 21, 2012)................................................................11

*Lum v. Bank, of Am.*,
    361 F.3d 217 (3rd Cir. 2004) ......................................................................................14

*Luscavage v. Dominion Dental USA, Inc.*,
    No. CIV.A. 06C-07-219RRC, 2007 WL 901641 (Del. Super. Ct. Mar. 20,
    2007), overruled by A*SDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010)...............13, 14

*In re MobilActive Media, LLC*,
    Consol. C.A. No. 5725-VCP, at *57 (Del. Ch. Jan. 25, 2013) ................................16

*Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) ........................................................................................11

*Parker–Hannifin Corp. v. Schlegel Elec. Materials, Inc.*,
    589 F.Supp.2d 457 (D. Del. 2008) .............................................................................11

*Rheault v. Halma Holdings Inc.*,
    2023 WL 8005318 (D. Del., Nov. 7, 2023) ..................................................................8

*Rogm & Haas Elec. Materials*, 2009 U.S. Dist. LEXIS 32201, at *5 ...........................11

*Rust v. Rust*,
    2023 Del. Ch. LEXIS 93 (Del. Chanc., Apr. 27, 2023).............................................11

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)...................................................................................8, 14

*Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*,
    417 F. Supp. 2d 632 (D.N.J. 2006) ..............................................................................8

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) .............................................................................................8

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................1

28 U.S.C. § 1406(a) ............................................................................................................1

Federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* .............................................2

19 Del. Code § 1101, *et seq.* .............................................................................................2

**Other Authorities**

Federal Rule of Civil Procedure Rule 8(a)(2) ...................................................................8

Federal Rule of Civil Procedure 9(b)............................................................8, 14, 16, 17

Federal Rule of Civil Procedure Rule 12(e) ....................................................................19

Federal Rule of Civil Procedure Rule 12(f).....................................................................19

I.    **STATEMENT OF NATURE OF THE CASE AND STAGE OF THE PROCEEDING**

This case arises from and concerns the parties' joint formation and operation of a crypto-based non-fungible token ("NFT") art collective venture generally referred to as "Remilia." Plaintiffs Maxwell Roux ("Roux"), John Duff III ("Duff"), Henry Smith ("Smith"), and Bruno Nispel ("Nispel") (collectively "Plaintiffs") have been cheated out of their interests in the Remilia collective venture by Defendants Krishna Okhandiar ("Okhandiar") and the two Delaware companies, Remilia Corporation LLC ("RemCorp") and Remilia Industries LLC ("RemIndustries"), that Okhandiar surreptitiously formed without Plaintiffs' approval or involvement in breach of the parties' agreements and Okhandiar's fiduciary duties owed to Plaintiffs. Okhandiar has transferred and misappropriated Remilia's assets to his companies, and even purported to fire Plaintiffs from their employment and executive roles in the collective venture that they formed and through which they have equal ownership rights to the digital assets.

Plaintiffs filed their complaint in the Delaware Court of Chancery on September 22, 2023. Defendants removed it to this Court on September 27, 2023. On February 13, 2024 a suit filed by Okhandiar and RemCorp against Roux, Duff and Smith in in Nevada District Court was transferred to this district pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). The parties stipulated that Defendants would voluntarily dismiss their transferred complaint, Plaintiffs would file an amended complaint, and Defendants will refile their claims previously asserted in the Nevada District Court as counterclaims in this single action. They have not done so yet. Instead, Defendants have moved to dismiss certain causes of action alleged in Plaintiffs' Amended Complaint, namely Counts I (Breach of Fiduciary Duty), II (Constructive Trust), III (Declaratory Judgments and Injunctions), IV (Breach of Collective Venture Agreements), V (Breach of Implied Covenant of Good Faith and Fair Dealing), VI (Promissory Fraud), VII (Negligent Misrepresentation), VIII (Promissory Estoppel), IX (Equitable Estoppel), and XIII (Tortious Interference with Contractual Relations).

Defendants do not move to dismiss Counts X (Conversion), XI (Money Had and Received), XII (Unjust Enrichment), XIV (Tortious Interference with Prospective Economic Advantage), XV (Defamation), XVI (Trade Libel), XVII (Violations of the Federal Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*), or XVIII (Violations of Delaware Wage Payment Collections Act, 19 Del. Code § 1101, *et seq.*).

## II.    SUMMARY OF ARGUMENT

Read in a vacuum, Defendants' motion appears to paint a picture that Plaintiffs' allegations for breach of contract fall woefully short of pleading standards because Plaintiffs do not allege the specific number of shares or the precise amount of equity they would hold in RemCo, which was a company the parties agreed to form to support the logistics of the collective venture, Remilia. In essence, Defendants argue that because there was no meeting of the minds on a material term of the RemCo formation agreement, the contract is impermissibly vague and Defendants are left to speculate about the nature of Plaintiffs' other claims for tortious interference with contractual relations, breach of implied covenant of good faith and fair dealing, promissory fraud, negligent misrepresentation, and breach of fiduciary duty, as well. Those arguments not only mischaracterize the pleading standard applicable to Plaintiffs' claims, they ignore the realities of the facts that are thoroughly and exhaustively alleged in the Amended Complaint.

While Defendants attempt to redefine the alleged "agreement" alleged by Plaintiffs as the simple but ambiguous promise to give Plaintiffs "substantial" ownership in RemCo, Defendants mischaracterize the "Agreements" defined, described and alleged with supporting documentation in the Amended Complaint. The Agreements extended well beyond a mere promise of ownership interest in the affiliated RemCo company. The Agreements include a series of written and oral promises between the parties to form a joint venture, share the profit and losses of Remilia equally, and operate the business of creating and distributing NFTs according the certain ownership rights and executive managerial roles. Because Defendants' arguments start from the wrong place, they miss the well pleaded facts and entire gravamen of the Amended Complaint.  The Motion should be denied.

## III.    CONCISE STATEMENT OF FACTS
### A.    Plaintiffs and Okhandiar Agree to Form and Operate a Collective Venture

Plaintiffs and Okhandiar met through the NFT community, becoming both friends and

colleagues, and collaborating together as artists and digital NFT community members. Plaintiffs' First Amended Complaint (hereinafter, "FAC") at ¶ 26. Around September 2021, they agreed to start a digital art business to continue pursuing the NFT industry. FAC ¶ 27. Plaintiffs, together with Okhandiar (collectively the "Founding Group"), created Remilia as a joint venture ("Remilia" or the "Collective Venture"), where the Founding Group members could participate in the digital art industry as a DAO, *i.e.* a decentralized autonomous organization. FAC at ¶¶ 27-28.

In creating the Collective Venture, each of the Founding Group members agreed they would play a different role in its development, growth, operation and management of the Collective Venture. FAC at ¶ 28. The decisions and agreements on how to operate and manage the Collective Venture came about through a "hybrid of online communications including written chat group messages and blockchain-based decisions evidenced by code and smart contracts." FAC at ¶ 28.

Each Founding Group member contributed equally their skill, effort, time, funds, and intellectual property. FAC at ¶¶ 89, 116 160. The Founding Group agreed that no single person would be given the authority or right to control, access, or distribute the Collective Venture's digital assets or treasury without the knowledge and consent of at least a majority of the Founding Group members. FAC at ¶ 28. This was important because the cornerstone of the Collective Venture Agreement was sharing the decision-making authority, managerial responsibilities, and Remilia's profits or losses. *Id.*

## B. The Collective Venture Agreements Are Comprises of Various Written Contracts and Correspondence, and Verbal Understandings

The Founding Group entered into various written and verbal agreements ("Agreements") concerning the management and operations of the Collective Venture. FAC at ¶ 32. In these Agreements the Founding Group agreed to the following:

(1) Each Founding Member would retain the right to take with them any separate intellectual property they contributed if they ever terminated their participation the Collective Venture. FAC at ¶¶ 29, 33.

(2) The Founding Group agreed that the Collective Venture's funds and digital assets would be held in a treasury under their joint control and that any significant

transaction would require the approval of at least a majority of the different Founding Group Members. FAC at ¶¶ 33. The treasury was controlled by multi-signature wallet where there would be only three keys issued: one for Okhandiar, one for Smith, and one for Nispel. FAC at ¶ 33.

(3) The Collective Venture established a commission payment structure based on the revenue generated from the sale of the NFTs. FAC at ¶¶ 33.

(4) As it became necessary, the Collective Venture would form and incorporate a corporation to act as an agent for the Collective Venture. That corporate entity, when formed, was intended to employ the Founding Group as executives, to support the Collective Venture's operations, and to promote the sale, distribution and monetization of its NFT Projects. The Founding Group called this intended company Remilia Corporation, or "RemCo" for short. FAC at ¶¶ 32- 33, 35, 37, 42, 43.

(5) The members of the Founding Group would each have a unique role in Remilia and in RemCo when formed, and as a result would be entitled to different annual salaries and bonuses. FAC at ¶¶ 33.

(6) Once formed, the members of the Founding Group were to each to be considered "cofounders" and "equity holders" with a "substantial" or "significant" ownership interest in the RemCo. A part of Okhandiar's role was to incorporate RemCo once it became necessary and include a shareholder agreement between the Founding Group. FAC at ¶¶ 33 101.

Some of these Agreements were memorialized in signed written contracts that the parties labeled "Letters of Intent" (hereinafter "LOIs"), Others were memorialized in emails, texts, and chat messages. FAC at ¶ 34.

In October 2021, Okhandiar provided Smith with Letter of Intent (the "Smith LOI"), which ratified (1) the Founding Group's Agreement that Okhandiar would create RemCo to serve as an agent to the Collective Venture, (FAC at ¶ 36); (2) there was an "Expectation" for Smith as Lead

Artist was that he would commit his full-time efforts to the Collective Venture (FAC at ¶¶ 35, 37); (3) Smith would be recognized as a co-founder (FAC at ¶ 35); (4) Smith would have certain fiduciary duties (FAC at ¶ 35); Smith would be part of RemCo's "formal governance," which would be comprised of an Executive Board of three of the co-founders holding a total of four votes. Okhandiar, who would hold the title of CEO, would hold two votes on the Executive Board. Smith, as the Lead Artist and creative director member of the Executive Board would hold one vote (FAC at ¶ 38). *See* Exhibit A to FAC. These provisions were also reinforced by other members of the Founding Group. FAC at ¶ 39. Smith also agreed to accept a lower salary and compensatory payments than his contributions would otherwise merit because he was promised to be compensated with a larger equity stake in RemCo instead. FAC at ¶ 39.

Similarly, in October 2021, Okhandiar provided Nispel with Letter of Intent (the "Nispel LOI") which (1) ratified the Founding Group's Agreement that Okhandiar would create RemCo to serve as an agent to the Collective Venture, (FAC at ¶ 40); (2) there was an "Expectation" for Nispel as Chief Operating Officer was that he would commit his full-time efforts to the Collective Venture (*See* FAC at ¶ 40, Exhibit B); (3) Nispel would be recognized as a co-founder (FAC at ¶ 41; FAC at ¶ 52, Exhibit F); (4) Nispel would have certain fiduciary duties (FAC at ¶ 40); Nispel would be part of RemCo's "formal governance," which would be comprised of an Executive Board of three of the co-founders holding a total of four votes. Okhandiar, who would hold the title of CEO, would hold two votes on the Executive Board. Nispel, as the COO of the Executive Board would hold one vote (See FAC at ¶ 40, Exhibit B). *See* Exhibit B to FAC. These provisions were also reinforced by other members of the Founding Group. FAC at ¶ 39.

In various writings, messages and verbal communications, Okhandiar agreed with and expressly acknowledged that Roux was also a co-founder with "serious exposure" to RemCo's ownership, and that he would serve as Remilia's lead financial and quantitative analyst, as well as being the developer, project manager, and artistic director of several NFT Projects. FAC at ¶ 42, Exhibit C; FAC at ¶ 57.

Duff, who was the Lead Programmer and project manager, was also provided an LOI in October 2021 with the same general terms as the Smith and Nispel LOIs. FAC at ¶ 43, Exhibit D.

### C.    Okhandiar Unilaterally Incorporated RemCorp and RemIndustries in 2022

From the time the Funding Group created the Collective Venture, Plaintiffs played the primary roles in creating, developing and actively managing various NFT Projects that generated revenues. FAC at ¶ 62. Up until July 2022, Plaintiffs continued to work on the Collective Venture's NFT Projects based on their Collective Venture Agreement. *Id.* at ¶ 68.

In July 2022, 11 months after the Funding Group formed the Collective Venture, a logistical and administrative need arose to form the envisioned agent-corporation, RemCo, so that the Collective Venture could continue to market and sell certain products and continue running promotional events. FAC at ¶ 67. But rather than form RemCo and include Plaintiffs in its ownership and management structure, Okhandiar unilaterally created RemCorp solely for himself. *See* FAC 72 (Exhibit H). In October 2022, he created RemIndustries. FAC at ¶ 73 (Exhibit I).

Okhandiar hid the existence of RemCorp and RemIndustries from Plaintiffs for months, and when he finally revealed them, he did not disclose that he had (1) failed to create RemCo as the parties had envisioned with a three-member Executive Board, (2) failed to include any of the Plaintiffs as equity owners in either RemCorp or RemIndustries, and (3) failed to provide a shareholders' agreement or an operating agreement for either company. FAC at ¶¶ 72-73.

It was not until Okhandiar, on behalf of RemCorp, presented the Plaintiffs with Non-Disclosure Agreements ("NDAs") in November 2022 that they realized that Okhandiar had purportedly formed the envisioned RemCo company in which they were entitled to equity interests, managerial roles, and slaaries. FAC at ¶ 76. Indeed, Smith, Nispel, and Roux had no reason to believe Okhandiar had not included them as members of the company in the first place. FAC ¶ 76. They did not press Okhandiar on the issue of how much ownership interest they received, as a joint venture, each of the Plaintiffs had equal rights to their contributions, shared in its decision-making and its profits and losses. FAC ¶¶ 28-29.  Moreover, Plaintiffs, trusted Okhandiar as they had been friends and colleagues for several years. FAC at ¶ 138. Okhandiar

even lead Plaintiffs to believe that he also signed a similar NDA and would ask all RemCorp employees to do the same. FAC at ¶ 76.

Duff was skeptical of signing the NDA, especially when Okhandiar continued to withhold his compensation. FAC at ¶ 77. Okhandiar eventually agreed to enter into an Agreement to Negotiate with Duff providing him written assurances that he owned equity in RemCorp, that he would receive a shareholder agreement, an amended LOI, that Duff would receive his promised salary and other compensation, and that Okhandiar would not give-away RemCorp's shares (even to the other Founding Members) without including him first. FAC at ¶¶ 77-78 (Exhibit J). Okhandiar stated that by the NDA, "[Duff] won't be giving anything new away." FAC at ¶ 77.

### D.    Defendants' Wrongfully Seize Control Over the Collective Ventures Assets, Funds, and Intellectual Property

In November 2022, Okhandiar had added four other "persons" as key holders to the Collective Ventures multi-signature wallet besides himself, Smith and Nispel. FAC at ¶ 74. Okhandiar led Plaintiffs to believe that the additional signatories would provide more oversight by employees, when this was in fact false. FAC at ¶ 74. Okhandiar secretly created three additional keys for himself, thereby giving himself control of four of the multi-signature wallet's seven keys, and thus full control over the Collective Venture's treasury wallets. *Id.*

In November 2022, Okhandiar refused to release payments for salaries, bonuses and commissions owed to Plaintiffs for their work for the Collective Venture's NFT Projects. FAC at ¶ 75. To date, Plaintiffs have still not been paid for their contributions to the Collective Venture. FAC at ¶ 79 (detailing amounts owes to each plaintiff for specific NFT projects).

Plaintiffs then came to learn that Okhandiar, improperly using his control of the Collective Venture's multi-signature wallet, transferred Remilia's digital assets, which at the time were worth approximately $600,000, to his personal wallet as arbitrary unilateral "bonuses" that exceed the amounts agreed upon by the Founding Group, and to RemCorp's treasury. FAC at ¶ 80 (Exhibit K). Okhandiar still refuses to provide Plaintiffs with any shareholder agreement despite repeated

requests, refuses to issue any equity in RemCorp or RemIndustries, and refuses to acknowledge Plaintiffs as members of the Executive Board. FAC at ¶ 81.

## IV.   ARGUMENT

### A.   Legal Standard

On a defendant's motion to dismiss for failure to state a claim, "the court is required to accept as true all the factual allegations in the complaint and all reasonable inferences that can be drawn from those factual allegations after construing them in the light most favorable to the plaintiff." *Rheault v. Halma Holdings Inc.*, 2023 WL 8005318, *1 (D. Del., Nov. 7, 2023) (citing *Foglia v. Renal Ventures Mgmt.*, LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014)). The crux of the test, however, is simply that the complaint provide Defendants with "fair notice of what the claim against them is and the grounds upon which it rests." *Hertz Corp. v. Frissora*, No. CV198927ESCLW, 2021 WL 2253526, at *5 (D.N.J. June 3, 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 and Fed. R. Civ. P. 8(a)(2)).

While claims sounding in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), the Third Circuit has cautioned that "in applying Rule 9(b), focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Rule 9(b) "must be read in conjunction with the liberal pleading policy of Rule 8(a)(2)," which provides for the liberal construction of pleadings. *Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632, 646-7 (D.N.J. 2006).

### B.   Plaintiffs Plausibly alleged that Defendants' Breached the Agreements

Plaintiffs properly plead a breach of contract claim, which simply requires factual allegations of: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a causally related injury that warrants a remedy, such as damages or in an appropriate case, specific performance. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (finding that the defendant was on fair notice under Delaware's notice pleading of the claims

8

asserted against it when the complaint implicates that the parties formed a partnership to develop products, the defendant breached the partnership agreement when it shared trade secrets related to those products, and damage resulted as result of the breach).

Defendants contend that the claim for breach of contract should be dismissed because the material provisions of the contract are so indefinite as to be unenforceable. Op. Brief. at p. 7. Specifically, Defendants argue that because the Amended Complaint does not identify the exact number of shares or the exact amount of ownership interest that the Plaintiffs would receive in the ancillary RemCo entity after creation of the Remilia Collective Venture, the entire breach of contract claim fails. Op. Brief. at p. 7.

That argument fails for three reasons: (1) the law does not require that the parties have had a meeting of the minds as to the exact or precise amount of equity; (2) Defendant incorrectly focuses the court on the tangential agreement for "substantial equity" in RemCo as the basis for the breach of contract claim; and (3) Defendants breached the Collective Venture Agreement in multiple other ways, each on which is sufficient on its own to sustain the claim. Similarly, Plaintiffs adequately plead claims for tortious interference with contractual relations and breach of implied covenant of good faith and fair dealing.

> ### i. The Amended Complaint Properly Alleges that the Parties Had a Meeting of the Minds as to the Ownership Interests Each Founding Group Member Would Receive in RemCo

First and foremost, Defendants argued that to state a claim for breach of contract Plaintiffs were required to plead the specific number of shares each Plaintiff would receive in RemCo. That is not the law.

A plaintiff sufficiently pleads that a contract existed if the plaintiff identifies the relevant provision or provisions of the contract that the defendants allegedly breached. *See Grande Village LLC v. CIBC Incorporated*, No. 14-3495, 2015 WL 1004236, at *5 (D.N.J. March 6, 2015). The provisions of a contract need not be devoid of all vagueness or indefiniteness to sufficiently state a claim breach of contract. *See Hertz Corp. v. Frissora*, No. CV198927ESCLW, 2021 WL 2253526, at *6 (D.N.J. June 3, 2021) (applying Delaware law and denying the defendants' motion

to dismiss for failure to state a claim for a breach of contract even though the terms plead are somewhat vague because "the Court cannot conclude that the provisions of the standards [such as defendant obligation to "lead by positive example" and "promote an open door policy"] are too vague to be enforceable"). The material terms of a contract will only be deemed fatally vague or indefinite if they fail to provide any "reasonable standard for determining whether a breach has occurred and the appropriate remedy." *Indep. Cellular Tele., Inc. v. Barker*, No. 15171, 1997 WL 153816, at *4 (Del. Ch. Mar. 21, 1997) (citing Restatement (Second) of Contracts, § 33(2), at 92 (1981); *Parker–Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F.Supp.2d 457, 463 (D. Del. 2008) (noting that a contract contains all essential terms and, therefore, is enforceable when "it establishes the heart of the agreement;" it need not, however, contain all terms as some matters may be left for future negotiation)).

Here, Defendants do not provide any legal support or argument that Plaintiffs must plead the exact or precise number of shares, or percentages of equity to which each Plaintiff is entitled. They merely assert that Plaintiffs fail to identify "the number of shares or amount of ownership interest. . . Plaintiffs would receive" other than a "significant" or "substantial stake" in the company. Op. Brief at p. 7 (citing FAC at ¶¶ 35, 37, 42, 43).

However, the exact number or percentage of ownership interest in the ancillary RemCo company that each Plaintiff would be entitled to was not the heart of alleged Agreement. The heart of the Agreement was the creation, operation and rights in the assets of the Collective Venture, where each Founding Group member would "participate in the development, growth, operation and management of the Collective Venture, and share in its decision-making and its profits and losses." FAC at ¶ 28-29. The Agreement to create a separate logistical company to support the Collective Venture as its agent was an tangential agreement to help "promote the sale, distribution and monetization of its NFT Projects." FAC at ¶ 30.

Even if the terms "significant" or "substantial stake" is insufficient to state a claim for breach of contract generally, here, Defendants have breached the Agreements by denying Plaintiffs any and all ownership interests. As a matter of law and reason, the plain meaning of "significant"

or "substantial" equity is unambiguously more than zero equity. *See Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.").

Moreover, none of the cases that Defendants cite in their opening brief are helpful when deciding whether Plaintiffs plausibly state a claim for breach of contract. For example, in *LG Elecs., Inc. v. Asko Appliances, Inc.*, 2012 WL 2365901 (D. Del. June 21, 2012) and in *Rogm & Haas Elec. Materials*, 2009 U.S. Dist. LEXIS 32201, at *5, the courts were asked to enforce settlement agreements entered into by litigants in a pending case. Defendants similarly rely on *Rust v. Rust*, 2023 Del. Ch. LEXIS 93, *12 (Del. Chanc., Apr. 27, 2023), where the court similarly contemplated an enforcement action of a settlement agreement, rather than a motion to dismiss. The "standard of review for enforcement motions is similar to the standard applicable for motions for summary judgment," not a motion to dismiss. *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008).

### ii. *Plaintiffs Adequately State a Claim for Breach of the Collective Venture Agreement as Defined in the Amended Complaint*

Second, Defendants' opening brief wrongly focuses on a single part of the larger scheme of the Collective Venture Agreements. Specifically, Defendants' zero in on the agreement that the Founding Group would create an entity, RemCo, and that upon formation, Plaintiffs would have "substantial" or "significant" equity in RemCo. In doing so, Defendants ignore the realities of the entire Amended Complaint.

A plain reading of the Amended Complaint makes clear that Plaintiffs' breach of contract claim is for the "*various written and verbal agreements* concerning the management of the Collective Venture and the eventual structure and formation of a corporate entity that would be owned by the Founding Group to be an agent for the Collective Venture, and how that agent-corporation would be governed and managed." FAC at ¶ 32 (emphasis added). The Founding Group agreed that the (1) the Collective Venture would own and control the assets and funds generated by sales of its collection of work, (2) the Collective Venture's funds and digital assets would be held in a treasury under their joint control and authority, and (3) the Collective Venture

11

would eventually formally incorporate an entity, which would, in turn, provide agency services such as enter contracts on behalf of the Collective Ventures, and exploit the Collective Ventures assets. *See* FAC at ¶ 118-121.

Defendants breached these provisions when Okhandiar unilaterally formed RemCorp and RemIndustries without the knowledge or consent of the Plaintiffs, when Defendants exercised control over the Collective Ventures assets and funds by removing an estimated $2.3 million worth of the Collective Venture's assets from the wallet, and when Defendants wrongfully terminated Plaintiffs from the Collective Venture. FAC at ¶ 124.

Defendants attempt to cherry pick allegations in the Amended Complaint and in doing so simply ignore the Plaintiffs' well-pleaded facts. For example, Defendants argue that, as stated in the Amended Complaint, because Smith, Nispel, and Roux entered into the NDAs before Duff entered into an Amended LOI, NDA, and Agreement to Negotiate, it is "entirely clear that there is not yet an agreement for ownership with any Plaintiff." Op. Brief at pp. 7-8. But Defendants ignore the significance of the allegation that Smith, Nispel, and Roux "believe[ed] that they were already equity owners of RemCorp" (FAC ¶ 76): the percentage of ownership interest in the entities was not an essential term of the Agreements because Plaintiffs knew, as a joint venture, each Plaintiff had equal rights to their contributions, shared in its decision-making and its profits and losses. FAC at ¶¶ 28-29. RemCorp was merely an agent for the Collective Venture. FAC at ¶ 30; FAC at ¶ 36, (incorporating by reference Exhibit A, the Smith LOI); *see* FAC at ¶ 41 Exhibit B; FAC at ¶ 42, Exhibit C; FAC at ¶ 43, Exhibit D.

As alleged, Smith, Nispel, and Roux had no reason to believe Okhandiar did not make them members of RemCorp when he formed it. FAC ¶ 76. The Smith LOI and the Nispel LOI was "a written promise of the offered role and its compensation and expectations." FAC at ¶ 37, Exhibit A; *see* FAC ¶ 41 Exhibit B. As alleged in the Amended Complaint, "Plaintiffs trusted Okhandiar . . . to distribute equity and shares as agreed with a written shareholders' agreement". FAC at ¶ 101.

Defendants strangely argued that Duff's "Agreement to Negotiate" (FAC at ¶ 78, Exhibit J) made it "impossible" for the other Plaintiffs to reach an agreement on their ownership interest

because Duff and Okhandiar did not come to an agreement as to the exact amount of ownership interest is a misstatement of the Agreement. Yet in the same paragraph that Defendants make this exaggerated claim, Defendants quote the Agreement to Negotiate and state that equity could be issued if so "agreed by the consent of both Parties." Op. Brief pg. 8; see also FAC at ¶ 78 (quoting Exhibit J). Thus, by the terms of the Agreement to Negotiate, it possible for Duff to agree to an amount of ownership and Defendant's argument fails.

> ### iii.    *Each Breach of the Various Agreements Alleged in the Amended Compliant, On Its Own Is Sufficient to State a Claim*

Plaintiffs identified the various provisions in each of the Agreements in the Amended Complaint and alleged how Defendants breached those Agreements. *See* FAC at ¶¶ 32-33 (outline of the Agreements entered into by the parties); FAC at ¶¶ 72-73, 83 (breach of the Agreement that Collective Venture would own and control the assets and funds generated by sales of its collection of work and of the Agreement that the Founding Group member each would be considered equity holders, failed to create the entity with a 3-member board, did not provide shareholder or operating agreements); FAC at ¶ 74 (breach of Agreement that the Collective Venture's funds and digital assets would be held in a treasury under their joint control and would require at least a majority of the different members to approve any significant transaction); FAC at ¶¶ 75, 79 (breach of agreements to pay annual salaries and bonuses); FAC at ¶ 124 (outlining Defendants breaches of the various written and oral Agreements). ). Each of these allegations are sufficient to support a of which on its own states a claim for breach of contract.

> ### iv.    *The FAC States a Claim for Tortious Interference with Contractual Relations and Breach of the Implied Covenant*

Defendants similarly argue that Plaintiffs cannot maintain a claim for tortious interference with contractual relations and breach of implied covenant of good faith and fair dealing because Plaintiffs cannot state a claim for breach of contract. *See* Op. Brief at 14. That arguments for fail for the same reasons that Plaintiffshave stated a claim for breach of contract.

Defendants' reliance on the Delaware Superior Court's decision in *Luscavage* is misguided. *Luscavage v. Dominion Dental USA, Inc.*, No. CIV.A. 06C-07-219RRC, 2007 WL 901641, at *2

(Del. Super. Ct. Mar. 20, 2007), overruled by A*SDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010). In *Luscavage*, the court granted a motion to dismiss a complaint because plaintiffs failed to properly plead the required elements of a tortious interference with contractual relations claim. The court found it dispositive that plaintiffs had not plead the existence of a breach, but only that their contract was terminated. The court held that "termination of a contract is not the same as breach of contract," and that "according to Delaware law, to succeed under [a tortious interference with contract] theory, there must be an actual breach of a valid and enforceable contract."

Defendants do not argue that Plaintiffs fail to adequately allege any other element of these claims but the existence of an enforceable contract. For the reasons stated above, Plaintiffs have sufficiently alleged the Collective Venture Agreements, and have therefore adequately pled the claims for tortious interference with contractual relation and breach of the implied covenant of good faith and fair dealing.

### C.    Plaintiffs' Claims for Promissory Fraud (Count VI) and Negligent Misrepresentation (Count VII) Does Not Fail

Defendants' attacks on the fraud claims fail for the same reasons as their challenges to the contract claims.

Defendants cite to *Lum v. Bank, of Am.,* 361 F.3d 217, 223-224 (3rd Cir. 2004) for the contention that to state a claim for promissory fraud, Rule 9(b) requires Plaintiffs to plead with particularity as to give notice to Defendants of the misconduct which that they are charged. Op. Brief at p. 11. Indeed, the Third Circuit has advised that a plaintiff must state the *circumstances* of the fraud with sufficient particularity to place the defendants on notice of the precise misconduct with which they are charged, however, the plaintiff is not required to allege every material detail of the alleged fraud to satisfy Rule 9(b). *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature of the alleged misrepresentations). "[T]he requirement of particularity does not require an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred." *Household Int'l, Inc. v.*

*Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 373 (D. Del. 2003) (denying a defendant's motion to dismiss the plaintiff's fraud claim because the plaintiff's allegations that the defendants promised the policies it issued would protect the plaintiffs from lawsuits and that the failure of the policies to protect them led to their injury was enough to demonstrate the plaintiffs investigated the alleged fraud and reasonably believed a wrong occurred).

Yet, Defendants seem to misunderstand that the "circumstances" of Defendants' fraud is not whether Defendants issued "substantial" or "significant" equity in RemCorp, but rather that **no** equity was issued to Plaintiffs at all. FAC at ¶ 137. It was by Okhandiar's own admission that each Plaintiff would have at least a substantial or significant ownership interest in RemCo once it was formed. *See* FAC at ¶ 133 (outlining Okhandiar's promises to each Plaintiff).

In the FAC, Plaintiffs allege that when Okhandiar promised that he would create an entity on behalf of the Collective Venture to serve as its agent, Okhandiar had no intention of including Plaintiffs in the formation or ownership of the entity. FAC at ¶¶ 137. The Amended Complaint provides specific allegations about who made the false misrepresentation, to whom, and when the promises were made. *See* FAC at ¶¶ 32- 33 (outlining the promises made to Plaintiffs as Founding Group Members); FAC at ¶¶ 34-38, Exhibit A (allegation that Okhandiar sent Smith messages and provided him with an LOI which promised that Smith would be "recognized Plaintiffs as co-founders and substantial equity holders in RemCo when formed"); FAC at ¶ 40-41, Exhibit B (allegation that Okhandiar provided Nispel an LOI in October 2021 which promised that Nispel would "be issued a significant equity stake in that corporation upon its formation"); FAC at ¶ 42, Exhibit C (detailing how Okhandiar on several occasions made promises that Roux, as a co-founder and lead financial and quantitative analysis would receive a "substantial amount of equity"); FAC at ¶ 43, Exhibit D (allegation that Okhandiar provided Duff an LOI in October 2021 which promised that Duff would "receive a significant equity ownership stake in RemCo upon its formation"); FAC at ¶¶ 77-78, Exhibit J (allegation that Okhandiar issued an amended LOI to Duff to reflect that he "won't get anything new anyways"). At a minimum, Okhandiar had a fiduciary duty, as discussed below, to provide accurate information about the management and

operations of the Collective Venture. *See Eppley v. Univ. of Delaware*, No. 13-CV-99 (GMS), 2015 WL 156754, at *4 (D. Del. Jan. 12, 2015) (noting that the plaintiff must also plead the existence of a fiduciary relationship to state a claim for negligent misrepresentation). These are more than sufficient to provide notice of the basis for the claim.

In focusing on the promise of an ownership interest, Defendants also ignore the rest of the FAC's allegations that they committed promissory fraud and negligent misrepresentation. For example, in July 2022, Okhandiar falsely stated that Plaintiffs were holding keys to Remilia's multi-signature wallet so there was proper oversight over its funds and assets when Okhandiar gave himself uncheck control over the wallet even though he intended to secretly create three additional keys for himself. FAC at ¶¶ 74, 134, 138. Additionally, when Defendants entered into the NDAs with Plaintiffs in November 2022, Okhandiar falsely stated that he too signed an NDA when he did not and did not intend to. See FAC at ¶¶ 76, 135, 138.

Defendants rely on *Cavi v. Evolving Systems NC, Inc.*, but that case is easily distinguishable. In *Cavi*, the court found that the defendant's counterclaims did not satisfy the pleading requirements of Rule 9(b) because although the defendant "identifie[d] specific calendar quarters" in which the false statements were made, the defendant did not provide the general content of the misrepresentations. No. 15-1211, 2018 WL 2372673, at *3 (D. Del. May 24, 2018). The defendant in *Cavi* alleged that the plaintiff submitted false commission statements but did not include information about the content of those statements. *Id.* Here, Plaintiffs' have provided the specific dates and content of the alleged falsehoods with far greater detail than in *Cavi*.

### D.    Breach of Fiduciary Duty (Count I), Constructive Trust (Count II) and Declaratory Judgments and Injunctions (Count III) Also Do Not Fail

Defendants next argue that because the terms of the Agreements were "not definite enough" that Plaintiffs' claims for breach of fiduciary duty (Count I) and constructive trust (Count II) must fail. Not only are the Collective Venture Agreements adequately plead, but this is a misstatement of the law for which Defendants fail to provide any of their own legal support.

16

A claim for breach of fiduciary duty requires allegations of two elements: (1) that a fiduciary duty existed; and (2) that the defendant breached the duty. *See In re MobilActive Media, LLC*, Consol. C.A. No. 5725-VCP, at \*57 (Del. Ch. Jan. 25, 2013).

Incredibly, Defendants argue that Okhandiar owed no fiduciary duties to Plaintiffs. But they cannot prevail on a motion to dismiss simply by denying the well-pleaded factual allegations in the FAC. Defendants ignore that, as a member of the Collective Venture (FAC at ¶ 91), Okhandiar unquestionably owed fiduciary duties to Plaintiffs. *See J. Leo Johnson, Inc. v. Carmer*, 38 Del. Ch. 579, 584 (1959) ("The relationship of joint adventurers is fiduciary in character and imposes upon all of the participants the utmost good faith, fairness and honesty in dealing with each other with respect to the enterprise."). Additionally, the Amended Complaint shows that Okhandiar was the Chief Operating Officer of RemCo and managing member of RemCorp; thus, he owed fiduciary duties to Plaintiffs as an officer, as well. *See Feeley v. Nhaocg, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012) ("Managers and managing members owe default fiduciary duties."). When Okhandiar acquired, solely for himself and his newly formed entities, RemCorp and RemIndustries, the profits, and advantage in connection with the common enterprise that Plaintiffs and Okhandiar created in Remilia, he breached his fiduciary duties. *See* FAC at ¶¶ 71-74.

Because Plaintiffs properly state a claim for breach of contract, fraud breach of fiduciary duty and unjust enrichment,[1] the FAC also properly prays for the remedy of a constructive trust. *See Halperin v. Moreno (In re Green Field Energy Servs.)*, 610 B.R. 760, 777 (D. Del. 2019) (noting that claims for unjust enrichment, fraud, and breach of fiduciary duty and breach of contract are recognized causes of action capable of giving rise to a constructive trust).

Finally, Plaintiffs also properly state a claim for declaratory judgement and injunctive relief. Defendants cannot redefine the Agreements alleged in the FAC. The request for declaratory judgment goes beyond the supposed ambiguity of how much equity each Founding Member owns

---

[1] Defendants do not argue in their opening brief that Plaintiffs failed to state a cause of action for unjust enrichment outside of conclusory statements in a parenthetical. Op. Bried at p. 10 ("The heightened pleading standard required by Rule 9(b) extends to claims of negligent misrepresentation and unjust enrichment that 'sound in fraud.'"). Accordingly, for the purposes of this opposition, the argument is considered waived.

in the RemCo entity.  Op. Brief at p. 10 (citing FAC at ¶ 108). In any case, the FAC alleges that the Smith LOI, Nispel LOI and Duff LOI detail the formal corporate governance maintained on top-level DAO infrastructure that could be equitably enforced by this Court. *See* FAC at ¶ 101 (incorporating Exhibit A, Exhibit B, Exhibit D, by reference.)

> **E.    Plaintiffs' Claims for Promissory Estoppel (Count VIII), and Equitable Estoppel (Count IX) Similarly Does Not Fail**

Significant overlap exists between the elements of equitable estoppel, promissory estoppel, and Plaintiffs' fraud claims. Like their claims for false promise and negligent misrepresentation, Plaintiffs sufficiently plead alternative claims for promissory and equitable estoppel.

Equitable estoppel serves to remedy misconduct when a party, by conduct or misrepresentation, induces another party to act in reliance on that conduct or misrepresentation to his detriment. *Dousman v. Kobus*, 2002 WL 1335621, at *5 (Del. Ch. June 6, 2002). The elements of equitable estoppel are (1) a false representation; (2) knowledge of the real facts and the other party's corresponding lack of knowledge and inability to discover the truth; (3) intent to induce action or forbearance from action; and (4) action or forbearance by the other party in reliance on the false representation to its detriment. *Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414, at *3 n. 12 (Del. Ch. Sept. 20, 2006) (denying motion to dismiss equitable estoppel claim).

As stated above, Plaintiffs adequately plead the circumstances of the fraudulent statements that Defendants made to Plaintiffs, which go beyond a promise of ownership interest in RemCo. Moreover, the FAC pleads with particularity that Plaintiffs, who knew Okhandiar through a community of digital artists and began collaborating as friends in 2020, reasonably believed Okhandiar and reasonably relied upon his promises about the Collective Venture. FAC at ¶ 138.

Defendants cite *Harmon v. Del. Harness Racing Comm'n*, 62 A.3d 1198, 1202 (Del. 2013) and *Hyetts Corner, LLC* for the general proposition that the doctrines of promissory estoppel and equitable estoppel, respectively, are to prevent injustice. Op. Brief. at p. 12-13. But the alleged injustice necessary to support these claims are present when a defendant induces detrimental reliance by promises or representations that cause the plaintiff to forego seeking out other bargaining opportunities. *Fini v. Remington Arms Co.*, 1998 WL 299358, at *9-10 (D. Del. May

18

27, 1998) (equitable or promissory estoppel was properly alleged by a plaintiff who contended that he rejected other offers of employment in detrimental reliance on defendant's promises and representations); *see also Cornerstone Brands*, 2006 WL 2788414, at *4 n.15 (Del. Ch. Sept. 20, 2006) (claim for "promissory and/or equitable estoppel" will survive a motion to dismiss if a promise was made and if that promise induced and was intended to induce reliance).

Here, it is alleged that Okhandiar intentionally caused Plaintiffs to change their positions in reliance on Okhandiar's representations that the Collective Venture owned the various assets and intellectual property that Plaintiffs contributed and that RemCo would act as an agent for the Collective Venture. The Amended Complaint alleged that Okhandiar intended to induce detrimental reliance and it did induce detrimental reliance because Plaintiffs trusted him. FAC at ¶ 158. Everyone had a role in the Collective Venture, but Okhandiar exploited his to the Plaintiffs' detriment. That is manifest injustice.

## F.    Leave to Amend Should Be Granted

Defendants have moved for a more definite statement. Where a claim is "so vague or ambiguous" that the opposing party cannot reasonably respond, the Court may require a more definite statement pursuant to Rule 12(e).[2] This is not such a case. The FAC is both detailed in its allegations and prayer for relief. It attaches and incorporates the written portions of the Agreements and provides more than adequate notice to Defendants of the basis for the claims.

Nevertheless, to the extent the Court is inclined to grant any portion of Defendants' Motion, Plaintiffs respectfully requests that the Court grant leave to amend to redress any purported pleading deficiencies. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). (adopting a liberal approach to the amendment of pleadings). Defendants would suffer no prejudice by such leave to amend.

---

[2]    Defendants cite to Rule 12(f), which is pertinent part raised as a motion to strike. Plaintiff will assume that this was a typographical error and Defendants' intended to only move the court to order Plaintiffs to provide a more definite statement, and not a motion to strike.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. Alternatively, should the Court be inclined to grant the Motion with regard to any claims, Plaintiffs respectfully request leave to amend, which should be liberally granted.

Dated: May 7, 2024

**K&L GATES LLP**

<u>/s/ Steven L. Caponi</u>
Steven L. Caponi (No. 3484)
Matthew Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steve.caponi@klgates.com
matthew.goeller@klgates.com

-and-

Jonathan P. Hersey (admitted *pro hac vice*)
Lea E. Gierut (admitted *pro hac vice*)
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, California 92614
Telephone: (949) 253-0900
jonathan.hersey@klgates.com
lea.gierut@klgates.com

*Counsel for Plaintiffs Maxwell Roux, John Duff III, Henry Smith, and Bruno Nispel*