# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL ROUX, JOHN DUFF III, HENRY SMITH, and BRUNO NISPEL,<br><br>    Plaintiffs,<br><br>    v.<br><br>KRISHNA OKHANDIAR, REMILIA CORPORATION LLC, a Delaware limited liability company, and REMILIA INDUSTRIES, LLC, a Delaware limited liability company,<br><br>    Defendants. | CIVIL ACTION NO. 1:23-CV-01056-GBW |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Bradley W. Madsen, Esq
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT  84121
Tel: (801) 833-0477
bwmadsen@michaelbest.com
sjoffee@michaelbest.com
esstrassberg@michaelbest.com

Christopher P. Simon, Esq.
David G. Holmes, Esq.
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel:  (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................. 1

II.  REPLY TO STATEMENT OF FACTS. ............................................................................... 2
   A.  The Pleading Does Not Distinguish Between the Several Alleged Agreements, Making Identification of Facts in Support of Individual Contracts Impossible. ............................................................................................. 2
   B.  Regarding the Claims for Equity, The Facts Are Inadequate. ............................... 3

III. ARGUMENT IN REPLY. ..................................................................................................... 4
   A.  The Standard for Pleading Breach of Contract Has Not Been Met Because the Facts Cannot Support a Finding of Contract Formation. ........................................ 4
   B.  The Failure to Form a Contract Regarding Ownership Is Fatal to the Contract Claims (Counts I, II, IV and V) and Tortious Interference with Contractual Relations (Count XIII). ........................................................................................... 6
   C.  Plaintiffs' Claim for Declaratory Relief and Injunctions (Count III) Remains Impossible and Appears to be Abandoned or Compromised. ................................ 8
   D.  Plaintiffs' Claim for Promissory Fraud (Count VI) and Negligent Misrepresentation (Count VII) Fail Under the Heightened Standards of Rule 9(b). ......................................................................................................................... 8
   E.  Plaintiffs' Claim for Equitable Estoppel (Count IX) Fails and Promissory Estoppel (Count VIII) Still Fail ............................................................................... 9
   F.  Plaintiffs' Opposition Reveals Even Greater Need for A More Definite Statement. ................................................................................................................ 9

IV.  CONCLUSION .................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bellinger v. Bellinger 2018 Fam. Trust*,
2024 U.S. Dist. LEXIS 56074, (D. Del. Mar. 28, 2024) ................................................................ 8

*LG Elecs., Inc. v. Asko Appliances, Inc.*,
2012 U.S. Dist. LEXIS 86214 (D. Del. June 21, 2012) ................................................................. 4

*Parker-Hannifin Corp. v. Schlegel Elec. Materials*, Inc.,
589 F. Supp. 2d 457 (D. Del. 2008) ............................................................................................... 4

*Pharmathene, Inc. v. SIGA Techs., Inc.*,
2010 Del. Ch. LEXIS 234 (Del. Ch. Nov. 23, 2010) ..................................................................... 6

*VLIW Tech, LLC v. Hewlet-Packard Co.*,
840 A.2d 606 (Del. 2003) .............................................................................................................. 5

**Rules**

Fed. R. Civ. P. 9 ......................................................................................................................... 8, 9

I.   **INTRODUCTION**

Plaintiffs' Answering Brief in Support of Opposition to Defendants' Motion to Dismiss [D.I. 23] (the "Opposition") fails to identify any pleaded facts that would plausibly support a claim for equity ownership in RemCorp or any other entity. This is because the pleaded facts establish that the alleged agreement does not include essential terms and, therefore, no enforceable contract can be formed. Instead, Plaintiffs' own explanations make it even clearer that Plaintiffs have not pleaded facts that plausibly support contract formation. The facts show, if anything, that any eventual ownership interests were to be negotiated at a future time. Rather than identifying the basic "who, what, when, where and how" of the alleged agreement for equity, Plaintiffs have revealed that no agreement existed.

Plaintiffs argue that dismissal is improper because they have pleaded that several agreements exist. This argument ignores the fundamental nature of the claim for equity and does not prevent a ruling eliminating Plaintiffs' equity arguments and related claims now. Additionally, Plaintiffs' position reveals the ongoing and extensive deficiencies of their pleadings. It is impossible to determine from the pleadings or the Plaintiffs' Opposition how many agreements they allege exist, when any specific agreement was formed, or even what the terms of a single agreement are.

Where the pleaded facts establish that there is no enforceable agreement for equity, the Court can and should rule now. The law does not require the Court and the parties to engage in expensive and burdensome discovery only to reach the end and know what they know now – that it is impossible for the Court to fashion a declaration or make a judgment granting an ownership amount that was never promised and never defined.

## II.     REPLY TO STATEMENT OF FACTS

In an effort to focus and clarify the arguments, Defendants respond to the Opposition's recitation of facts as they relate to the alleged contract for equity. Doing so reveals that the alleged facts are insufficient as they cannot establish contract formation and do not reveal *where* the Defendants or Court should be looking to identify the terms of the agreement for equity, *who* was involved in such agreements, *when* they were entered, or *how* the agreements were reached or were memorialized.

### A.     The Pleading Does Not Distinguish Between the Several Alleged Agreements, Making Identification of Facts in Support of Individual Contracts Impossible.

The Opposition identifies paragraph 32 of the First Amended Complaint [D.I. 16] (the "FAC"), which states:

> Throughout the last six months of 2021, the Founding Group considered, negotiated <u>and in some instances entered into</u> various written and verbal agreements ("Agreements"), concerning the management of the Collective Venture and the eventual structure and formation of a corporate entity that would be owned by the Founding Group to be an agent for the Collective Venture, and how that agent-corporation would be governed and managed.

The Opposition addresses the paragraph by stating that "the Founding Group entered into various written and verbal agreements concerning the management and operations of the Collective Venture." *See* Opposition at pg. 8 of 25. Then, the Opposition identifies six separate descriptions of alleged agreements by the Founding Group, only one of which is regarding Plaintiffs' equity. *Id.* at pgs. 8-9 of 25. The Opposition and FAC are unable to identify what facts, conduct, writings, or discussions give rise to specific agreements and, instead, state only:

> As alleged above, <u>some of the terms of these Agreements</u> were memorialized in signed written contracts that the parties labeled "Letters of Intent" (hereinafter "LOIs"). Other parts of the Agreements were memorialized in email and chats. Among other things, the Agreements provided the Plaintiffs' salaries and other

2

> compensation understandings, and expressly recognized Plaintiffs as co-founders and substantial equity holders in RemCo when formed.

FAC at ¶ 34; *see also* Opposition at pg. 9 of 25.  The pleading does not identify which Agreements were memorialized in which writings.  It is not possible to infer from the paragraph which Agreements were memorialized in any fashion, as only some of the Agreements were memorialized.  Specifically as to the claim for equity, the paragraph is silent.  Subsequent paragraphs of the FAC and Opposition do little to clarify and are addressed below.

> **B.     Regarding the Claims for Equity, The Facts Are Inadequate.**

When addressing specifically the claims for equity, the FAC and Opposition do not provide sufficient facts to overcome dismissal.  The Smith LOI in October of 2021 is allegedly part of the equity agreement with Smith and was for "a significant stake in Remilia."  FAC at ¶ 35. The Opposition does not clarify any additional facts regarding Smith's alleged ownership stake.  The FAC also states that "on several other occasions, <u>members of the Founding Group</u> assured Smith . . . he would receive equity[.]"  FAC at ¶ 39; *see* Opposition at pgs. 4-5 of 25.  The Opposition does not clarify which members of the Founders Group (which includes all Plaintiffs) assured Smith, when they assured him, or how they assured him of the undefined ownership stake.

Also in October of 2021, Nispel signed an LOI "with the same terms" and "was to be issued a significant equity stake."  FAC at ¶¶ 40-41.  Duff also signed a LOI with the same general terms in October, 2021.  FAC at ¶ 43.  For Roux, the FAC and Opposition only state that the promise to him of "a substantial amount of equity" was made "[i]n several verbal and written communications."  FAC at ¶ 42. Such communications include Exhibit C to the FAC, which is a single message, bare of any context or response by Roux, wherein Okhandiar allegedly wrote on December 13, 2021, "I plan to distribute equity, you'll have serious exposure."  The form, timing, and contents of those "verbal and written communications" are not further clarified.

3

In December of 2022, the "Agreement to Negotiate" with Duff was allegedly signed, which stated that Duff and Okhandiar "intend to come to an agreement on the <u>initial</u> shareholding distribution" and that Duff's "shareholding allotment" would be "in writing before any further shares are issued or allotted, including to other founders, investors or employees." FAC at ¶ 78 (citing exhibit J with quoted language, D.I. 1601 page 34).

That is the extent of factual allegations regarding the alleged contract for equity. For the reasons stated in Defendants' opening memorandum, and as explained below, these facts are insufficient.

### III.  ARGUMENT IN REPLY

#### A.  The Standard for Pleading Breach of Contract Has Not Been Met Because the Facts Cannot Support a Finding of Contract Formation.

The standard for pleading breach of contract in Delaware is clear and requires facts that allow the conclusion that "a definite and final agreement on all essential terms" was reached. *LG Elecs., Inc. v. Asko Appliances, Inc.*, 2012 U.S. Dist. LEXIS 86214, *4 (D. Del. June 21, 2012). This is a basic element of *contract formation* and is not met in scenarios where the alleged agreement "did not resolve all the issues between the parties." *Id*. at *6; *see also Parker-Hannifin Corp. v. Schlegel Elec. Materials*, Inc., 589 F. Supp. 2d 457, 461-62 (D. Del. 2008).[1] Hence, when there are "missing terms . . . [that] are essential terms that would lead a reasonable negotiator to conclude that [there] was not an agreement on all of the essential terms," then no contract was formed. *Id*. at *8.

---

[1] The opinion in *Parker-Hannifin* clearly explains that Delaware law applies an objective standard to determine whether a contract was formed: "Specifically, the objective standard is whether a 'reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that agreement concluded the negotiations and formed a contract." *Id.*

4

The Opposition's attempt to recast this standard by citing to *VLIW Tech, LLC v. Hewlet-Packard Co.*, 840 A.2d 606 (Del. 2003) is not persuasive. That case did not deal with contract formation and the requirement for "all essential terms." Rather, *VLIW* considered a pleading that alleged a contract that included "certain contractual obligations." *Id*. at 612. Once those "certain contractual obligations" were pleaded, it was sufficient to allege that they were breached and thereby overcome a motion to dismiss. *See id*. (setting forth basic description of pleading standard) and at 613 (reciting facts from complaint before ruling that dismissal was incorrect). *VLIW* also addressed ambiguities that may exist in a contract and the requirement of resolving such ambiguities in favor of a non-moving party when considering a motion to dismiss. *See id*. at 615. That is not the case here. Ambiguity cannot exist where there is no contractual term that can even be interpreted as ambiguous. A finder of fact cannot, at some future date, determine that the parties agreed that Plaintiffs would receive specific ownership percentages because the parties never reached such an agreement and Plaintiffs do not even plead or argue that such an agreement was made. Plaintiffs reliance on *VLIW* in this regard is misplaced.

The alleged agreements for equity fail under this standard because they are lacking the most fundamental and essential of all terms – how much the Plaintiffs were to receive, the form or nature of their equity, or even a method by which their equity amounts could be determined. The failure to form an enforceable contract for equity is further established by allegations regarding the "Agreement to Negotiate" that states on its face that Okhandiar and Duff, "intend to come to an agreement on <u>an initial</u> shareholding distribution for Remilia corporation" and that Duff's "shareholder allotment" would be "in writing <u>before</u> any further shares are issued or allotted, including to other founders, investors or employees." FAC at ¶ 78 (emphasis added). This

5

agreement came *after* any other identified agreement for equity, including the Letters of Intent.[2] Delaware disallows "agreements to agree," as they demonstrate that the parties had not come to an agreement regarding essential terms:

> [W]here "commercial parties draft a term sheet that is intended to serve as a template for a formal contract, the law of this state, in general, prevents the enforcement of the term sheet as a contract if it is subject to future negotiations because it is, by definition, a mere agreement to agree."

*Pharmathene, Inc. v. SIGA Techs., Inc.*, 2010 Del. Ch. LEXIS 234, 2010 WL 4813553, at *7 (Del. Ch. Nov. 23, 2010) (internal citation omitted). The "Agreement to Negotiate" is not even sufficient to be called an "agreement to agree," and leaves no doubt that the parties themselves knew they had not agreed to essential terms.

The facts pleaded in the FAC cannot, under Delaware law, ever establish an agreement for equity. They establish the opposite – that the parties never agreed to the most fundamental terms including the amount of ownership, the nature of ownership, or a method by which ownership would be determined, and *expressly and in writing* affirmed that any ownership was subject to future negotiation.

> **B.   The Failure to Form a Contract Regarding Ownership Is Fatal to the Contract Claims (Counts I, II, IV and V) and Tortious Interference with Contractual Relations (Count XIII).**

The Opposition argues that there is not one agreement that included equity ownership but, instead, an unknown number of agreements by and among various parties that are collectively identified in the Opposition as the "Collective Venture Agreements."[3] The Opposition refers to

---

[2] *See Opening Brief*, D.I. 21 at pgs. 10-11 of 18 (explaining that "Agreement to Negotiate" was modified in December of 2022, after almost all relevant facts and after the alleged agreements with other Plaintiffs for equity.).

[3] This argument seems clearest in the Opposition, under the heading "ii. Plaintiffs Adequately State a Claim for Breach of the Collective Venture Agreement as Defined in the Amended Complaint." Opposition at pg. 16 of 25.

6

the "Collective Venture Agreement as Defined in the Amended Complaint" and then cites to FAC ¶ 34. *See* Opposition at pg. 16 of 25. As discussed in the Reply to Statement of Facts above, this paragraph defines the term "Agreements" and provides no distinction between the multiple, possible agreements and offers no information about the separate formation and terms of each unspecified agreement. This argument reveals the extensive deficiencies of the pleading. If there are many agreements, then the FAC fails to identify the basic facts of formation for any of them, as it does not differentiate between the multiple alleged agreements in its fact section or when making specific claims. As a basic matter of pleading, Defendants are entitled to know how many agreements are alleged, the basis of formation for each of them, the terms of each of them, and the manner in which each was allegedly breached.

The Opposition also ignores or skirts the specific allegations found within each challenged contract claim. This is likely because each claim specifically identifies the alleged agreement for equity.[4] To the extent Plaintiffs are now arguing that each of these claims is for breach of separate, distinct agreements, some of which do not include promises of equity, the claims for equity should still be dismissed as the existence of other non-equity agreements does not remedy the defects in the pleading as to the equity claims. It is clearly within the power of the court to rule and dismiss all claims based on the alleged equity contract. Plaintiffs themselves suggest that the Court can treat each of the "various agreements alleged" as a distinct claim.[5]

---

[4] Defendants' opening brief set forth quotations from counts I, II, IV, and V (sounding in contract) regarding their relationship to the alleged equity agreements at page 13 of 18; Count XIII is addressed on page 17 of 18.
[5] *See e.g.* Opposition at pg. 18 of 25, stating "Each of these allegations are sufficient to support a of which on its own states a claim for breach of contract [sic]."

7

      **C.**      **Plaintiffs' Claim for Declaratory Relief and Injunctions (Count III) Remains Impossible and Appears to be Abandoned or Compromised.**

Regarding Count III and Plaintiffs' request that the Court declare that "Plaintiffs, and each of them, are equity owners in Remco" and then order "the issuance of equity . . . and the delivery of an acceptable shareholders' or operating agreement" (FAC at ¶ 108), the Plaintiffs now state that "the request for declaratory judgment goes beyond . . . how much equity each Founding Member Owns." Opposition at pg. 23 of 25. In other words, the Opposition impliedly acknowledges that its request that the Court do what the parties failed to do – determine the equity stake of each Defendant – is not possible when there is no agreement for the amount of equity. Where Plaintiffs have failed to adequately plead any promise for equity, the Court can rule now on this claim and dismiss it.

      **D.**      **Plaintiffs' Claim for Promissory Fraud (Count VI) and Negligent Misrepresentation (Count VII) Fail Under the Heightened Standards of Rule 9(b).**

The Opposition acknowledges that Plaintiffs' claims for Promissory Fraud and Negligent Misrepresentation must meet the heightened standards of Rule 9(b), but then argues they do so because Plaintiffs have stated the "circumstances" of the fraud. *See* Opposition at pg. 19 of 25. To satisfy rule 9(b), a plaintiff should include the "who, what when, where and how" of every promise they claim was made. *See Bellinger v. Bellinger 2018 Fam. Trust*, 2024 U.S. Dist. LEXIS 56074, *4-5 (D. Del. Mar. 28, 2024) ("Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud or mistake. Put another way, Rule 9(b) requires that a plaintiff set forth 'the who, what, when, where, and how' of the alleged fraud.") (cleaned up). Plaintiffs simply fail to provide this information, particularly to the claims regarding the alleged promises of equity. Trying to identify these basic elements from Plaintiffs' submissions proves impossible. The "Agreement to Negotiate" that allegedly is the basis of Duff's claim to equity elucidates the

difficulty. The Agreement to Negotiate, with its alleged promise to determine ownership amounts at some point in the future, came *after* the other alleged promises for equity. *See* FN 2, supra. To the question, "who was promised what, and how and when were those promises made?" the answer can only be "Duff was promised that an unknown amount of *initial* equity could be decided at some future date (but before any equity to other Plaintiffs was issued), by way of the Agreement to Negotiate, and after the LOIs and other events that Plaintiffs claim support their claim to equity." This type of pleading cannot support claims that require the particularity of Rule 9(b) and establishes that the parties had not agreed to the essential terms required for contract formation.

> **E.      Plaintiffs' Claim for Equitable Estoppel (Count IX) Fails and Promissory Estoppel (Count VIII) Still Fail.**

The Opposition emphasizes that the FAC's claims "go beyond a promise of ownership interest." Opposition at pg. 23 of 25. Plaintiffs' equitable estoppel claim however, asserts that Defendants made "promises and statements" regarding Plaintiffs' "ownership interest in the Collective Venture, RemCorp, [and/or] RemIndustries." FAC at ¶ 157. As is the case with much of Plaintiffs' arguments, their inability to identify specific agreements should not be wielded to overcome dismissal of the distinct claim for equity when the burden of adequately pleading such a claim is born by Plaintiffs.

> **F.      Plaintiffs' Opposition Reveals Even Greater Need for A More Definite Statement.**

It is clear that Plaintiffs cannot plausibly allege that any enforceable contract for equity exists. Their claims relying on those allegations should be dismissed. The Opposition reveals even greater failings, as Plaintiffs allege an unspecified number of contracts, arising at unknown times and from unknown circumstances, each with unknown terms. They intend to raise claims that require pleading with particularity based on these alleged contracts. The law requires Plaintiffs to tell Defendants, by way of pleading, more than the FAC provides. Defendants are

entitled to know what contracts are being alleged, how those contracts were formed, and how they are allegedly breached. For claims subject to the heightened pleadings of Rule 9(b), more is required. Should the Court grant leave to amend or require a more definite statement, Plaintiffs should be required to plead the required facts for each alleged contract.

## IV.   CONCLUSION

For the foregoing reasons, and those stated in their Opening Brief, Defendants respectfully request that counts I through IX and count XIII be dismissed pursuant to Federal Rule 12(b)(6) or, in the alternative, that Plaintiffs be ordered to provide a more definite statement of the basis for their claims.

Dated: May 24, 2024

CROSS & SIMON, LLC

*/s/ David G. Holmes*
Christopher P. Simon (No. 3697)
David G. Holmes (No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel:  (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

- and -

Bradley W. Madsen, Esq
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT  84121
Tel: (801) 833-0477
bwmadsen@michaelbest.com
sjoffee@michaelbest.com
esstrassberg@michaelbest.com

*Attorneys for Defendants*