## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MAXWELL ROUX, JOHN DUFF III, HENRY SMITH & BRUNO NISPEL,

Plaintiffs,

v.

KRISHNA OKHANDIAR, REMILIA CORPORATION LLC & REMILIA INDUSTRIES LLC,

Defendants.

Civil Action No. 23-1056-GBW

---

Steven L. Caponi, Matthew Goeller, K&L GATES LLP, Wilmington, Delaware; Jonathan P. Hersey, Lea E. Gierut, K&L GATES LLP, Irvine, California.

*Counsel for Plaintiffs*

Christopher P. Simon, David G. Holmes, CROSS & SIMON, LLC, Wilmington, Delaware; Bradley W. Madsen, Steven J. Joffee, Evan S. Strassberg, MICHAEL BEST & FRIEDRICH LLP, Cottonwood Heights, Utah.

*Counsel for Defendants*

**MEMORANDUM OPINION**

March 31, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Now pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint or, in the Alternative, for a More Definite Statement ("Motion") (D.I. 20), which has been fully briefed (D.I. 21; D.I. 23; D.I. 24).[1] Defendants' Motion addresses Counts I-IX and XIII of Plaintiffs' First Amended Complaint ("FAC"). D.I. 20.

For the reasons set forth below, the Court grants-in-part and denies-in-part Defendants' Motion. Specifically, the Court grants Defendants' Motion with respect to Counts I-VII and XIII, and dismisses those counts for failure to state a claim as a matter of law. The Court denies Defendants' Motion with respect to Counts VIII and IX. The Court also grants Plaintiffs leave to amend.

## I.    FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' FAC (D.I. 16) and are assumed true for the purpose of resolving Defendants' Motion.

Plaintiffs and Okhandiar met online between 2020 and 2021. D.I. 16 ¶ 26. In or around September 2021, Plaintiffs and Okhandiar created "Remilia," an "unincorporated joint venture digital art collective association." D.I. 16 ¶ 27. Remilia's business includes the creation of non-fungible-token art projects ("NFT Projects"). *Id.*

---

[1] The Plaintiffs in this action are Maxwell Roux ("Mr. Roux" or "Roux"), John Duff III ("Mr. Duff" or "Duff"), Henry Smith ("Mr. Smith" or "Smith"), and Bruno Nispel ("Mr. Nispel" or "Nispel") (together, "Plaintiffs"). The Defendants in this action are Krishna Okhandiar (a/k/a Rohit Okhandiar, Charlotte Fang, Charlie Fang, Wonyoung Jang, Miya, Xinma33, MissJo, and Sonya) ("Mr. Okhandiar" or "Okhandiar"), Remilia Corporation LLC ("RemCorp"), and Remilia Industries LLC ("RemIndustries") (together, "Defendants").

2

During the second half of 2021, Plaintiffs and Mr. Okhandiar "considered, negotiated, and in some instances entered into various written and verbal agreements" ("Agreements"). D.I. 16 ¶ 32. These Agreements concerned Remilia's management, "the eventual structure and formation of a corporate entity" to be owned by Plaintiffs and Mr. Okhandiar (the "Intended Corporation"), and how that Intended Corporation "would be governed and managed." *Id.*

According to the FAC, "some" of the Agreements' terms were memorialized in letters of intent ("LOI"). D.I. 16 ¶ 34. First, Mr. Okhandiar provided Mr. Smith an LOI ("Smith LOI"). D.I. 16 ¶ 35; D.I. 16-1, Ex. A. The Smith LOI invited Mr. Smith to join Remilia as its "Lead Artist" and provided for an annual salary and an annual incentive bonus. D.I. 16-1, Ex. A. Second, Mr. Okhandiar provided Mr. Duff a similar LOI ("Duff LOI"), inviting him to join Remilia as a "Smart Contract Developer." D.I. 16 ¶ 43; D.I. 16-1, Ex. D. Third, Mr. Okhandiar provided Mr. Nispel an LOI ("Nispel LOI") that invited Mr. Nispel to join Remilia as its "Chief Operating Officer." D.I. 16 ¶¶ 40-41; D.I. 16-1, Ex. B. On December 13, 2021, Mr. Okhandiar messaged Mr. Roux that he had plans to distribute equity and that Mr. Roux would have "serious exposure," though Okhandiar did not want to "commit to a simplistic model." D.I. 16-1, Ex. C. This was repeated in "several verbal and written communications authored or acknowledged by Okhandiar." D.I. 16 ¶ 42.

In May 2022, after a series of "extremist and overtly racist posts" on Twitter, the market price of Remilia's primary NFT Project crashed. D.I. 16 ¶ 64. Mr. Okhandiar admitted to being the source of the posts and stepped down. *Id.* Following Mr. Okhandiar's departure, Remilia announced that Messrs. Smith and Nispel would take over core projects. D.I. 16 ¶ 65. Mr. Okhandiar later stepped back into daily operations. *Id.* Messrs. Smith and Nispel were added as key holders to Remilia's treasury, a multi-signature cryptocurrency wallet, so that Mr. Okhandiar

3

would not possess unrestricted treasury control. *Id.* Without the consultation of Plaintiffs, Mr. Okhandiar formed RemCorp in July 2022 and RemIndustries in October 2022. D.I. 16 ¶¶ 72-73.

By November 2022, Mr. Okhandiar had added six "persons" as key holders to the Remilia treasury, including Messrs. Smith and Nispel. D.I. 16 ¶ 74. Messrs. Smith and Nispel later learned that "Okhandiar secretly created three additional keys for himself, thereby giving himself control of four of the multi-signature wallet's seven keys, and thus full control" over Remilia's treasury. *Id.* As of this time, Plaintiffs were allegedly owed money and Mr. Okhandiar allegedly refused to pay them from Remilia's treasury. D.I. 16 ¶ 75.

After Plaintiffs requested compensation, Mr. Okhandiar presented the Plaintiffs with non-disclosure agreements ("NDA") as between Plaintiffs and RemCorp and represented that he had already signed an NDA. D.I. 16 ¶ 76. Messrs. Smith, Roux, and Nispel signed the NDAs. *Id.* Unlike the other Plaintiffs, Mr. Duff refused to sign his NDA without an agreement in writing that he owned equity in RemCorp, prompting the creation of an amended LOI ("Duff's Second LOI") and a second document, titled "Agreement to Negotiate." D.I. 16 ¶ 78; D.I. 16-1, Ex. J.

Sometime afterwards, Plaintiffs learned that Mr. Okhandiar transferred digital assets then-worth roughly $600,000 to his personal cryptocurrency wallet. D.I. 16 ¶ 80. On September 11, 2023, Mr. Okhandiar tweeted that he would be "moving the treasury funds from crypto into the fiat business bank accounts." D.I. 16 ¶ 84; D.I. 16-1, Ex. M. Less than twenty-four hours later, Mr. Okhandiar transferred digital assets then-worth $1.7 million from Remilia's treasury to personal accounts. D.I. 16 ¶ 84.

## II.   PROCEDURAL HISTORY

On March 8, 2024, Plaintiffs filed their FAC, which is the operative pleading in this action. D.I. 16. On April 12, 2024, Defendants filed their Motion (D.I. 20), which has been fully briefed

(D.I. 21; D.I. 23; D.I. 24). Defendants' Motion addresses the following Counts of Plaintiffs' FAC: (I) breach of fiduciary duty; (II) constructive trust; (III) declaratory judgments and injunctions; (IV) breach of collective venture agreements; (V) breach of the implied covenant of good faith and fair dealing; (VI) promissory fraud; (VII) negligent misrepresentation; (VIII) promissory estoppel; (IX) equitable estoppel; and (XIII) tortious interference with contractual relations. D.I. 20. The Court now turns to the merits of Defendants' Motion.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

In evaluating a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, C.A. No. 23-

5

1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024) (first citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)).

"A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 23-239, 2024 WL 2804703, at *1 (D. Del. May 31, 2024) (citing *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991)).

### B.    Motion for a More Definite Statement

A party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions are generally viewed with disfavor, particularly where the information sought by the motion could easily be obtained by discovery." *Deloitte Consulting LLP v. Sagitec Sols. LLC*, C.A. No. 23-325-WCB, 2023 WL 6039069, at *2 (D. Del. Sept. 15, 2023) (Bryson, J., sitting by designation) (quoting *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581 (D. Del. 2015) (cleaned up and further citation omitted)). This rule applies where "a pleading is unintelligible . . . or the issues cannot be determined." *Id.* (quoting *Gross*, 123 F. Supp. 3d at 581).

### C.    Breach of Contract

In Delaware, "the elements of a breach of contract claim are: '(1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and

6

(3) damages resulting from the breach.'" *Inkit, Inc. v. airSlate, Inc.*, No. CV 23-00793-RGA, 2025 WL 2662150, at *15 (D. Del. Sept. 17, 2025) (quoting *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 140 (Del. 2022)).  With respect to the existence of a contract, "a valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). "A contract is sufficiently definite and certain to be enforceable if the court can – based upon the agreement's terms and applying proper rules of construction and principles of equity – ascertain what the parties have agreed to do." *United States v. Biden*, 729 F. Supp. 3d 430, 440-41 (D. Del. 2024) (quoting *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018)). "Terms are sufficiently definite if they permit a court to determine if a breach has occurred and to fashion an appropriate remedy." *Id.* at 441 (citing *Eagle Force*, 187 A.3d at 1232).

## IV.    DISCUSSION

The Court divides its discussion into four parts.[2]  First, the Court addresses whether Plaintiffs adequately plead the existence of an enforceable contract that could give rise to their first cause of action (Count I).  Second, after concluding that Plaintiffs have not adequately pled the existence of an enforceable contract, the Court addresses Plaintiffs' causes of action that rely upon the existence of an enforceable contract (Counts III-V and XIII).  Third, the Court addresses Plaintiffs' causes of action that do not rely upon the existence of an enforceable contract (Counts II and VI-IX).  Fourth, the Court grants Plaintiffs leave to amend their pleading.

---

[2] In doing so, the Court applies Delaware law, as employed by the parties. *See generally* D.I. 20 (applying Delaware law); D.I. 23 (same); *Richey v. Showtime Networks Inc.*, No. 1:24-CV-00134-SB, 2025 WL 843278, at *2 (D. Del. Mar. 18, 2025) (Bibas, J., sitting by designation) (applying Delaware law where the parties did not raise choice of law and briefed under Delaware law).

### A.    Plaintiffs Do Not Plead the Existence of an Enforceable Agreement

Count I alleges that Mr. Okhandiar's conduct constitutes breaches of the duty of care, loyalty, and good faith owed to Plaintiffs under the "Agreement."[3] D.I. 16 ¶¶ 88-98.

"Delaware law recognizes the primacy of contract law over fiduciary law." *Stewart v. BF Bolthouse Holdco, LLC*, C.A. No. 8119–VCP, 2013 WL 5210220, at *12 (Del. Ch. Aug. 30, 2013) (citation omitted). "It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim." *Id.* (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010)). "In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec*, 991 A.2d at 1129. Because Plaintiffs' theory of Count I depends on obligations owed under a contract allegedly formed by the parties (*see* D.I. 16 ¶¶ 88-98), the Court analyzes Count I as a claim for breach of contract.

Defendants move to dismiss Count I, asserting that this cause of action requires "an enforceable agreement," and that Plaintiffs have failed to plead one. D.I. 21 at 10. Specifically, Defendants claim (1) that the FAC does not contain "any allegations identifying the number of shares or amount of ownership interest" Plaintiffs were entitled to receive, and (2) that there was no "meeting of the minds on fundamental aspects of the supposed contract," including the ownership stake. *Id.* at 8. Having thoroughly considered the FAC and the parties' briefing, the Court agrees with Defendants that Plaintiffs have failed to plead the existence of an enforceable agreement as between Plaintiffs and Defendants, for the following reasons.

---

[3] From the context of Count I, the Court understands the term "Agreement" to refer to the "Agreements" defined above. The FAC also refers to "agreements," "Agreements," and "Collective Venture Agreements," all of which appear to be used synonymously. *See generally* D.I. 16.

8

*First*, it is unclear from the FAC how many Agreements were formed or when they were formed.[4] For example, Plaintiffs allege that the Agreements were "considered, negotiated, and in some instances entered" in the second half of 2021. D.I. 16 ¶ 32. However, the FAC elsewhere identifies the Agreement to Negotiate, and the Second Duff LOI as containing the terms of the parties' alleged contractual relationship, despite the FAC's allegations that these two documents came into existence in December 2022, roughly one year *after* the alleged formation of the Agreements. *Cf.* D.I. 16 ¶ 78, 89. In sum, the Court finds that Plaintiffs have not alleged the existence of an enforceable contract between all Plaintiffs and all Defendants that could give rise to the alleged duties described in Count I. *See Osborn*, 991 A.2d at 1158.

*Second*, even assuming all Plaintiffs and all Defendants were parties to the alleged contract, *see Madison Realty Partners 7, LLC v. Ag ISA, LLC*, C.A. No. 18094, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001) ("As a general matter, only a party to a contract has enforceable rights under, and may sue for breach of, that contract."), Plaintiffs have not alleged an agreement as to all material terms. A contract "must contain all material terms in order to be enforceable." *Osborn*, 991 A.2d at 1159 (quoting *Ramone v. Lang*, C.A. No. 1592-N, 2006 WL 905347, at *10 (Del. Ch. Apr. 3, 2006)). "If terms are left open or uncertain, this tends to demonstrate that an offer and acceptance did not occur." *Ramone*, 2006 WL 905347, at *11 (citation omitted). In the instant action, Plaintiffs rely on several writings or oral agreements over the course of two years. Many of the writings are not executed or are only partially executed. Moreover, allegations describing

---

[4] Plaintiffs' briefing references *multiple* "Agreements" and "Collective Venture Agreements." D.I. 23 at 16. The term "Collective Venture Agreements" is not defined. On the other hand, Count I references *one* "Agreement for purposes of creating [Remilia]." D.I. 16 ¶ 89. The Court notes that the FAC does not independently allege breaches of the LOIs, NDA, or the Agreement to Negotiate as between individual Plaintiffs and individual Defendants.

later discussions and writings (e.g., the Agreement to Negotiate), rehashing the same issues (e.g., equity promises), further suggest that there was no meeting of the minds prior to that point. *See Ramone*, 2006 WL 905347, at *11 (noting that "further negotiations on substantive issues demonstrate that an enforceable contract between [the parties] was not in place").

Plaintiffs oppose, contending that Defendants unduly focus on one aspect of the Agreements, equity. D.I. 23 at 11-13. The Court disagrees. Plaintiffs allege that equity ownership was a "pertinent part" of the alleged Agreements (D.I. 16 ¶ 33), and that Mr. Duff refused to sign his NDA without written assurances that Mr. Duff owned equity in the Intended Corporation. D.I. 16 ¶ 77. In other words, equity ownership was material to the parties, and the parties never had a meeting of the minds as to a material term of the alleged contract.

In sum, to the extent that Count I depends on the existence of an "Agreement" or several "Agreements," Count I fails to state a claim as a matter of law.[5] Thus, the Court grants Defendants' Motion with respect to Count I and dismisses it without prejudice.

### B. Plaintiffs' Causes of Action Depending on an Enforceable Agreement Necessarily Fail as a Matter of Law

Several of Plaintiffs' causes of action depend upon formation of an enforceable contract. As set forth above, the Court agrees with Defendants that Plaintiffs have not adequately alleged the existence of an enforceable contract. Thus, the Court grants Defendants' Motion with respect

---

[5] To the extent Count I purports to rely on the fiduciary duties owed by Mr. Okhandiar, independent of any duties owed under a contract theory, by virtue of his positions in the newly formed entities or with respect to the creation of a non-contractual joint venture, the Court finds that, at this juncture, Plaintiffs have not properly developed these theories. Both theories are referenced in passing in a single paragraph, contained within a section addressing three separate causes of action. *See Ammar v. McDonough*, C.A. No. 22-1608-GBW, 2025 WL 692084, at *19 (D. Del. Mar. 4, 2025).

to Counts III, IV, V, and XIII, and dismisses them without prejudice. For completeness, the Court briefly analyzes these Counts below.

### 1. Count III (Declaratory Judgments and Injunctions)

Count III is titled "Declaratory Judgments and Injunctions" and seeks relief under "28 U.S.C. § 2201 and 6 Del. C. §§ 18-110, 18-111, 18-112, 18-205, 18-209, 18-216, & 18-802 (*among others*)" and "injunctive relief." D.I. 16 ¶¶ 107-13 (emphasis added);[6] *see also id.* ¶ 108 (alleging that Plaintiffs are entitled to this relief "[u]nder a construction of the Agreements"). Defendants contend that Count III should be dismissed because it relies on "a construction of the Agreements" and Plaintiffs have failed to adequately allege the formation of an enforceable contract. D.I. 21 at 10-11. The Court agrees and dismisses Count III without prejudice.

### 2. Count IV (Breach of Collective Venture Agreements)

Count IV alleges breach of the Agreements.[7] D.I. 16 ¶¶ 114-25. As set forth above, Plaintiffs have not adequately pled the existence of an enforceable contract. Thus, the Court grants Defendants' Motion with respect to Count IV and dismisses it without prejudice.

---

[6] The Court notes that the FAC does not allege how Plaintiffs could avail themselves of the above-cited provisions of the Delaware Code for the purpose of obtaining a declaratory judgment or injunction in the District of Delaware. *See, e.g.,* 6 Del C. § 18-112 ("*Upon motion by the Attorney General*, the *Court of Chancery* shall have jurisdiction to cancel the certificate of formation of any domestic limited liability company for abuse or misuse of its limited liability company powers, privileges or existence. *The Attorney General shall proceed for this purpose in the Court of Chancery.*" (emphasis added)).

[7] Specifically, Count IV alleges breach of the "Collective Venture Agreements," yet also refers to a singular "Agreement." *See* D.I. 16 ¶ 120. As stated above, the Court understands these terms to refer to the Agreements.

3.    Count V (Breach of the Implied Covenant of Good Faith and Fair Dealing)

Count V alleges breaches of implied covenants of good faith and fair dealing under the Agreements. D.I. 16 ¶¶ 126-30. Defendants seek to dismiss Count V because it "sound[s] in contract" and no enforceable agreement exists. D.I. 21 at 10. Defendants contend that Count V rises and falls with Plaintiffs' breach of contract claim. *Id.* Plaintiffs appear to agree. D.I. 23 at 13 ("That argument[] [] fail[s] for the same reasons that Plaintiffs[ ]have stated a claim for breach of contract."). As set forth above, Plaintiffs have not adequately pled the existence of an enforceable contract. Thus, the Court grants Defendants' Motion with respect to Count V and dismisses it without prejudice.

4.    Count XIII (Tortious Interference with Contractual Relations)

Plaintiffs bring Count XIII against RemCorp and RemIndustries, in the alternative, if RemCorp and RemIndustries are not found to be an alter ego of Mr. Okhandiar or the agents of Remilia. D.I. 16 ¶¶ 180-85. Count XIII purports to rely on RemCorp and RemIndustries' alleged interference in the alleged breach of the "Collective Venture Agreements" (*see* Count IV). D.I. 16 ¶ 181.

"Under Delaware law, the elements of a claim for tortious interference with a contract are: '(1) *a contract*, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.'" *O'Gara v. Coleman*, C.A. No. 2018-0708, 2020 WL 752070, at *9 (Del. Ch. Feb. 14, 2020) (emphasis added) (quoting *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013)). Because Plaintiffs have not adequately alleged the formation of an enforceable contract, as stated above, RemCorp and RemIndustries cannot have tortiously interfered with that contract. *See id.* Thus, the Court grants Defendants' Motion with respect to Count XIII and dismisses it without prejudice.

12

**C.** **The Remainder of Defendants' Motion is Granted-in-Part and Denied-in-Part**

The remaining Counts subject to Defendants' Motion are Counts II and VI-IX. The Court addresses each in turn.

1. Count II (Constructive Trust)

Count II seeks the imposition of a constructive trust over assets, funds, and intellectual property. D.I. 16 ¶¶ 99-106. Plaintiffs' briefing concedes that Count II "prays for the remedy of a constructive trust." D.I. 23 at 17. The constructive trust "is an equitable remedy of great flexibility and generality, and is viewed as 'a remedial [and] not a substantive' institution." *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (quoting *McMahon v. New Castle Associates*, 532 A.2d 601, 608 (Del. Ch. 1987)). Indeed, the authority Plaintiffs cite supports the proposition that a constructive trust may be imposed as a remedy for numerous causes of action. *In re Green Field Energy Servs., Inc.*, 610 B.R. 760, 777 (D. Del. 2019), *aff'd sub nom. In re Green Field Energy Servs., Inc*, 834 Fed. App'x 695 (3d Cir. 2020); *see also Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000) ("A constructive trust is simply one of many conceivable alternative remedies which might be available after trial should plaintiffs prevail on one or more of their theories of recovery.").

Thus, the Court grants Defendants' Motion with respect to Count II and dismisses it with prejudice. However, this does not foreclose Plaintiffs from seeking this remedy, if appropriate, for Plaintiffs' surviving claims. *See, e.g., Miller v. Mott*, C.A. No. 23-50004, 2023 WL 6467368, at *9 (Bankr. D. Del. Oct. 4, 2023) (dismissing constructive trust claim, further stating that dismissal did not foreclose the claimant from seeking a constructive trust "if the facts, as proven, justify its imposition").

2.    Count VI (Promissory Fraud)

Count VI alleges promissory fraud against all Defendants, citing alleged promises made by Mr. Okhandiar to Plaintiffs between August 2021 and November 2022. D.I. 16 ¶¶ 131-43.

"To state a claim for promissory fraud, [a plaintiff] must 'plead specific facts that . . . [show] the promisor had no intention of performing at the time the promise was made.'" *Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.*, No. 1:20-CV-25-SB, 2022 WL 610755, at *3 (D. Del. Jan. 13, 2022) (Bibas, J., sitting by designation) (quoting *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008)). Under Rule 9(b), "a party alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.'" *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (quoting Fed. R. Civ. P. 9(b)). "Plaintiffs may satisfy this requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud . . . . Plaintiffs also must allege who made [the] misrepresentation to whom and the general content of the misrepresentation." *Id.* (quoting *Lum v. Bank of America*, 361 F.3d 217, 224 (3rd Cir. 2004)).

Defendants contend that Count VI must be dismissed because it was not plead "with particularity" under Rule 9(b). *See* D.I. 21 at 11. Essentially, Defendants argue that the "supposed promises of equity" are insufficiently clear as a matter of law. *Id.* As for the promises of equity, the Court agrees with Defendants that the large range of dates provided and forms of media on which these communications are alleged to have occurred lack the required specificity under Rule 9(b). In short, it is difficult to ascertain the what, when, where, and how for these conversations. Moreover, the Court is unable to ascertain if "the promisor had no intention of performing at the time the promise was made." *See Murphy Marine*, 2022 WL 610755, at *3.

Aside from the alleged promises of equity, Plaintiffs highlight two other categories of allegedly fraudulent promises in their briefing. *See* D.I. 23 at 16. First, Plaintiffs identify alleged promises wherein "[Mr.] Okhandiar falsely stated that Plaintiffs were holding keys to Remilia's multi-signature wallet so there was proper oversight over its funds and assets when [Mr.] Okhandiar gave himself uncheck[ed] control over the wallet even though he intended to secretly create three additional keys for himself." *See* D.I. 23 at 16 (citing D.I. 16 ¶¶ 74, 134, 138). However, the two paragraphs cited by Plaintiffs that describe the alleged statements (D.I. 16 ¶¶ 74, 134), do so in a conclusory manner and do not meet the requirements of Rule 9(b). Second, Plaintiffs identify alleged statements made by Mr. Okhandiar to Plaintiffs regarding the NDAs. D.I. 23 at 16 (citing D.I. 16 ¶¶ 74, 135, 138). These allegations, however, are not alleged misstatements involving "unfulfilled promises of *future* performance," *Murphy Marine*, 2022 WL 610755, at *3 (D. Del. Jan. 13, 2022) (emphasis added) (quoting *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *9 (Del. Ch. Dec. 23, 2008)) and, thus, cannot form the basis of a promissory fraud claim. Thus, the Court grants Defendants' Motion with respect to Count VI and dismisses that count without prejudice.

### 1.     Count VII (Negligent Misrepresentation)

Count VII alleges negligent misrepresentation predicated on Mr. Okhandiar's alleged "fiduciary and pecuniary duty" to "provide accurate information to Plaintiffs regarding the corporate structure, governance, ownership, and management" of Remilia and "provide full and complete information to Plaintiffs about the identity of the signatory key holders [of Remilia's] multi-signature wallet." D.I. 16 ¶ 145.

"In Delaware, negligent misrepresentation requires (1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in

obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance upon the false information." *Eppley v. Univ. of Delaware*, C.A. No. 13-99, 2015 WL 156754, at *4 (D. Del. Jan. 12, 2015) (citation omitted). Relevant here, "negligent misrepresentation is a viable claim in Delaware only when there is a fiduciary relationship between the parties." *Id.* (citation omitted); *see also Korber Supply Chain US, Inc. v. DOT Holdings Co.*, C.A. No. 24-00236, 2025 WL 485957, at *4 (D. Del. Feb. 13, 2025) ("Negligent misrepresentation is essentially a species of fraud with a lesser state of mind requirement, but with the added element that the defendant must owe a pecuniary duty to the plaintiff." (quoting *Vichi v. Koninklijke Phillips Elecs., N.V.*, 85 A.3d 725, 822 (Del. Ch. 2014))). As set forth above, Plaintiffs have not adequately pled the existence of an enforceable contract that would create a duty to provide accurate information. Nor do Plaintiffs adequately develop any other basis for a pecuniary duty to provide accurate information in their briefing.[8] Thus, the Court grants Defendants' Motion with respect to Count VII and dismisses that count without prejudice.

### 2.    Count VIII (Promissory Estoppel)

Count VIII alleges that Mr. Okhandiar made promises to Plaintiffs, that Plaintiffs reasonably relied on those promises, and that they suffered losses. D.I. 16 ¶¶ 149-54.

"Promissory estoppel 'is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement.'" *Kyle v. Apollomax, LLC*, C.A. No. 12-152, 2013 WL 5954782, at *6 (D. Del. Nov. 1, 2013) (quoting *Weiss v. Nw. Broad., Inc.*, 140 F. Supp. 2d 336, 344-45 (D. Del. 2001)). "To prevail on a

---

[8] Plaintiffs' briefing of Counts VI and VII focuses upon the applicable pleading standard (which Plaintiffs assert is Rule 9(b)'s particularity standard) and does not identify or apply the substantive elements of either cause of action. D.I. 23 at 14-16.

16

promissory estoppel claim, a plaintiff must establish that (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Harmon v. State, Delaware Harness Racing Comm'n*, 62 A.3d 1198, 1200 (Del. 2013) (quoting *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000)).

Count VIII does not list any specific promises; instead, it cites to "the false promises described above." D.I. 16 ¶ 150; *see also* D.I. 16 ¶ 149 (incorporating previous allegations). The parties' briefing of Count VIII references the promises from Plaintiffs' promissory fraud claim (Count VI). *See* D.I. 21 at 12-13 (citing the "alleged promise of equity"); D.I. 23 at 19 (noting the "overlap" between Plaintiffs' promissory estoppel, equitable estoppel, and fraud claims). Defendants claim that Plaintiffs' promissory estoppel claim is solely based on the promises of equity (D.I. 21 at 12), but this reading of the FAC does not account for the other well-pleaded promises in the FAC. For example, the FAC adequately alleges that Mr. Okhandiar's allegedly false statements regarding the signing of the NDAs induced Plaintiffs to sign the NDAs, causing Plaintiffs financial harm. *See Kyle*, 2013 WL 5954782, at *6. Thus, the Court denies Defendants' Motion with respect to Count VIII.

### 3.    Count IX (Equitable Estoppel)

Count IX recites allegations common to Counts VI and VIII, and requests that Defendants be estopped from a series of actions, including asserting that Plaintiffs are not co-owners of Remilia, and that Defendants have the sole right to Remilia's assets, funds, and intellectual property. D.I. 16 ¶¶ 155-61.

17

"To state a claim for equitable estoppel, [a plaintiff] must plead the following elements: (1) conduct by the party to be estopped that amounts to a false representation, concealment of material facts, or that is calculated to convey an impression different from, and inconsistent with that which the party subsequently attempts to assert, (2) knowledge, actual or constructive, of the real facts and the other party's lack of knowledge and the means of discovering the truth, (3) the intention or expectation that the conduct shall be acted upon by, or influence, the other party and good faith reliance by the other, and (4) action or forbearance by the other party amounting to a change of status to his detriment." *Hyetts Corner, LLC v. New Castle Cnty.*, C.A. No. 2020-0940, 2021 WL 4166703, at *10 (Del. Ch. Sept. 14, 2021) (quoting *Olson v. Halvorsen*, C.A. No. 1884, 2009 WL 1317148, at *11 (Del. Ch. May 13, 2009)).

An equitable estoppel claim does not depend on an agreement between parties. Rather, it arises "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Dousman v. Kobus*, C.A. No. 19258, 2002 WL 1335621, at *5 (Del. Ch. June 6, 2002) (quoting *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990)). As outlined above in the Court's analysis of Count VIII, Plaintiffs have adequately alleged that they made actions or forbearances to their detriment in response to alleged misrepresentations by Mr. Okhandiar regarding the ownership of Remilia. Thus, the Court denies Defendants' Motion with respect to Count IX.

### D.    Plaintiffs Are Granted Leave to Amend

The Court now turns to the portion of Defendants' Motion that seeks a more definite statement and Plaintiffs' request for leave to amend. *See* D.I. 20.[9] Defendants contend that, "[i]f

---

[9] In their opening brief, Defendants rely upon Rule 12(f) of the Federal Rules of Civil Procedure. D.I. 21 at 1, 14. Rule 12(f), however, governs motions to strike. *See* Fed. R. Civ. P. 12(f). As Plaintiffs observe (D.I. 23 at 19 n.2), this was likely a typographical error. Defendants

18

Plaintiffs have a good faith basis to allege that they were promised equity with sufficient specificity to justify breach of contract and fraud claims," then Plaintiffs should "include in their pleading allegations the specific amount of equity they were promised and the basis for those allegations." D.I. 21 at 14; *see also* D.I. 24 at 10 (similar). Plaintiffs request that, if the Court grants any portion of Defendants' Motion, Plaintiffs be given leave to amend to redress any pleading deficiencies. D.I. 23 at 19; D.I. 24 at 10 (agreeing that, "[s]hould the Court grant leave to amend or require a more definite statement, Plaintiffs should be required to plead the required facts for each alleged contract"). The Court grants Plaintiffs' request for leave to amend their pleading with respect to the causes of action dismissed without prejudice. *See* D.I. 27 at 2 (providing that "motions to . . . amend or supplement the pleadings shall be filed . . . within the time ordered by [the] Court in an order regarding a motion to dismiss the related pleading").

## V.    CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion with respect to Counts I-VII, and XIII of Plaintiffs' FAC. The Court denies the remainder of Defendants' Motion. The Court also grants Plaintiffs leave to amend their pleading with respect to the causes of action dismissed without prejudice. An Order consistent with this Memorandum Opinion will be entered.

---

did not clarify in reply. Thus, the Court construes this request under Rule 12(e). In any event, the Court is not persuaded that this action presents the "'rare case' where a complaint 'is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.'" *Brown v. Eastside Charter Sch. of Wilmington, Inc.*, C.A. No. 21-880-SB, 2022 WL 4094129, at *1 (Bibas, J., sitting by designation) (D. Del. Sept. 6, 2022) (quoting *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 797-98 (3d Cir. 1967)). Therefore, the Court denies Defendants' Motion to the extent that it seeks an order requiring Plaintiffs to require a more definite statement.