# Exhibit A



## Remilia Corporation Offer: Letter of Intent

**************************************************

Milady Sonora,

I am honored to invite you to join Remilia Corporation as **Lead Artist** reporting to Executive Creative Director, Wretched Worm.

As Remilia Corporation (hereafter, "Remilia") has not fully incorporated or finalized its corporate infrastructure, this letter of intent is provided in place of an employment agreement as a written promise of the offered role and its compensation and expectations.

### Compensation

**************

**$60,000.00** annual salary and up to **$25,000.00** annual incentive bonus in a USD pegged cryptocurrency.

**Incentive Bonus:** Bonuses are distributed quarterly proportional to our progress towards our annual revenue goals. Revenue goals are determined by the Executive Board in Q1 and revisited each quarter. *e.g. If in Q1 we achieve 10% of our target revenue, you will receive 10% of your bonus; if in Q2, we hit 50% of our target revenue, you will receive the additional 40% of your total bonus. If we fail to meet 100% of our goal in Q4, you will not receive the remainder bonus.*

**Payment currency:** To avoid market volatility, payment will be distributed in a stable cryptocurrency pegged to the USD, such as DAI.

**Salary distribution:** Workflow is being setup now, but salary will likely either be on a bi-weekly basis or a steady stream directly to a cryptocurrency wallet address.



remilia.org

___/___
Initials



## Expectations

**************

**Role**: Dedicate full-time effort towards the standard roles and functions of a **Lead Artist.**

**Exclusivity**: You are expected to commit full-time exclusively for Remilia - you are expected to not moonlight any second job. Side investments are okay but limit any side hustles to what won't occupy your working time; *e.g. disengaged angel investments.*

**Commitment**: As a co-founder with a significant stake in Remilia, you should make a good faith effort to introduce any new enterprises and opportunities into Remilia where relevant as if it were personal investments, and not expend significant time pursuing interests that do not in some way have a path to feed back into Remilia, and if a path exists, make a best effort to develop it towards Remilia.

## Note on DAO Governance

***********************

To avoid any misconceptions with the "DAO" designation, I want to make clear Remilia does intend to maintain a traditional corporate pyramid heirarchy. Formal governance maintained on top-level DAO infrastructure, such as treasury multisigs, is performed exclusively by the 3 co-founders (hereafter, "Executive Board"), in a 1/4 vote structure, with the CEO holding 2 votes to maintain equal or controlling interest and/or executive veto. The Executive Board managing strategic and tactical operations with the CEO retaining equal or controlling interest and/or executive veto is intended to remain throughout any DAO infrastructure developed moving forward. Other subsidiary DAO's may be initiated to manage departments or teams in an unrelated structure.

The structure of the organization as a DAO and how shares will factor in, likely either as profit-sharing or ownership interest tied to the treasury's valuation, is still being formalized, but you will be compensated fairly according to your role in the starting team.

___/___
Initials



remilia.org



## Remilia Collective Co-operative

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Remilia Collective Agency Relationship:** Membership into Remilia Collective, an NFT art collective which Remilia represents in an agency relationship, will be distinguished by a Remilia Collective Member NFT, and include all salaried employees of Remilia. Remilia Collective intends to operate a collective co-operative fund sharing an interest fairly distributed between its members, with a flat contribution from artist's sales paired with a Remilia Corp match. All members can exit the Collective and pull their lifetime contributions to the co-operative, though as a Remilia employee, it would require severing your employment.

**Agent Terms:** While a member of Remilia Collective, any art or design work produced, minted or monetized with NFT technology, independently of Remilia directed or coordinated ventures, delivers rights for sale, distribution and representation to Remilia as formal agents, with a minimum 10% fee on sales and royalties to the Remilia Collective co-operative fund and minimum 30% fee to the Remilia. Further fees towards Remilia may be negotiated according to their contribution as agents. Work produced under Remilia direction or as a Remilia coordinated venture is not considered independent and would fall under Remilia according to Remilia's own compensation and incentive structure.

## Terms & Restrictions

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Intellectual Property & Ownership Rights:** Remilia intends to be a general-purpose software development company in the Decentralized Finance space, specifically around non-fungible, semi-fungible token technology. As an employee of Remilia and member of Remilia Collective, all work performed under this domain, including software, patents, products, art and intellectual property, as well as any work performed under Remilia direction or with Remilia resources, and any independent artistic or design related work monetized by blockchain technology, is understood to be owned by Remilia



___/___
Initials

remilia.org



and carried under the Remilia brand except by prior notice and approval from the Executive Board.

~~~~~~~~~~~~~~~

Welcome to Remilia Corporation.

Yours truly,

Charlemagne Fang

CEO @ Remilia Corporation

charlie.fang@remilia.org

Witnessed and agreed:

Milady Sonora

Signature:    _____

Date:         _____



remilia.org

___/___
Initials

# Exhibit B



## Remilia Corporation Offer: Letter of Intent

**********************************************

Yojimbo King,

I am honored to invite you to join Remilia Corporation as **co-founder & Chief Operating Officer (COO)** alongside the two other co-founders, myself, Charlie Fang, as Chief Executive Officer (CEO), and Wretched Worm, Executive Creative Director (ECD).

As Remilia Corporation (hereafter, "Remilia") has not fully incorporated or finalized its corporate infrastructure, this letter of intent is provided in place of an employment agreement as a written promise of the offered role and its compensation and expectations.

### Compensation

**************

**$125,000.00** annual salary and up to **$125,000.00** annual incentive bonus in a USD pegged cryptocurrency.

**Incentive Bonus:** Bonuses are distributed quarterly proportional to our progress towards our annual revenue goals. Revenue goals are determined by the Executive Board in Q1 and revisited each quarter. *e.g. If in Q1 we achieve 10% of our target revenue, you will receive 10% of your bonus; if in Q2, we hit 50% of our target revenue, you will receive the additional 40% of your total bonus. If we fail to meet 100% of our goal in Q4, you will not receive the remainder bonus.*

**Payment currency:** To avoid market volatility, payment will be distributed in a stable cryptocurrency pegged to the USD, such as DAI.

**Salary distribution:** Workflow is being setup now, but salary will likely either be on a bi-weekly basis or a steady stream directly to a cryptocurrency wallet address.

_y_ / _k_
Initials



remilia.org



## Expectations

**************

**Role**: Dedicate full-time effort towards the standard roles and functions of a **Chief Operating Officer,** reporting directly to **CEO.**

**Exclusivity**: You are expected to commit full-time exclusively for Remilia - you are expected to not moonlight any second job. Side investments are okay but limit any side hustles to what won't occupy your working time; *e.g. disengaged angel investments.*

**Commitment**: As a co-founder with a significant stake in Remilia, you should make a good faith effort to introduce any new enterprises and opportunities into Remilia where relevant as if it were personal investments, and not expend significant time pursuing interests that do not in some way have a path to feed back into Remilia, and if a path exists, make a best effort to develop it towards Remilia.

## Note on DAO Governance

************************

To avoid any misconceptions with the "DAO" designation, I want to make clear Remilia does intend to maintain a traditional corporate pyramid heirarchy. Formal governance maintained on top-level DAO infrastructure, such as treasury multisigs, is performed exclusively by the 3 co-founders (hereafter, "Executive Board"), in a 1/4 vote structure, with the CEO holding 2 votes to maintain equal or controlling interest and/or executive veto. The Executive Board managing strategic and tactical operations with the CEO retaining equal or controlling interest and/or executive veto is intended to remain throughout any DAO infrastructure developed moving forward. Other subsidiary DAO's may be initiated to manage departments or teams in an unrelated structure.

The structure of the organization as a DAO and how shares will factor in, likely either as profit-sharing or ownership interest tied to the treasury's valuation, is



y / k
Initials

remilia.org



still being formalized, but you will be compensated fairly according to your role in the starting team.

## Remilia Collective Co-operative

**********************************

**Remilia Collective Agency Relationship:** Membership into Remilia Collective, an NFT art collective which Remilia represents in an agency relationship, will be distinguished by a Remilia Collective Member NFT, and include all salaried employees of Remilia. Remilia Collective intends to operate a collective co-operative fund sharing an interest fairly distributed between its members, with a flat contribution from artist's sales paired with a Remilia Corp match. All members can exit the Collective and pull their lifetime contributions to the co-operative, though as a Remilia employee, it would require severing your employment.

**Agent Terms:** While a member of Remilia Collective, any art or design work produced, minted or monetized with NFT technology, independently of Remilia directed or coordinated ventures, delivers rights for sale, distribution and representation to Remilia as formal agents, with a minimum 10% fee on sales and royalties to the Remilia Collective co-operative fund and minimum 30% fee to the Remilia. Further fees towards Remilia may be negotiated according to their contribution as agents. Work produced under Remilia direction or as a Remilia coordinated venture is not considered independent and would fall under Remilia according to Remilia's own compensation and incentive structure.

## Terms & Restrictions

*********************

**Intellectual Property & Ownership Rights:** Remilia intends to be a general-purpose software development company in the Decentralized Finance space, specifically around non-fungible, semi-fungible token technology. As an employee of Remilia and member of Remilia Collective, all work performed under this domain, including software, patents, products, art and intellectual property, as well as any work performed under



y / k
Initials

remilia.org



Remilia direction or with Remilia resources, and any independent artistic or design related work monetized by blockchain technology, is understood to be owned by Remilia and carried under the Remilia brand except by prior notice and approval from the Executive Board.

~~~~~~~~~~~~~~~

Welcome to Remilia Corporation.

Yours truly,

Charlemagne Fang

CEO @ Remilia Corporation

charlie.fang@remilia.org

Witnessed and agreed:

Yojimbo King

Signature: _____

Date: _____ 10/19/21



remilia.org


Initials

# Exhibit C

Message from Rohit Okhandiar to Maxwell Roux

dated December 13, 2021



**Miss Jo**                                                  6:49 PM
I understand. I plan to distribute equity, you'll have serious exposure. I also like revenue based incentives but I don't want to commit into a simplistic model rn as your priorities might easily get redirected beyond the casino, it's unclear how difficult the integration will be

# Exhibit D



### Remilia Corporation Offer: Letter of Intent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CCCAA,

I am honored to invite you to join Remilia Corporation as **Smart Contract Developer** reporting to the **Lead Developer, Rahab**.

As Remilia Corporation (hereafter, "Remilia") has not fully incorporated or finalized its corporate infrastructure, this letter of intent is provided in place of an employment agreement as a written promise of the offered role and its compensation and expectations.

### Compensation

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**$70,000.00** annual salary and up to **$30,000.00** annual incentive bonus in a USD pegged cryptocurrency, for a total package of **$100,000.00**.

**Incentive Bonus:** Bonuses are distributed quarterly proportional to our progress towards our annual revenue goals. Revenue goals are determined by the Executive Board in Q1 and revisited each quarter. *e.g. If in Q1 we achieve 10% of our target revenue, you will receive 10% of your bonus; if in Q2, we hit 50% of our target revenue, you will receive the additional 40% of your total bonus. If we fail to meet 100% of our goal in Q4, you will not receive the remainder bonus.*

**Payment currency:** To avoid market volatility, payment will be distributed in a stable cryptocurrency pegged to the USD, such as DAI.

**Salary distribution:** Workflow is being setup now, but salary will likely either be on a bi-weekly basis or a steady stream directly to a cryptocurrency wallet address.



___/___
Initials

remilia.org



## Expectations

**************

**Role**: Dedicate full-time effort towards the standard roles and functions of a **Smart Contract Developer.**

**Exclusivity**: You are expected to commit full-time exclusively for Remilia - you are expected to not moonlight any second job. Side investments are okay but limit any side hustles to what won't occupy your working time; *e.g. disengaged angel investments.*

**Commitment**: As a co-founder with a significant stake in Remilia, you should make a good faith effort to introduce any new enterprises and opportunities into Remilia where relevant as if it were personal investments, and not expend significant time pursuing interests that do not in some way have a path to feed back into Remilia, and if a path exists, make a best effort to develop it towards Remilia.

## Note on DAO Governance

************************

To avoid any misconceptions with the "DAO" designation, I want to make clear Remilia does intend to maintain a traditional corporate pyramid heirarchy. Formal governance maintained on top-level DAO infrastructure, such as treasury multisigs, is performed exclusively by the 3 co-founders (hereafter, "Executive Board"), in a 1/4 vote structure, with the CEO holding 2 votes to maintain equal or controlling interest and/or executive veto. The Executive Board managing strategic and tactical operations with the CEO retaining equal or controlling interest and/or executive veto is intended to remain throughout any DAO infrastructure developed moving forward. Other subsidiary DAO's may be initiated to manage departments or teams in an unrelated structure.

The structure of the organization as a DAO and how shares will factor in, likely either as profit-sharing or ownership interest tied to the treasury's valuation, is still being formalized, but you will be compensated fairly according to your role in the starting team.



remilia.org

___/___
Initials



## Remilia Collective Co-operative

**********************************

**Remilia Collective Agency Relationship:** Membership into Remilia Collective, an NFT art collective which Remilia represents in an agency relationship, will be distinguished by a Remilia Collective Member NFT, and include all salaried employees of Remilia. Remilia Collective intends to operate a collective co-operative fund sharing an interest fairly distributed between its members, with a flat contribution from artist's sales paired with a Remilia Corp match. All members can exit the Collective and pull their lifetime contributions to the co-operative, though as a Remilia employee, it would require severing your employment.

**Agent Terms:** While a member of Remilia Collective, any art or design work produced, minted or monetized with NFT technology, independently of Remilia directed or coordinated ventures, delivers rights for sale, distribution and representation to Remilia as formal agents, with a minimum 10% fee on sales and royalties to the Remilia Collective co-operative fund and minimum 30% fee to the Remilia. Further fees towards Remilia may be negotiated according to their contribution as agents. Work produced under Remilia direction or as a Remilia coordinated venture is not considered independent and would fall under Remilia according to Remilia's own compensation and incentive structure.

## Terms & Restrictions

*********************

**Intellectual Property & Ownership Rights:** Remilia intends to be a general-purpose software development company in the Decentralized Finance space, specifically around non-fungible, semi-fungible token technology. As an employee of Remilia and member of Remilia Collective, all work performed under this domain, including software, patents, products, art and intellectual property, as well as any work performed under Remilia direction or with Remilia resources, and any independent artistic or design related work monetized by blockchain technology, is understood to be owned by Remilia



remilia.org

___/___
Initials



and carried under the Remilia brand except by prior notice and approval from the Executive Board.


~~~~~~~~~~~~~~~~


Welcome to Remilia Corporation.


Yours truly,

Charlemagne Fang

CEO @ Remilia Corporation

charlie.fang@remilia.org




Witnessed and agreed:

CCCAA

Signature:    _____

Date:         _____




remilia.org

___/___
Initials

# Exhibit E

Account creation
Jul 26, 2020, 12:24:34 AM
124.197.21.93 (New Zealand)



# Exhibit F

Messages between Rohit Okhandiar and Bruno
Nispel dated September 2021 (Part 1/4)



Messages between Rohit Okhandiar and Bruno

Nispel dated September 2021 (Part 2/4)



Messages between Rohit Okhandiar and Bruno

Nispel dated September 2021 (Part 3/4)



Messages between Rohit Okhandiar and Bruno

Nispel dated September 2021 (Part 4/4)



# Exhibit G







# Exhibit H

# STATE OF DELAWARE
## CERTIFICATE OF FORMATION
## OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1.  The name of the limited liability company is  Remilia Corporation LLC .

2.  The Registered Office of the limited liability company in the State of Delaware is located at  611 South DuPont Highway Suite 102  (street), in the City of  Dover , Zip Code  19901 . The name of the Registered Agent at such address upon whom process against this limited liability company may be served  is  ZenBusiness Inc .

By: /s/ Rohit Okhandiar

Authorized Person

Name: Rohit Okhandiar

Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:24 AM 07/05/2022
FILED 10:24 AM 07/05/2022
SR 20222900721 - File Number 6894024

# Exhibit I

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:15 AM 10/14/2022
FILED 11:15 AM 10/14/2022
SR 20223772492 - File Number 7084218

**STATE *of* DELAWARE**
**CERTIFICATE *of* FORMATION**
**A LIMITED LIABILITY COMPANY**

**ARTICLE I.**

The name of this limited liability company is REMILIA INDUSTRIES LLC.

**ARTICLE II.**

Its registered office in the State of Delaware is to be located at 651 N. Broad St., Suite 201, Middletown DE 19709. The registered agent in charge thereof is LEGALINC CORPORATE SERVICES INC..

**ARTICLE III.**

The period of duration of the limited liability company shall be perpetual.

**ARTICLE IV.**

The purpose of the limited liability company is to engage in any lawful act or activity for which limited liability companies may be organized under the Delaware Limited Liability Company Act.

**ARTICLE V.**

The name and address of each initial member of the limited liability company is:

Rohit Okhandiar - 651 N BROAD ST, STE 205 #9409, MIDDLETOWN, DELAWARE 19709

**I, the undersigned,** for the purpose of forming a limited liability company under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand and executed this Certificate of Formation on the date below.

**Dated:** October 14, 2022

*Lovette Dobson*

Lovette Dobson, Organizer

# Exhibit J

Remilia Corporation Proudly Presents!

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

AGREEMENT TO NEGOTIATE

THIS AGREEMENT is made on the date of the last signature below.

BETWEEN Krishna Okhandiar ("Party A");

AND     John Duff ("Party B")

(together, the "Parties")

BACKGROUND

Party A and Party B intend to come to an agreement on an initial shareholding distribution for Remilia Corporation LLC (the "Company"), with a view to produce and sign a shareholders' agreement.

The Parties intend to engage a Third-Party Consultant to advise them in the appropriate terms of such agreement, and to facilitate any discussion or negotiation in advance of its creation.

This Agreement sets out terms upon which these discussions and negotiations will proceed, and establishes the rights and warranties of the Parties.

ACKNOWLEDGEMENTS AND undertakings OF the PARTIES

Both Parties agree to engage and attend the services of a Third-Party Consultant in good faith, with a view to amicably distribute shareholding pursuant to a mutually participatory negotiation.

Both Parties agree to be bound by the decision of any court of arbitration to which the parties bring any dispute under Clause 2 of this Agreement;

Both Parties acknowledge:

That each retains the right to seek the advice of independent legal counsel in this matter; and

That each retains the right to bring the share distribution negotiations to an arbitration court, but not before exhausting the possibility of negotiation and mediation as described in Clause 2 of this Agreement.

Party A agrees:

remilia.org

<u>Remilia Corporation</u>                                                                                             2

That unless otherwise agreed by consent of both Parties, the shareholding allotment of Party B will be agreed upon in writing before any further shares are issued or allotted, including to other founders, investors, or employees of the Company.

Party B agrees:

To sign and comply with the terms of the Non-Disclosure Agreement dated December 12, 2022 attached to this Agreement and marked Exhibit A; and

To sign and comply with the terms of the Letter of Intent dated March 15, 2022 attached to this Agreement and marked Exhibit B.

## DISPUTE RESOLUTION

The parties agree that the dispute resolution procedures of this Clause 2 shall be the exclusive mechanism to resolve disputes arising under this Agreement.

The parties agree to endeavor to settle any dispute arising in relation to any matter under this Agreement by negotiation facilitated by the Third-Party Consultant.

If the dispute is not able to be settled by good faith negotiation facilitated by the Third-Party Consultant, the parties must bring the matter to commercial mediation administered by an accredited mediator, and attended solely by the Parties to this agreement.

If the mediation is not completed within 4 weeks, then either party may commence arbitration proceedings relating to the dispute as they see fit.

To the extent reasonably possibly, participation and representation in any arbitration proceedings commenced under this agreement will be confined to the Parties to this Agreement, and not to other shareholders actual or prospective.

The costs of any mediation or arbitration shall be borne equally by the parties.

## OTHER AGREEMENTS

Where they exist, any agreements between the parties will continue to apply to this Agreement and shall remain in full force and effect and are not affected by anything in this Agreement.

## COMMENCEMENT AND SIGNATURE

The agreement in this Agreement will remain in effect until a Shareholders' Agreement has been produced and signed, or until the parties terminate this agreement by mutual consent.

<u>Remilia Corporation</u>                                                                                                    3

SEVERANCE AND VALIDITY

If any provision of this Agreement is or becomes illegal, invalid, or unenforceable in any respect
under the relevant law, it shall be deemed to be severed from this Agreement, and the Parties shall use
all reasonable endeavours to replace such provision with one having an effect as close as possible to
the deficient provision. The remaining provisions will remain in full force in that jurisdiction and
all provisions will continue in full force in any other jurisdiction.

The parties have signed this Agreement on the date(s) below:

PARTY A                                                      PARTY B

Signature:                                                  Signature:

X _____                             X _____

Date: 12/28/22                                              Date: 12/28/22

<u>Remilia Corporation</u>                                                                                         4

EXHIBIT A:

Non-Disclosure Agreement

Remilia Corporation Proudly Presents!

**********************************************

CONFIDENTIALITY AND NON-DISCLOSURE UNDERTAKING

THIS CONFIDENTIALITY AND NON-DISCLOSURE UNDERTAKING (the "Undertaking"), dated as of DEC 28 2022, by and between John Duff (the "Recipient"), and REMILIA CORPORATION LLC, a corporation formed and incorporated under the laws of the State of Delaware (the "Discloser").

1.    BACKGROUND

A.    The Discloser wishes to engage the Recipient to perform certain services (collectively, the "Services") for the purpose of creating and developing software, merchandise and related properties;

A.    In connection with the performance by the Recipient of the Services for and in collaboration with the Discloser, the Recipient may receive or have access to certain information relating to the business of the Discloser that is non-public, confidential or proprietary in nature, the disclosure of which may be detrimental to the best interests of the Discloser; and

A.    The Discloser is willing to provide such information (as defined below) to Recipient, subject only to the terms and conditions of this Undertaking.

FOR VALUE RECEIVED, and in consideration of the foregoing premises the Recipient agrees and undertakes as follows:

2. DEFINITIONS

In this Undertaking, the following terms have the following meanings:

a.    "Confidential Information" means all information, business strategies, plans, ongoing discussions and commitments, data, documents, agreements, files and other materials in whatever form (including, without limitation, in written, oral, visual or electronic or digital form in or on any media or platform), which is disclosed or otherwise furnished by the Discloser to the

remilia.org

Recipient, or created, owned or controlled by the Discloser, whether or not such information is marked confidential, that relates directly or indirectly to the Discloser's business, products, services, suppliers, and trade secrets, overall strategy, or personal information relating to anonymous or other individuals, including, without limitation:

(i) Intellectual Property;

(ii) any information said, posted or written in project-related chat groups, or other information or communications related to the Discloser, including Private Messages between Recipient and the Discloser's team members.

(iii) all or any portion of analysis, notations, plans, compilations, reports, forecasts, studies, samples, statistics, summaries, interpretations and other documents created, developed, prepared, received, obtained, or generated or derived from such information, data, documents, agreements, files or other materials by the Recipient in connection with the Services; and

(iv) other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used;

(v) The term "Confidential Information" shall not include any information described above which (i) is or becomes generally available to the public or is a matter of public record other than as a result of improper disclosure by the Recipient or its representatives; (ii) is or becomes available to the Recipient or its representatives from a source other than the Discloser; (iii) was known by, or was available to the Recipient or its representatives prior to the time of disclosure by the Discloser; (iv) has been authorized by the Discloser in writing to be disseminated; (v) is required to be disclosed in any report, statement or testimony submitted to any municipal, state or federal regulatory body having jurisdiction; (vi) is required to be disclosed in connection with any litigation, or legal process, discovery request, court proceeding or arbitration proceeding in which the Recipient or its representatives are a litigant or other participant; or (vii) is required to be disclosed pursuant to any applicable law, order, regulation or rule, including without limitation, court orders or orders issued by a governmental agency.

a.    "Copies" means copies or records of any Confidential Information in whatever form, including without limitation, copy and pasted text or images, screenshots from desktop, tablet or mobile devices, notations, extracts, analysis, studies, plans, compilations or any other way of representing, recording or recalling information which contains, reflects, or is derived or generated from Confidential Information; and

a.    "Intellectual Property" means Confidential Information, copyright works, trademarks, industrial designs, design rights, inventions (whether patentable or not), unpublished patent applications,

inventive ideas, discoveries, innovations, developments, or improvements thereto, or any other intellectual property rights relating to any of the foregoing, whether registered or non-registered, whether or not reduced to written form or practice, within the scope of the Discloser's business activities and the Services rendered.

Other terms not specifically defined in this Section 1 shall have the meanings given to them elsewhere in this Undertaking.

## 3. RESTRICTIONS ON CONFIDENTIAL INFORMATION

a.  All Confidential Information shall be received and held by the Recipient and its employees, agents, affiliates and representatives on a strictly confidential basis;
b.  The Recipient shall maintain the absolute confidentiality of the Confidential Information and shall not disclose to any party (except on a 'need to know basis'), or as may be necessary to perform the Services;
c.  not copy, scrape, extract, photocopy, store, copy and paste, or share, like, post or tweet screenshots from desktop, tablet or mobile devices, or otherwise reproduce, without the prior express written permission of the Discloser, any of the Confidential Information.

## 4. USE OF CONFIDENTIAL INFORMATION

The Recipient shall not use or disclose the Confidential Information or any part thereof to any person, association, corporation, including any media outlet or representative, or any other person or entity except:

a.  in accordance with the terms of this Undertaking;
b.  as the Discloser may hereafter agree in writing; or
c.  in accordance with the legitimate business interests of Remilia Corporation LLC, and while fulfilling the recipient's obligations with regard to their Services.

## 5. PROPRIETARY OWNERSHIP OF INTELLECTUAL PROPERTY

The Recipient acknowledges and agrees that:

a.  all rights, title and interest in any Intellectual Property, and any improvements thereto, that the Recipient conceives, develops, invents, authors, creates or contributes to the creation or improvement of, in whole or in part, related to the Recipient's services during the term of the Recipient's services are, will be and shall remain the exclusive property of the Discloser; and
b.  the Recipient shall have no interest in any Intellectual Property, and any other form of intellectual property, notwithstanding that the Recipient may have conceived, developed, authored, created or contributed to the creation or improvement of the same, solely or jointly with others at any time related to the Recipient's services during the term of the Recipient's services.

Remilia Corporation                                                                                                    7

## 6. PROTECTION OF CONFIDENTIAL INFORMATION

The Recipient shall take all reasonable and necessary steps and measures to protect against the unauthorized use or disclosure of the Confidential Information.

## 7. NON-DISPARAGEMENT

The Recipient agree not to disparage the Discloser, including their respective officers, directors, employees, affiliates, or members (collectively, the "Protected Parties"). The Recipient agrees to refrain from making, whether verbally or in writing, and whether through any format including but not limited to social media, including but not limited to, Google, Discord, Twitter, Telegram, Instagram, Facebook, Reddit, 4chan, Twitch, YouTube, Tik Tok, Snapchat, any disparaging, defamatory or slanderous comments, references or characterizations concerning the Protected Parties. The Recipient further agrees that the Recipient shall not provide any personal information regarding any Protected Parties, or make any statements or take any action that would cause the Protected Parties embarrassment or humiliation or otherwise cause or contribute to their being held in disrepute. The Recipient understands that nothing in this Undertaking is intended to prevent the Recipient from making truthful statements in any legal proceeding or as otherwise required by law, or from reporting possible violations of federal law or regulation to a governmental agency or entity.

## 8. RETURN OF CONFIDENTIAL INFORMATION

Upon the request of the Discloser, the Recipient shall, within seven (7) days of such request from the Discloser, either destroy and delete from any server, device or platform, all Confidential Information or return to the Discloser all Confidential Information, including all Copies thereof, as requested.

## 9. EQUITABLE RELIEF AND DAMAGES

The Recipient acknowledges that the unauthorized disclosure or use of the Confidential Information could cause irreparable harm and significant injury to Discloser that may be difficult to ascertain. Accordingly, the Discloser shall have the right to seek an immediate injunction enjoining any breach of this Undertaking, in addition to all other remedies to which it may be entitled including money damages, legal fees, and/or other applicable remedies.

## 10. MISCELLANEOUS

This Undertaking shall be binding on the successors, executors and assigns of the Recipient. This Undertaking constitutes the entire agreement of the parties with respect to the subject matter in this Undertaking and supersedes all prior oral or written agreements or understandings with respect to that subject matter. This Undertaking shall only be modified in writing by document signed by both parties.

## 11. DURATION OF THE OBLIGATIONS OF THE RECIPIENT

Remilia Corporation                                                                                                    8

Subject to any agreement to the contrary among the parties, the obligations of the Recipient hereunder shall survive the provision of the Services and the cessation of discussions among the parties and shall continue for a period of five (5) years.

## 12. GOVERNING LAW

This Undertaking shall be governed by the laws of the State of Delaware and of the United Sates of America applicable in Delaware.

## 13. DELIVERY

This Undertaking may be executed and delivered in digital or electronic (i.e. .pdf) format which shall be effective as delivery.

[SIGNATURE PAGE FOLLOWS]

<u>Remilia Corporation</u>                                                                                          9

THE UNDERSIGNED has executed this Undertaking as of the day and year first above written, in their personal capacity as well as on behalf of any company, partnership or entity which he operates, manages or controls or with which they are otherwise affiliated or employed.

DATED as of the date first written above.

X _____                     X _____
(Signature of the Recipient)                                          (Signature of the Discloser)
THE RECIPIENT                                                     REMILIA CORPORATION REPRESENTATIVE


IDENTIFICATION OF THE RECIPIENT


Name(s):                    _____

                            _____

                            _____

Mailing Address:            _____

                            _____

Email:                      _____

Website(s):                 _____

                            _____

Social Media Links*:        _____

                            _____

                            _____

                            _____


(*Discord, Twitter, Telegram, Instagram, Facebook, Reddit, Twitch, YouTube, TikTok, etc.)

Remilia Corporation                                                                                                10

EXHIBIT B: Letter of Intent

**Remilia Corporation Proudly Presents to You!**
**Amended Letter of Intent**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CCCAA,

I am honored to present the details of your role at Remilia Corporation as a Director of Software Development.

Note: Remilia Corporation (hereafter, "Remilia", "the Company") is an incorporated entity in the state of Delaware, USA, with company number [6894024]. As of the date of signing, this Amended Letter of Intent supersedes and replaces any prior Letter of Intent under which work has heretofore been conducted. This Amended Letter of Intent is provided in place of an employment agreement as a written amendment to the details of your role's compensation and expectations.

**Compensation**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Salary:** $100,000.00 annual salary

**Payment currency:** To maintain funds in decentralized finance and avoid market volatility, payment will be distributed in a stable cryptocurrency pegged to the USD, such as DAI or USDC.

**Salary distribution:** Salary is currently provided on a bi-weekly basis directly to a provided cryptocurrency wallet address, subject to adjustment.

**Expectations**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Role:** Dedicate full-time effort towards the standard roles and functions of a Director of Software Development, reporting directly to the CEO.

**Exclusivity:** You are expected to commit full-time exclusively for Remilia - you are expected to not moonlight any second job without prior approval from your reporting manager.

**Commitment:** As a key employee of Remilia, you should make a good faith effort to introduce any new enterprises and opportunities into Remilia where relevant, and pursue interests and opportunities that have a path to feed back into Remilia, and if a path exists, make a best effort to develop it towards Remilia.

remilia.org

<u>Remilia Corporation</u>                                                                                      11

<div align="center">

**Terms & Restrictions**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

</div>

**Intellectual Property & Ownership Rights** Remilia is a general-purpose software development company. All intellectual property created in the course of fulfilling the obligations included in the Role and Commitment sections above, as well as intellectual property created using Remilia resources, are the absolute property of Remilia, and by operating under this Letter of Intent as an employee, you agree to vest all such intellectual property in Remilia. For the purposes hereinabove, the CEO of Remilia is granted the power to sign and execute any instruments necessary to vest such intellectual property in Remilia.

Enjoy your time with Remilia Corporation.

Yours truly,

Charlemagne Fang
CEO @ Remilia Corporation
charlie.fang@remilia.org

Witnessed and agreed:    John Duff

Signature:

Date:    DEC 28 2022

# Exhibit K

## Ledger of Unauthorized Transactions into Personal Accounts

| Transaction | Date | From | To | Token | Est. Value |
|---|---|---|---|---|---|
| https://etherscan.io/tx/0x99ada47ae85d723f64ae736013ffe6d551f19db7603ff1c2568bcdd1d5a197f8 | 03/03/22 19:24:29 | remcoHot (0xb520...4778) | (0x0bf1...ea46) ? (coinbase dummy) | <DAI> | $15,000.00 |
| https://etherscan.io/tx/0x60c09f62cf24bf2436649774f8a348dae3a83ce306430b10f7e68d8b4b269f9f | 05/17/22 17:38:50 | remcoHot (0xb520...4778) | (0x5921...495f) (coinbase dummy) | <USDC> | $35,000.00 |
| https://etherscan.io/tx/0x964cfee28c67d1b5077fd2cf3378d0cfda6b3b30dce08df6466b9b3cf8d312f4 | 06/21/22 5:57:19 | remcoMulti (0xcf3e...b9b4) | (0x3fad...5387) charlSunmaid | <USDC> | $15,000.00 |
| https://etherscan.io/tx/0x244a3f1cb28e703dbb1daf51c881338251c83109426c7a5a8a4ccbe082e7ce15 | 07/25/22 17:39:36 | remcoMulti (0xcf3e...b9b4) | (0x3fad...5387) charlSunmaid | <USDC> | $40,000.00 |
| https://etherscan.io/tx/0xf633c549b4234f33c9e7698b7d3f81669b8c590fdde77a1124aaeb7a1688e153 | 09/02/22 1:04:32 | remcoHot (0xb520...4778) | (0x2007...7d56) (coinbase dummy) | <USDC> | $20,000.00 |
| https://etherscan.io/tx/0xa12d01ac83cfc9c2723043bcc42e85ada4d9e141a46bc42d20e427841f7f8155 | 12/11/22 2:47:11 | remcoMulti (0xcf3e...b9b4) | (0x3fad...5387) charlSunmaid | <USDC> | $99,770.53 |
| https://etherscan.io/tx/0xee2cdda48dd7c4642cf6ba5cf4b80ed1876af2a415cba9ccc08be9ef4c29ba17 | 03/11/23 9:24:23 | remcoHot (0xb520...4778) | (0x3fad...5387) charlSunmaid | <USDC> | $20,715.18 |
| https://etherscan.io/tx/0x2a49986757d6e3355bd86543a20fd3a6b8598e7f38792417890c4b61a55db738 | 03/22/23 6:46:11 | remcoMulti (0xcf3e...b9b4) | (0x3fad...5387) charlSunmaid | <USDT> | $85,000.00 |
| https://etherscan.io/tx/0x2a60b1e15ba00eaa0c402d5c07e0b0165a5ba81241637725649ea7f1b9e98ea9 | 05/04/23 5:40:47 | remcoHot (0xb520...4778) | (0x1d68...9490) ? (coinbase dummy) | <USDT> | $200,000.00 |

## Destination Wallet Descriptions

| Recipient | Est. Value | Comment |
| --- | --- | --- |
| 0x3fad44f892b986263ac69db971db8da172185387 | 260485 USD | charlSunmaid |
| 0x1d68de86af5f7cfccec5c4288a6f2d569ffc9490 | 200000 USD | (coinbase dummy) |
| 0x59215c51069a36d1b30b18b0be4091df2259495f | 35000 USD | (coinbase dummy) |
| 0x2007cea592b816f925b880c2f1e6cf53bed17d56 | 20000 USD | (coinbase dummy) |
| 0x0bf1f385f08d6bebf0f9765b6c40cd7b37c4ea46 | 15000 USD | (coinbase dummy) |