**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| MAXWELL ROUX, JOHN DUFF III, HENRY SMITH, and BRUNO NISPEL,<br><br>   Plaintiffs,<br><br>   v.<br><br>KRISHNA OKHANDIAR (a/k/a Rohit Okhandiar, Charlotte Fang, Charlie Fang, Wonyoung Jang, Miya, Xinma33, MissJo, and Sonya); REMILIA CORPORATION LLC, a Delaware limited liability company; and REMILIA INDUSTRIES LLC, a Delaware limited liability company,<br><br>   Defendants. | Case No. 1:23-cv-01056-GBW |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Dated: July 2, 2026

**K&L GATES LLP**

Steven L. Caponi (No. 3484)
Matthew Goeller (No. 6283)
600 N. King St., Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com

-and-

Jonathan P. Hersey (admitted *pro hac vice*)
1 Park Plaza, 12th floor
Irvine, CA 92614
Tel.: (949) 253-0900
jonathan.hersey@klgates.com

*Counsel for Plaintiffs Maxwell Roux, John
Duff III, Henry Smith, and Bruno Nispel*

**TABLE OF CONTENTS**

I.    NATURE OF THE CASE AND STAGE OF THE PROCEEDINGS .............................. 1

II.   SUMMARY OF ARGUMENT .................................................................... 3

III.  ARGUMENT ................................................................................. 4

    A.   Defendants Waived Their Rule 12(b)(6) Arguments to Counts IX Through XVIII. .............................................................................. 4

    B.   The SAC Pleads a Viable Claim for Breach of Fiduciary Duty (Count I) .................. 5

    C.   Count II for Declaratory Judgment Pleads a Viable Claim .......................... 9

    D.   Counts III and IV Plausibly Alleges that Defendants Breached the Agreement to Form the Legal Wrapper RemCo Entity. ................................ 10

        1.   The law does not require that the parties have had a meeting of the minds as to the exact or precise amount of equity .............................. 11

        2.   The Remilia DAO Creates an Implied Contract ................................ 12

        3.   The Implied Covenant Good Faith and Fair Dealing.......................... 13

    E.   Plaintiffs' Claim for Promissory Fraud (Count V) Is Well-Pleaded.......................... 14

    F.   The Negligent Misrepresentation Claim (Count VI) is Well-Plead.......................... 15

    G.   The SAC Still States Viable Claims for Promissory and Equitable Estoppel (Counts VII and VIII) ................................................................ 16

    H.   Defendants' Waived Arguments Still Lack Merit ........................................ 16

        1.   Conversation (Count IX)........................................................ 16

        2.   Money Had and Received (Count X)............................................ 17

        3.   Unjust Enrichment (Count XI).................................................. 17

        4.   Tortious Interference with Prospective Economic Advantage Should Not Be Dismissed (Count XII)........................................................ 18

        5.   Defamation (Count XII) and Trade Libel (Count XIV)....................... 19

        6.   FLSA and Delaware Wage Payments and Collection Act (Counts XV and XVI) .................................................................... 20

IV.   CONCLUSION................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cousins v. Goodier*,
283 A.3d 1140 (Del. 2022) ...................................................................................20

*Crescent/Mach I Partners, L.P. v. Turner*,
846 A.2d 963 (Del. Ch. 2000)..............................................................................16

*Dole v. Arco*,
921 F.2d 484 (3d Cir. 1990)..................................................................................21

*Dousman v. Kobus*,
2002 WL 1335621 (Del. Ch. June 6, 2002) ........................................................17

*Drug, Inc. v. Hunt*,
168 A. 87 (Del.1933) ............................................................................................17

*Eppley v. Univ. of Delaware*,
2015 WL 156754 (D. Del. Jan. 12, 2015)......................................................14, 15

*Feeley v. Nhaocg, LLC*,
62 A.3d 649 (Del. Ch. 2012).................................................................................11

*In re Green Field Energy Servs., Inc.*,
610 B.R. 760 (D. Del. 2019), *aff'd sub nom. In re Green Field Energy Servs.,
Inc*, 834 Fed. App'x 695 (3d Cir. 2020) ..............................................................16

*Harmon v. State, Delaware Harness Racing Comm'n*,
62 A.3d 1198 (Del. 2013) .....................................................................................16

*Helios Streaming, LLC, et al. v. Vudu, Inc.*,
2021 WL 254069 (D. Del. Jan 26, 2021), *report and recommendation
adopted*, 2021 WL 1138024 (D. Del. Mar. 25, 2021) ...........................................5

*Hertz Corp. v. Frissora*,
2021 WL 2253526 (D. N.J. June 3, 2021) ..............................................................4

*Israel Disc. Bank of N.Y. v. First State Depository Co.*,
2013 WL 2326875 (Del. Ch. May 29, 2013)........................................................17

*Ke v. DiPasquale*,
828 F. App'x 98 (3d Cir. 2020) ............................................................................12

*Korber Supply Chain US, Inc. v. DOT Holdings Co.*,
2025 WL 485957 (D. Del. Feb. 13, 2025)............................................................15

*Kyle v. Apollomax, LLC*,
　2013 WL 5954782 (D. Del. Nov. 1, 2013) ...................................................................16

*Lattaker v. Rendell*,
　269 F. App'x 230 (3d Cir. 2008) ................................................................................12

*Leyse v. Bank of Am. Nat. Ass'n*,
　804 F.3d 316 (3d Cir. 2015) ........................................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007) ..................................................................................................12

*Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.*,
　2022 WL 610755 (D. Del. Jan. 13, 2022) ..................................................................12

*Nemec v. Shrader*,
　991 A.2d 1120 (Del. 2010) ........................................................................................18

*OpenTV, Inc. v. Pinterest, Inc.*,
　2025 WL 1951842 (D. Del. July 16, 2025) ..................................................................5

*Organovo Holdings, Inc. v. Dimitrov*,
　162 A.3d 102 (Del. Ch. 2017) ....................................................................................19

*P-5 GRA, LLC v. Ivankovich*,
　2025 WL 1483625 (Del. Ch. May 23, 2025) ..............................................................10

*In re Pattern Energy Gp. Inc. S'holders Litig.*,
　2021 WL 1812674 (Del. Ch. May 6, 2021) ................................................................10

*Rheault v. Halma Holdings Inc.*,
　2023 WL 8005318 (D. Del. Nov. 7, 2023) ....................................................................3

*Sarcuni v. bZx DAO*,
　664 F. Supp. 3d 1100 (S.D. Cal. 2023) ......................................................................11

*Segovia v. Equities First Hldgs., LLC*,
　2008 WL 2251218 (Del. Super. May 30, 2008) ..........................................................17

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
　742 F.2d 786 (3d Cir. 1984) ........................................................................................4

*State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*,
　C.A. No. 18-1806-MN-SRF, 2021 WL 1929365 (D. Del. May 13, 2021),
　*report and recommendation adopted*, C.A. No. 18-1806-MN-SRF, 2021 WL
　2212295 (D. Del. June 1, 2021) ...............................................................................4, 5

iii

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012)...........................................................................................12

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
   2019 WL 8641303 (D. Del. Aug. 7, 2019), *report and recommendation
   adopted*, 2020 WL 1527321 (D. Del. Mar. 31, 2020) ...........................................4, 5

*Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*,
   417 F. Supp. 2d 632 (D. N.J. 2006) .......................................................................................4

*Top Victory Invs. Ltd. v. Divx, LLC*,
   2025 WL 2711950 (D. Del. Sept. 23, 2025)............................................................................11

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) ..........................................................................................................9

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
   2008 WL 5352063 (Del. Ch. Dec. 23, 2008)...........................................................................13

*Witmer v. Armistice Cap., LLC*,
   344 A.3d 632 (Del. Ch. 2025)..................................................................................................10

**Statutes**

6 *Del. C.* §§ 15-101–15-1206 ......................................................................................................8

19 *Del. C.* §§ 1101 *et seq.*.....................................................................................................2, 20

28 U.S.C. § 1404(a) ..................................................................................................................1

28 U.S.C. § 1406(a) ..................................................................................................................1

29 U.S.C. § 201, *et seq.*......................................................................................................2, 20

**Other Authorities**

127 Am. Jur. Trials 209 (2012)................................................................................................8

Fed. R. Civ. P. 8(a)(2)..............................................................................................................4

Fed. R. Civ. P. 9(b) .............................................................................................................4, 12

Fed. R. Civ. P. 12...................................................................................................................4

Fed. R. Civ. P. 12(c) ...............................................................................................................5

Fed. R. Civ. P. 12(g)(2)........................................................................................................4, 5

Fed. R. Civ. P. 12(h)(2)................................................................................................................4

I.    **NATURE OF THE CASE AND STAGE OF THE PROCEEDINGS**

Plaintiffs Maxwell Roux ("Roux"), John Duff III ("Duff"), Henry Smith ("Smith"), and Bruno Nispel ("Nispel") (collectively "Plaintiffs") have been cheated out of their interests in the Remilia DOA by defendants Krishna Okhandiar ("Okhandiar") and the two Delaware companies, Remilia Corporation LLC ("RemCorp") and Remilia Industries LLC ("RemIndustries") that Okhandiar surreptitiously formed without Plaintiffs' their involvement, in breaxh of his fiduciary duties to the Plaintiffs as members of the DAO, and despite promises that Plaintiffs would be included in the management of those legal wrapper entities when formed.  Okhandiar also created multiple false signatories to the DAO's online wallet, which he then used to siphon millions of dollars from the DAO's treasury for himself through the companies.  When exposed, Okhandiar wrongfully purported to "fire" Plaintiffs from the DAO and cut them off from the digital art and other contributions they had made, and defamed them to the digital art community, hypocritically labeling them as "thieves," "terrorists" and "extortionists" among other things.  Having wrongfully seized singular control of the DAO's digital assets and treasury, he then sold them to raise more than $20 million of investments that he again drained out of the DAO's treasury from himself, albeit claiming that about a third of the amount was stolen by a "hacker" that gained access to each of the multiple signatures to the wallet that Okhandiar had previously created for himself.  This lawsuit followed.

Plaintiffs filed their original complaint in the Delaware Court of Chancery on September 22, 2023.  Defendants removed it to this Court on September 27, 2023.  On February 13, 2024, a retaliatory lawsuit filed by Okhandiar and RemCorp against Roux, Duff and Smith in the Nevada District Court was transferred to this district pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a).  To avoid having two lawsuits in the same court, the parties stipulated that Defendants would voluntarily dismiss their transferred complaint, that Plaintiffs would file an amended complaint to add certain claims and demands that were otherwise not available in the Chancery Court before the complaint was removed, and that Defendants could refile their claims previously asserted in the Nevada District Court as counterclaims in this single action.  They have not yet.

1

Instead, on April 12, 2024, Defendants filed a partial motion to dismiss some—*but not all*—of the claims for relief the First Amended Complaint ("FAC").  Notably, Defendants did not challenge prior Counts X (Conversion), XI (Money Had and Received), XII (Unjust Enrichment), XIV (Tortious Interference with Prospective Economic Advantage), XV (Defamation), XVI (Trade Libel), XVII (Violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*), or XVIII (Violations of Delaware Wage Payment Collections Act, 19 Del. Code § 1101, *et seq.*).

On March 31, 2026, the Court granted in part and denied in part Defendants' Motion to Dismiss (D.I. 32, "Mem. Op.").  The Court granted the motion with leave to amend as to Counts I (breach of fiduciary duty), III (declaratory relief and injunctions), IV and V (breach of the collective venture agreements and breach of the implied covenant of good faith and fair dealing), VI and VII (promissory fraud and negligent misrepresentation) and XIII (tortious interference with contractual relations).  The Court granted the motion with prejudice as to Count II (constructive trust), but recognized Plaintiffs' ability to request the imposition of a constructive trust as a remedy for other claims.  The Court denied the motion as to Counts VIII and IX (promissory estoppel and equitable estoppel).

Plaintiffs' Second Amended Complaint ("SAC," D.I. 34) addresses each of the Court's prior concerns.  It eliminates the separate Count II for constructive trust, which instead is now requested only as a remedy for other applicable claims.  Plaintiffs also chose to exclude rather than amend the claim for tortious interference with contractual relations (prior Count XIII).  As shown by the filed redline comparison of the SAC to the FAC (D.I. 34-1), the SAC includes substantial amendments supporting the plausible existence and Defendants' alleged breaches of their fiduciary duties, the contract to form the DAO legal wrapper entity, and Defendants' fraud.  The SAC does not make substantive amendments to the Counts that Defendants did not challenge in the FAC, or to which the Court denied the motion.  As such, the SAC now includes the following Counts: (I) Breach of Fiduciary Duty; (II) Declaratory Relief and Injunctions; (III) Breach of Agreement to Form the Legal Wrapper RemCo Entity; (IV) Breach of Implied Covenant of Good Faith and Fair

2

Dealing; (V) Promissory Fraud; (VI) Negligent Misrepresentation; (VII) Promissory Estoppel; (VIII) Equitable Estoppel; (IX) Conversion; (X) Money Had and Received; (XI) Unjust Enrichment; (XII) Tortious Interference with Prospective Economic Advantage; (XIII) Defamation; (XIV) Trade Libel; (XV) Violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and (XVI) Violations of Delaware's Wage Payment and Collection Act.[1]

Defendants' current motion improperly seeks to dismiss claims that were *not* challenged in its prior motion to dismiss parts of the FAC. It also wrongfully reraises challenges to other Counts that the Court denied in the Mem. Op. The Court should rightfully ignore those arguments, although to be sure, Plaintiffs also address their lack of merit at the end of this brief. As to the revised fiduciary duty, contract, and fraud-based claims, Defendants' motion fails to credit the well-pleaded amendments, instead making baseless and conclusory assertions that they are somehow not specific enough. The motion should be denied in its entirety and Defendants should be required to answer each of the SAC's well-pleaded claims.

## II.    SUMMARY OF ARGUMENT

1.    Defendants waived their Rule 12(b)(6) arguments as to current Counts IX through XVI because they did not challenge them in their prior motion. Fed. R. Civ. P. 12(g)(2). Regardless, Defendants' new and mostly conclusory attacks lack merit, and are apparently included in the motion in an unjustified attempt to have the Court dismiss the entire action.

2.    The Court denied Defendants' prior motion as to current Counts VII and VIII for promissory estoppel and equitable estoppel. Mem. Op. at 16-18. Defendants may not reraise the same arguments again.

3.    Count I for breach of fiduciary duty is based on well-pleaded facts supporting the plausible existence of the Remilia DAO. Defendants may not oppose this claim with counter-factual assertions or questions.

---

[1] The SAC mistakenly repeats and skips certain numbers for the amended Counts. The numbers used in this Answering Brief are the correct numbers as the Counts should have been labeled in the SAC.

4.      Count II for declaratory relief is based on the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  This court is not stripped of its jurisdiction to hear this claim because Defendants removed the claim to this Court, especially because none of the amended state laws on which the claim rests require action by the Delaware Attorney General.

5.      Defendants' motion as to the contract claims (Counts III and IV) fail because the SAC now alleges a singular "oral" agreement—as partly evidenced in the writings attached to the SAC—to form the legal wrapper entity, RemCo, which would be integrated into the Remilia DAO. SAC ¶¶ 118-119.  This is different from the four separate equity contracts that were alleged in the FAC.

6.      Defendants' challenges to Counts V and VI for promissory fraud and negligent misrepresentation fail because Defendants cannot factually dispute Okhandiar's specifically-alleged promises or their breach; they merely argue those claims fall with the contract claims, while ignoring the DAO partnership's promise to form the legal wrapper.

## III.    <u>ARGUMENT</u>

### A.      Defendants Waived Their Rule 12(b)(6) Arguments to Counts IX Through XVIII.

As an initial matter, this Court should not consider Defendants' motion as to Counts IX through XVI because "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  "Once a motion to dismiss is filed, the filing party is generally precluded from filing another motion to dismiss raising different defenses that were available to the filing party at the time the earlier motion was filed." *OpenTV, Inc. v. Pinterest, Inc.*, 2025 WL 1951842, at *2 (D. Del. July 16, 2025) (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A).).  This is true even when the second motion to dismiss is in response to an amended pleading.  *See, e.g.*, *id.* at *3, *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303, at *3 (D. Del. Aug. 7, 2019), *report and recommendation adopted*, 2020 WL 1527321 (D. Del. Mar. 31, 2020).

Nor may Defendants argue that their delay and "hide-the-ball" tactic is somehow justified

4

by an appeal to judicial economy.  Courts strictly apply Rule 12(g)(2), *Helios Streaming, LLC, et al. v. Vudu, Inc.*, 2021 WL 254069, at *8 n.19 (D. Del. Jan 26, 2021), *report and recommendation adopted*, 2021 WL 1138024 (D. Del. Mar. 25, 2021), and failure to apply 12(g)(2) "is error."  *State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, 2021 WL 1929365, at *4 (D. Del. May 13, 2021), *report and recommendation adopted*, C.A. No. 18-1806-MN-SRF, 2021 WL 2212295 (D. Del. June 1, 2021).  As the Third Circuit has explained:

> Although some courts and commentators believe that allowing successive pre-answer motions to dismiss avoids delay, this seems to us like short-term thinking....[O]ver the long term, stringent application of Rule 12(g)(2) may motivate defendants to consolidate their arguments in a single pre-answer motion, especially if they know that the district court will not stay discovery while a post-answer Rule 12(c) motion is pending.

*Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 322 n.5 (3d Cir. 2015).

Regardless, to the extent that the Court believes that the motion's arguments against Counts IX through XVI should still be considered, Plaintiffs provide substantive responses below.

### B.    The SAC Pleads a Viable Claim for Breach of Fiduciary Duty (Count I)

Contrary to Defendants' assertion, this claim is not based on the contract to form the legal wrapper, RemCo (as discussed below), but rather from the parties' relationship in the Remilia DAO.  Defendants' challenge therefore rests on a fundamental misunderstanding of both the SAC and Delaware partnership law; attempting to recast the SAC as alleging only an incomplete agreement to form a future business relationship.  Motion at 8.  But that argument ignores the pleadings and the Delaware Revised Uniform Partnership Act.

Delaware courts have consistently held that whether a partnership exists is a question of fact, not law.  The Delaware Supreme Court established this principle early, holding that "what is a partnership is a question for the court, but whether a partnership exists is a question of fact for the jury."  *Jones v. Purnell*, 21 Del. 444, 62 A. 149, 150 (1905); *Ramone v. Lang*, 2006 WL 905347, at *12 (2006) (recognizing there is no singularly dispositive consideration that determines whether a partnership exists between parties; instead, courts must examine all the attendant

5

circumstances); *Hynansky v. Vietri,* 2003 WL 21976031, at \*6 (Del. Ch. Mar. 6, 2003 (holding that the existence of the partnership may be demonstrated by an intention to share profits and losses using acts, dealings, conduct, and admissions of the parties); *see also* 59A Am. Jur. 2d § 185 (2005) ("The absence of a written contract of partnership is not conclusive of whether a partnership exists, but it is an element for serious consideration."). Courts therefore look beyond labels and formalities to the parties' actual relationship and conduct. *JER Hudson GP XXI LLC v. DLE Investors*, LP, 275 A.3d 755 (2022) (examining the actual relationship and conduct of the parties).

At the pleading stage, the question is not whether Plaintiffs have proven the ultimate existence of a partnership, but whether the facts alleged plausibly support the inference that the parties operated as co-owners of a business enterprise for profit and that Okhandiar exercised fiduciary control over assets belonging to that enterprise. The SAC easily satisfies that standard.

Plaintiffs allege that, beginning in September 2021, they and Okhandiar formed Remilia DAO to create, develop, market, and monetize NFT projects. SAC ¶¶ 32-33, 94. They agreed to participate in the development, growth, operation, and management of the enterprise, agreed to share in its profits and losses, and agreed that significant decisions, *including decisions regarding treasury assets*, would be made collectively, and that no single Founding Group member would have unilateral authority to control, access, or distribute DAO assets without the knowledge and consent of at least a majority of the Founding Group. *Id*. ¶¶ 33, 38, 94-99. No single founder was authorized to exercise unilateral control over DAO assets and that treasury transactions were to be approved collectively through multi-signature wallet governance. *Id*. ¶¶ 33, 38(b), 51, 95. Those allegations directly track the statutory inquiry under Section 15-202(a). 6 Del. C. § 15-202(a).

The SAC then describes in substantial detail how the Founding Group actually operated the business, far more than a bare legal conclusion that the parties were "partners." Smith contributed the original Milady intellectual property and served as the collective's lead artist. *Id*. ¶¶ 52-56. Nispel served as chief operating officer and directed sales, marketing, investor relations, and business development efforts. *Id*. ¶¶ 57-61. Roux led financial analysis, project management, investor presentations, and development efforts. *Id*. ¶¶ 62-64. Duff served as lead engineer,

software developer, and manager of a substantial portion of the workforce. *Id*. ¶¶ 65-66. Okhandiar, for his part, was tasked with operational oversight, project management, and treasury duties; but the SAC expressly alleges he was not authorized to act as the sole owner or principal of the Remilia DAO or to exercise unilateral control over the treasury. *Id*. ¶ 51. Those allegations describe founders jointly operating a revenue-generating enterprise, not contractors performing isolated services for a sole proprietor. Together, the Founding Group allegedly developed and monetized multiple NFT projects. *Id*. ¶¶ 67-75.

Moreover, the DAO accumulated a treasury holding stablecoins, ether, NFTs, and other digital assets, with an estimated value exceeding $12.5 million. SAC ¶ 49; *see also id.* ¶¶ 33, 38(b), 70, 79, 95. These facts are especially important because they show actual shared governance and control over business assets, the opposite of Defendants' characterization of an incomplete or indefinite future arrangement.

The objective evidence incorporated into the SAC further supports the partnership allegations. Okhandiar repeatedly referred to Plaintiffs as "co-founders," described them as holding "significant stake[s]" in the enterprise, assigned them officer-level responsibilities, and established a governance structure centered around an Executive Board that would collectively control the organization's strategic affairs and treasury operations. Exs. A (The Smith LOI identifies Smith "as a co-founder with a significant stake in Remilia," requires him to commit full-time efforts to Remilia, and imposes obligations to present new opportunities to Remilia and pursue opportunities that "feed back into Remilia."), B (The Nispel LOI identifies Nispel as "co-founder & Chief Operating Officer," provides executive compensation, and describes governance through an "Executive Board" of co-founders.), and D (The Duff LOI similarly recognizes Duff's role within the same organizational structure and describes governance through co-founder-level control over the DAO's treasury and operations). Those documents characterize Plaintiffs not as ordinary contractors, but as participants in the governance and management of a joint venture. Defendants cannot simultaneously rely on those same documents to defeat Plaintiffs' claims while ignoring the numerous provisions recognizing Plaintiffs as co-founders, executive officers, and

7

holders of significant economic interests.

Defendants' reliance on *Cochran v. Nagle*, *Jackson v. Nocks*, and *Grunstein v. Silva* is misplaced because those cases addressed fundamentally different circumstances. *Cochran v. Nagle*, 1995 WL 819054 (Del. Ch. Feb. 27, 1996). *Cochran* does not hold that a plaintiff must plead a fully integrated written partnership agreement or fixed profit-and-loss percentages to survive a motion to dismiss. Unlike a claim seeking enforcement of a specific contract provision, a partnership may arise by operation of law from the parties' conduct. See 6 *Del. C.* § 15-202(a). Plaintiffs allege that the Founding Group actually formed and operated the DAO, contributed labor and intellectual property, collectively managed its business and treasury, agreed to share profits and losses, and generated millions of dollars through that enterprise. SAC ¶¶ 32–39, 49–75, 94–100.

*Jackson*, another unpublished opinion, is even further afield. There, after a two-day trial, the Court of Chancery found that the plaintiff failed to prove a partnership arising from a romantic couple's purchase and restoration of a single 1970 Chevelle. *Jackson v. Nocks*, 2018 Del. Ch. LEXIS 130, at *1–2 (Del. Ch. Apr. 24, 2018). The court recognized that an essential hallmark of partnership is a "common obligation to share losses as well as profits," (*id*. at *14), but found *after trial* the evidence lacking.

In *Grunstein*, the Court of Chancery addressed an alleged oral partnership concerning the acquisition of a $2 billion nursing-home company after trial, in a dispute among sophisticated businesspeople who had attempted to document aspects of their relationship but never finalized a written agreement defining the alleged partnership. *Grunstein v. Silva*, 2014 WL 4473641, at *1 (Del. Ch. Sept. 5, 2014). The court explained that, "the association of [two] or more persons . . . to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership," and that "there is no singularly dispositive consideration that determines whether or not a partnership existed between two parties." *Id.* at *16; *see also Grunstein v. Silva*, 2014 Del. Ch. LEXIS 167, at *50–54 (Del. Ch. Sept. 5, 2014). The court further recognized that relevant considerations include the parties' actions, prior dealings, and admissions. *Grunstein*,

8

2014 WL 4473641, at *16.  The SAC pleads precisely those outward manifestations: the parties created and operated Remilia DAO as a business; they assigned founder and executive roles; they contributed labor, intellectual property, technical expertise, investor relationships, and operational services; they generated millions in project revenues; they used collective treasury governance; and Okhandiar himself repeatedly described Plaintiffs as co-founders or significant equity participants.  SAC ¶¶ 32–39, 40–48, 50–75, 94–100; Exs. A–D, F.

Defendants' unilateral-withdrawal argument fares no better.  Motion at 9.  The SAC alleges that each Founding Group member retained the right to exit the DAO and remove their lifetime contributions.  SAC ¶¶ 34, 95.  But that allegation does not negate partnership status.  It does not allege that any founder could unilaterally seize treasury assets, override multisig governance, or appropriate enterprise property.

### C.    Count II for Declaratory Judgment Pleads a Viable Claim

Defendants first argue that Count II fails because Plaintiffs have not alleged an enforceable agreement.  Mot. at 11-12.  That argument rises and falls with Defendants' contract arguments, and fails for the reasons stated below.  Defendants' remaining argument that Plaintiffs cannot invoke the Delaware LLC Act provisions cited in Count II because many refer to the Court of Chancery is also without merit.

First, Count II expressly invokes the federal Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes "any court of the United States," in "a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration."  That requirement is satisfied here.  The SAC alleges a live dispute over whether Defendants own or control the Remilia DAO's assets, treasury, and intellectual property; whether the DAO assigned or transferred those assets to Okhandiar, RemCorp, or RemIndustries; and whether Defendants may continue accessing, transferring, or dissipating those assets without Plaintiffs' consent.  SAC ¶¶ 116–119. Those allegations present a concrete controversy between parties with adverse legal interests, not a request for an advisory opinion.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Defendants removed this action to this Court, and

because this Court has independent subject-matter jurisdiction, § 2201 authorizes declaratory relief. Defendants cannot now use their own removal to argue that relief available in Chancery disappeared upon arrival in federal court. In *Carpenter v. Liberty Mutual Insurance Co.*, the District of Delaware rejected the argument that claims within the Court of Chancery's exclusive equitable jurisdiction cannot be adjudicated in federal court. The court explained that, "[i]n exercising their jurisdiction on the ground of diversity of citizenship, the federal courts . . . have not differentiated in their regard for State law between actions at law and suits in equity," and held that "matters of Delaware law arising under [Chancery's] exclusive jurisdiction may also be litigated in a federal court sitting in diversity." *Carpenter v. Liberty Mut. Ins. Co.*, 2024 WL 894909, at *3 (D. Del. Mar. 1, 2024) (quoting *Guaranty Tr. Co. v. York*, 326 U.S. 99, 103 (1945), and citing *IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 939 (Del. Ch. 2014)). Indeed, after discussing *Kloiber*, the defendants in *Carpenter* conceded that the District Court was "not precluded from adjudicating claims" that otherwise sounded in equity. *Id.* at *4. The same principle applies here: references in the Delaware LLC Act to the Court of Chancery do not deprive this Court of authority to adjudicate Count II after Defendants removed the case.

Finally, the Court's prior concern also has been cured. The SAC no longer relies on § 18-112, the provision requiring action "[u]pon motion by the Attorney General" to cancel an LLC certificate for abuse or misuse. *See* 6 *Del. C.* § 18-112. Instead, Count II is based on §§ 18-110, 18-111, 18-205, 18-209, 18-216, and 18-802. SAC ¶ 116. None of those provisions requires an Attorney General action. Sections 18-110 and 18-802 may be invoked by a "member or manager"; § 18-111 broadly covers actions to interpret or enforce LLC agreements, rights, powers, restrictions, duties, and obligations; § 18-205 may be invoked by a person adversely affected by refusal to execute a certificate or LLC agreement; §§ 18-209 and 18-216 concern merger and conversion rights.

### D.    Counts III and IV Plausibly Alleges that Defendants Breached the Agreement to Form the Legal Wrapper RemCo Entity.

Defendants' primary argument for dismissal is that Plaintiffs fail to plead the existence of

10

an enforceable agreement.  Defendants contend that the claim for breach of contract should be dismissed because the material provisions of the contract are so indefinite as to be unenforceable. D.I. 38 ("Op. Brief") at p. 3-4.  Specifically, Defendants argue that the SAC does not specifically identify the equity amount, percentage, or method of determination for any Plaintiff.  *Id.* at p. 4.

That argument fails for two reasons: (1) the law does not require that the parties have had a meeting of the minds as to the exact or precise amount of equity; and (2) Defendant incorrectly focuses on the individual Agreements rather than the overall general partnership created by the actions of the parties.  Similarly, Plaintiffs adequately plead their claim for breach of implied covenant of good faith and fair dealing.

### 1. The law does not require that the parties have had a meeting of the minds as to the exact or precise amount of equity

Defendants again do not provide any legal support or argument that Plaintiffs must plead the exact or precise number of shares, or percentages of equity to which each Plaintiff is entitled. They merely assert that Plaintiffs fail to identify "the number of shares or amount of ownership interest. . . Plaintiffs would receive" other than a "significant" or "substantial stake" in the company. Op. Brief at p. 5 (citing SAC ¶¶ 40, 46, 47, 48).

However, the exact number or percentage of ownership interest in the ancillary RemCo company that each Plaintiff would be entitled to was not the heart of alleged Agreement. The heart of the Agreement was the creation, operation and rights in the assets of the Remilia DAO, and thus the creation of a general partnership, where members of the partnership would share in the profits and losses of said partnership and Remilia DAO treasury. Further, the breach referenced in the Second Amended Complaint, is the breach of the clear agreement between Plaintiffs and Okhandiar to form a legal wrapper.

Indeed, Smith's Letter of Intent ("LOI"), states that Smith was a "*co-founder* with a significant stake in Remilia." SAC at ¶¶ 42-43, Ex. A (emphasis added). Smith's LOI further states that the structure of the Remilia DAO would include "profit-sharing or ownership interests ties to the treasury's valuation." SAC at ¶ 44, Ex. A. Nipsel and Duff's LOI, includes matching language.

11

*Id.* ¶¶ 45 and 48, Exs. B and D.  Okhandiar also made various written promises to Roux regarding the structure of the Remilia DAO, including that Plaintiffs would receive equal shares and that Roux would be a formal co-founder.  *Id.* ¶ 47, Exs. C and F.  With these statements, *all* of the parties understood that they had an implicate agreement to form a legal wrapper, that they internally referenced as RemCo, in which Plaintiffs, alongside Okhandiar, would be equity owners and participate in the corporate governance through their seats on the Executive Board and roles as officers in the company, *or* that they be issued their equity shares and control of RemCorp.  *Id.* ¶ 87.  In short, Plaintiffs and Okhandiar together had an agreement to form a legal wrapper for the treasury of Remilia DAO.  *Id.* ¶ 72.  While Okhandiar acted as a coordinator and liaison between the Founding Group members, at no point did the Founding Group agree that Okhandiar was authorized to act as the sole principal or owner of the Remilia DAO or of the eventual RemCo legal wrapper.  Indeed, the LOI's clearly state that each of the three other co-founders were entitled to a vote in any developments moving forward regarding the Remilia DAO.  *Id.* ¶¶ 33-34, Exs. A, B, and D.  Okhandiar breached the parties' agreement to create a legal wrapper for the Remilia DAO by unilaterally forming RemCo and RemIndustries and subsequently depleting the Remilia DAO's assets without Plaintiffs' input, authorization, or consent.

### 2.  The Remilia DAO Creates an Implied Contract

A general partnership is fundamentally a consensual association of two or more persons carrying on a business for profit as co-owners.  It requires an agreement, either express or implied, to associate in a business relationship with shared profits and liabilities.  As discussed above, such agreement can be informal and need not be in writing.

Here, the parties' conduct clearly created an implied partnership relationship. Smith, Nispel, and Duff's Letters of Intent ("LOIs") each identified them as "co-founder[s] with a significant stake in Remilia." SAC ¶¶ 42–43, 45, 48, Exs. A, B, and D. Each LOI further provided that the Remilia DAO structure would include "profit-sharing or ownership interests tied to the treasury's valuation." SAC, Exs. A, B, D. Okhandiar also made written promises to Roux

12

concerning the Remilia DAO's structure, including that Plaintiffs would receive equal shares and that Roux would be recognized as a formal co-founder. SAC ¶ 47, Exs. C, F. When Okhandiar stepped down following discriminatory remarks, Plaintiffs took control of the Milady Maker project, and, because of their status as co-founders and partners in the Remilia DAO, received signatory rights to the Remilia DAO multi-signature wallet. SAC ¶ 70.

These agreements and actions were not isolated events. Rather, they show that the parties operated collectively under the DAO structure and intended to create a legal wrapper before Okhandiar's wrongful conduct. Okhandiar breached the partnership agreement by forming the corporate entities without Plaintiffs' input or inclusion, contrary to the parties' understanding of how the legal wrapper would be created and operated.

### 3. The Implied Covenant Good Faith and Fair Dealing

Defendants similarly argue that Plaintiffs cannot maintain a claim of breach of implied covenant of good faith and fair dealing because Plaintiffs cannot state a claim for breach of contract. *See* Op. Brief at 7. Defendants do not argue that Plaintiffs fail to adequately allege any other element of the claim but the existence of an enforceable contract. For the reasons stated above, Plaintiffs have sufficiently allege the breach of the agreement to form a legal wrapper, and have therefore the claim for breach of the implied covenant of good faith and fair dealing.

Moreover, a lack of good faith can be shown "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006). The SAC plausibly alleges that Okhandiar's actions were not to benefit the Remilia DAO, but rather his own wallet, providing himself excess of $600,000 worth of funds in his personal fiat account, while subsequently removing Plaintiffs, who had done a majority of the work on the NFT Projects from access to their email accounts, social media accounts, and NFT Project software, data, and information. SAC ¶¶ 103-106. Additionally, through Okhandiar's self-serving actions left the Remilia DAO exposed to an additional theft of $7 million. SAC ¶ 108.

13

### E.     Plaintiffs' Claim for Promissory Fraud (Count V) Is Well-Pleaded

Defendants' attacks on the fraud claims fail for the same reasons as their challenges with the contract claims. Defendants' cite to *Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.,* No. 1:20-CV-25-SB, 2022 WL 610755 (D. Del. Jan. 13, 2022) for the contention that to state a claim for promissory fraud, Rule 9(b) requires Plaintiffs to plead with particularity as to show the promisor had no intention of performing at the time the promise was made.

Defendants seem to misunderstand that the "circumstances" of Defendants' fraud is not whether Defendants issued "substantial" or "significant" equity in RemCorp, but rather that they were denied any managerial control of or any equity in the legal wrapper.  SAC at ¶ 133.  It was by Okhandiar's own admission that each Plaintiff came to believe they would have at least a substantial or significant ownership interest in RemCo once it was formed.  *See* SAC at ¶ 134 (outlining Okhandiar's promises to each Plaintiff).  It was by Okhandiar's own statements that the Plaintiffs, alongside Okhandiar would form a legal wrapper *together*.  SAC at ¶ 35.  It was by Okhandiar's own statements that Plaintiff came to understand the legal wrapper entity would also provide certain legal liability and tax protections for the Founding Group because, as an unincorporated business entity, the Remilia DAO would be treated as a general partnership whereby each of the Founding Members would be subject to pass-through taxation and could be held jointly and severally liable for each of the other Founding Members' actions and the Remilia DAO as a whole.  *Id*.  Plaintiffs have plead a number of facts, which would lead to a reasonable inference that Defendants never intended to perform on the promises they made.

*First*, Okhandiar's own conduct exemplifies that he never intended on performing on his promises.  For instance, he contends that he owned and controlled the Remilia DAO single-handily (SAC ¶ 76), he also the unilaterally incorporated RemCorp without Plaintiffs contrary to his prior statements to each Plaintiff (SAC at ¶ 77), and he later created of RemIndustries with himself as the sole member (SAC at ¶ 78).  Explicitly knowing that he was breaching the promises to Plaintiff these acts were done in secret, not mentioning the formation of the corporate entities, while Plaintiffs continued their work in Remilia, flouting all the promises of future equity, ownership

14

and control of RempCorp and RemIndustries.  SAC at ¶¶ 77-78.

*Second*, Okhandiar by his own conduct, and through his corporate alter-egos, failed to make good on virtually all of Defendants' obligations in the Agreements alleged in the SAC, stopped payments to Plaintiffs and went on to defame them in an attempt to turn the crypto-community against the good-actors.

Moreover, Plaintiffs have alleged with the requisite particularity statements that could lead to a reasonable inference that Defendants intended to defraud Plaintiffs.  Here, Plaintiffs' have provided the specific dates and content of the alleged falsehoods with far greater detail the SAC clearly outlines the specific dates and content of the alleged falsehoods with far greater detail Okhandiar made false statements to Plaintiffs namely about their ability to hold the keys for the multi-signature wallet, and the existence of Plaintiffs' ownernship and roles in RemCorp and falsely portrayed RemCorp as the agreed-upon RemCo entity.  SAC at ¶ 130-131.  Finally, as described above, Okhandiar made various promises to Plaintiffs that included share ownership of, have governance roles with, and be employed by the RemCo, legal wrapper entity.  SAC ¶ 129.

### F.    The Negligent Misrepresentation Claim (Count VI) is Well-Plead

"In Delaware, negligent misrepresentation requires (1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance upon the false information." *Eppley v. Univ. of Delaware*, C.A. No. 13-99, 2015 WL 156754, at *4 (D. Del. Jan. 12, 2015) (citation omitted).

The Negligent Misrepresentation claim is viable because of the alleged fiduciary duties and pecuniary relationship between the parties.  Okhandiar provided false information to Plaintiffs regarding the formation of corporate structure, governance, ownership, and management of RemCo.  SAC at ¶ 146.  Okhandiar also thereby caused Plaintiffs to believe and understand that they held ownership interests in RemCo (in whatever form it might exist), and that they had authority through their signature and private key positions over the multi-signature wallet to jointly

15

control the Remilia DAO's actions, assets and treasury.  SAC ¶ 148.

### G. The SAC Still States Viable Claims for Promissory and Equitable Estoppel (Counts VII and VIII)

The Court previously denied Defendants' Motion as to Promissory and Equitable Estoppel. D.I. 32 at p. 16-18.  Defendants now contend that somehow Plaintiffs have expanded the estoppel claims "far beyond" narrow basis.  That is not true.  The only amended language includes a prayer for relief in the form of constructive trust and clarification regarding the Remilia DAO. *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000) ("A constructive trust is simply one of many conceivable alternative remedies which might be available after trial should plaintiffs prevail on one or more of their theories of recovery.").  The Court recognized Plaintiffs' ability to seek this remedy in the surviving claims.  D.I. 32 at p. 13.

Defendants' renewed argument that the alleged promises and reliance are too indefinite is misguided.  This Court already held that Okhandiar's alleged false statements regarding the NDAs induced Plaintiffs to sign them and caused Plaintiffs financial harm sufficient to survive a motion to dismiss.  D.I. 32 at p. 17.  "[A]n equitable estoppel claim does not depend on an agreement between parties."  D.I. 32 at p. 18.  Moreover, equitable estoppel arises "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment."  *Dousman v. Kobus*, C.A. No. 19258, 2002 WL 1335621, at *5 (Del. Ch. June 6, 2002) (quoting *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990)).  Plaintiffs have adequately alleged that they made actions or forbearances to their detriment in response to alleged misrepresentations.

### H. Defendants' Waived Arguments Still Lack Merit

As previously noted, Defendants' waived and are barred from asserting 12(b)(6) challenges to each of the following claims.  In any case, their cursory and mostly unserious challenges fail on the merits.

#### 1. Conversation (Count IX)

Under Delaware law, conversion is an "act of dominion wrongfully exerted over the

property of another, in denial of his right, or inconsistent with it." *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933). Conversion does not require a " 'subjectively wrongful intent' to be actionable"; a defendant motivated by a mistaken belief may be held liable. *Segovia v. Equities First Hldgs., LLC*, 2008 WL 2251218, at *19 (Del. Super. May 30, 2008). To state a claim for conversion, a party must allege that (i) it has a property interest in the allegedly converted property; (ii) it had a right to possession of the property; and (iii) the defendants wrongfully possessed or disposed of such property as if it were their own. *Israel Disc. Bank of N.Y. v. First State Depository Co.*, 2013 WL 2326875, at *19 (Del. Ch. May 29, 2013). Defendants again fail to read the SAC as a whole. Okhandiar allegedly "made various promises to each Plaintiff that the intellectual property was owned by the Remilia DAO." SAC at ¶ 137. Defendants also ignore the SAC's allegations that Plaintiffs were repeatedly assured they would be co-founders, equity holders, directors, and officers of the Remilia DAO, and therefore would hold ownership interests in its intellectual property. *See, e.g.*, SAC at ¶¶ 9, 33. Moreover, Okhandiar absconded with the entire Remilia DAO treasury, which Plaintiffs were promised they would share in through the partnership's profits and losses. SAC at ¶ 33. Since Plaintiffs have plausibly allege a property interest in, and a right to possession of, the assets in the Remilia DAO wallet and intellectual property of the partnership, the motion as to the conversation claim should be denied.

### 2. Money Had and Received (Count X)

Defendants argue that Plaintiffs' claim for money had and received fails because no enforceable agreement has been pleaded. But even apart from Plaintiffs' position that the parties' general partnership created an enforceable agreement, money had and received is an equitable claim and, like promissory and equitable estoppel, does not depend on the existence of an enforceable contract. Accordingly, the Court should deny the motion as to this claim.

### 3. Unjust Enrichment (Count XI)

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the

17

absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Defendants attempt to argue that because Plaintiffs received a modicum of compensation, they were not unjustifiably enriched. This argument fails on its face. By Defendants logic if a party expected to receive compensation in the amount of $100,000 but instead were provided with $10 dollars, then that Plaintiff could not file a complaint for unjust enrichment. That stance is nonsensical. Regardless, despite Defendants claims, the SAC is clear on the damages. For instance: (1) Smith has not received his full bonuses or any of the 20% of the Bonkler project mint funds, which percentage amounts to approximately $440,000; (2) Nispel has not received his full $125,000 annual salary or any bonuses. He is also still owed an additional $20,000 for his work on Milady; (3) Roux has not received any of the $15,000 for his work on Fumo, which was supposed to be paid in the form of a Milady NFT asset worth $15,000 at the time; and (4) Duff is owed $87,500 in unpaid wages, bonuses, and commissions, including at least $40,000 in unpaid commissions on the Milady project, $17,500 for his work on the Solsprites NFT project that the Founding Group had decided not to pursue, and $30,000 in an unpaid bonus. SAC ¶ 84.

### 4. Tortious Interference with Prospective Economic Advantage Should Not Be Dismissed (Count XII)

To state such a claim for tortious interference with prospective economic advantage, a plaintiff must plead "(a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages ...." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017). While the plaintiff does not need to identify a party by name, the plaintiff must do more than offer "vague statements about unknown customers." *Id.* Defendants somehow miss the entirety of the point. By kicking Plaintiffs out of the business they helped build and lead, Defendants interfered with the prospective business relationship with the RemCo and RemIndustries. Moreover, Defendants' assertion that they did not interfere with prospective investors ignores the SAC's allegations. As alleged, public investors reported that more than $7 million was suddenly and anonymously removed from the Remilia DAO treasury. SAC at ¶ 7. Given Plaintiffs' association with Remilia DAO, such

18

allegations have foreseeably impair their ability to attract investors for future cryptocurrency ventures. The SAC further alleges that Okhandiar undermined third-party investors' trust in Plaintiffs. SAC at ¶ 90. Defendants then appropriated the investor relationships cultivated by Nispel and Roux by converting the tokens in the digital wallet to a fiat currency without Plaintiffs' prior consent or authorization. SAC at ¶¶ 61–62, 104.

### 5. Defamation (Count XII) and Trade Libel (Count XIV)

Contrary to Defendants' assertion, the challenged statements are not merely opinions. Delaware courts distinguish between "broad brush-stroked references to unethical conduct," which may be understood as opinion, and "allegations of specific criminal conduct," which "generally cannot be protected as opinion." *Agar v. Judy*, 151 A.3d 456, 481 (Del. Ch. 2017). That distinction defeats Defendants' argument. The SAC does not allege only loose rhetoric like "looting" or generalized criticism in a business dispute. It alleges that Defendant and those acting at his direction accused Plaintiffs of specific criminal and dishonest acts: "stealing $1 million from Remilia," transferring Remilia funds to personal wallets, "conspiring to extort Remilia," committing "theft and conspiracy to extort," committing "fundamentally criminal acts," planning to "gut the treasury," secretly coding a Bonkler "backdoor" to divert funds to Duff's personal wallet, sabotaging Remilia operations, attempting to "rug" the community, and "st[ea]l[ing] on-chain." SAC ¶¶ 187–196. Those are not vague moral judgments. They assert specific events and conduct which can be tested against blockchain records, smart-contract code, wallet activity, communications, and project records. They are factual accusations, not protected opinion.

The SAC identifies the defamatory statements, alleges publication to the NFT and cryptocurrency communities, pleads falsity, alleges defamatory meaning, and alleges reputational harm to Plaintiffs in the communities where they worked and built the Remilia projects. SAC ¶¶ 187–200. The SAC alleges that Okhandiar published defamatory statements himself, encouraged RemCorp employees, contractors, and agents to publish and repeat similar accusations, directed third parties to post attacks on Plaintiffs, and used alternate "sock-puppet" X accounts to obscure

19

the connection between those accusations and Okhandiar/RemCorp.  SAC ¶¶ 188–196.  Exhibit T is one example: "Charlotte Fang" directs another person to post that Plaintiffs "are not remilia," that "what theyre claiming and doing is insane," and that Plaintiffs were "demanding ownership over all of remilia," while instructing: "Dont post now but for later."  Ex. T.

Count XVI also states a claim for trade libel.  Defendants' only argument is that the SAC does not identify a specific lost customer or business opportunity.  Mot. at 20.  But the SAC alleges more than abstract reputational harm.  It alleges that the statements were published to the Remilia DAO's fan base and online community, that the community viewed, liked, reshared, and commented on those statements, that Plaintiffs are co-founding members with financial interests in the Remilia DAO and its NFT Projects, and that the statements deterred third parties—including consumers of the Projects—from purchasing or supporting Plaintiffs' creations.  SAC ¶¶ 198–204.

### 6.   FLSA and Delaware Wage Payments and Collection Act (Counts XV and XVI)

Defendants contend that the wage claims are insufficient pled because the SAC does not plead the specific terms of employment, the applicable pay periods, and how the claim amounts were calculated.  The SAC outlines the Agreements signed by the Plaintiffs in 2021, the expected salaries and provides the factual basis for the claims of their employee status, in addition to their status as Founders to the Remilia DAO.  SAC at ¶¶ 40-48.  Moreover, Defendants provide no legal support for their contention that the FLSA claim is a non-protected activity.  Additionally, Defendants misstate the claim under the FLSA that complains of (i) unpaid wages from the employing Defendants for all of the unpaid and undercompensated time they worked as required by law, (ii) liquidated damages, (iii) additional liquidated damages for unreasonably delayed payment of wages.  SAC ¶ 212.

## IV.    CONCLUSION

Plaintiffs requests that the Court deny Defendants' Motion to Dismiss in its entirety.  To the extent the Court is inclined to grant any portion of Defendants' Motion, Plaintiffs respectfully requests that the Court grant leave to amend to redress any purported pleading deficiencies.

Dated: July 2, 2026

**K&L GATES LLP**

*/s/ Steven L. Caponi*

Steven L. Caponi (No. 3484)
Matthew Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steve.caponi@klgates.com
matthew.goeller@klgates.com

-and-

Jonathan P. Hersey
(admitted *pro hac vice*)
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, California 92614
Telephone: (949) 253-0900
jonathan.hersey@klgates.com

*Counsel for Plaintiffs*
*Maxwell Roux, John Duff III, Henry Smith,*
*and Bruno Nispel*

21