## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL ROUX, JOHN DUFF III, HENRY SMITH, and BRUNO NISPEL,<br><br>        Plaintiffs,<br><br>    v.<br><br>KRISHNA OKHANDIAR, REMILIA CORPORATION LLC, a Delaware limited liability company, and REMILIA INDUSTRIES LLC, a Delaware limited liability company,<br><br>        Defendants. | C.A. No. 1:23-cv-01056-GBW |

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE
## SECOND AMENDED COMPLAINT

Bradley W. Madsen, Esq.
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
MICHAEL BEST & FRIEDRICH LLP
650 S Main St, Suite 500
Salt Lake City, Utah, 84101
Tel: (385) 695-6450
bwmadsen@michaelbest.com
sjoffee@michaelbest.com
esstrassberg@michaelbest.com

Christopher P. Simon, Esq.
David G. Holmes, Esq.
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel: (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

*Attorneys for Defendants*

Dated: July 17, 2026

# **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................1

II.  ARGUMENT .................................................................................................2

   A.  Rule 12(g)(2) Does Not Prevent the Court from Reaching the Merits. ..........2

   B.  The SAC Still Fails to Plead a Partnership (Count I). ......................................3

   C.  The Declaratory Judgment Claim Fails (Count II). ..........................................6

   D.  The Contract Claims Remain Fatally Indefinite (Counts III and IV). .............7

   E.  The Fraud Claims Do Not Satisfy Rule 9(b) (Counts V and VI). ...................9

   F.  The Estoppel Claims Should Be Dismissed (Counts VII and VIII). ..............11

   G.  Counts IX–XVI Fail on the Merits. .................................................................12

     1.  Conversion (Count IX)..............................................................................12

     2.  Money Had and Received (Count X).........................................................13

     3.  Unjust Enrichment (Count XI)..................................................................13

     4.  Tortious Interference (Count XII)..............................................................14

     5.  Defamation (Count XIII) and Trade Libel (Count XIV). ..........................14

     6.  FLSA and Delaware Wage Claims (Counts XV and XVI). .......................16

III.  CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agar v. Judy*,
151 A.3d 456 (Del. Ch. 2017)......................................................................15

*Cochran v. Nagle*,
1995 WL 819054 (Del. Ch. Feb. 27, 1996) ................................................12

*Cousins v. Goodier*,
283 A.3d 1140 (Del. 2022) .........................................................................15

*Grunstein v. Silva*,
2014 WL 4473641 (Del. Ch. Sept. 5, 2014) ............................................4, 6

*Halperin v. Richards (In re Oldapco, Inc.)*,
622 B.R. 140 (Bankr. D. Del. 2020) .............................................................3

*Hindes v. Wilmington Poetry Soc'y*,
138 A.2d 501 (Del. Ch. 1958).......................................................................8

*Hopkins v. Concorde Career Colleges, Inc.*,
2016 WL 1238775 (D. Del. Mar. 29, 2016) ...............................................10

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997).....................................................................10

*Jackson v. Nocks*,
2018 WL 1935961 (Del. Ch. Apr. 24, 2018)................................................4

*Leyse v. Bank of America National Ass'n*,
804 F.3d 316 (3d Cir. 2015)..........................................................................2

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010). ....................................................................9, 13

*OpenTV, Inc. v. Pinterest, Inc.*,
2025 WL 1951842 (D. Del. July 16, 2025) ...............................................2, 3

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)....................................................................14

*Roma Concrete Corp. v. Pension Assocs.*,
2019 WL 3683561 (E.D. Pa. Aug. 6, 2019) ..............................................................3

*Welsh v. Heritage Homes of DeLaWarr, Inc.*,
2008 WL 442549 (Del. Ch. Feb. 15, 2008) ...............................................................8

## Statutes

19 *Del. C.* § 1101 .....................................................................................................16

28 U.S.C. § 2201 .........................................................................................................6

29 U.S.C. § 201 .........................................................................................................16

6 *Del. C.* § 15-202(a). ................................................................................................4

6 *Del. C.* § 18-110 ....................................................................................................7

6 *Del. C.* § 18-112 ....................................................................................................7

6 *Del. C.* § 18-802 ....................................................................................................7

## Rules

Fed R. Civ. P. 12(g)(2)...................................................................................... 1, 2, 3

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 9, 10, 11

iii

## I. INTRODUCTION

Plaintiffs' Opposition (D.I. 44, "Opp.") confirms the central point of Defendants' opening brief: the Second Amended Complaint ("SAC") does not cure the pleading defects this Court already identified. The Court dismissed the core claims because Plaintiffs failed to plead an enforceable agreement and failed to plead fraud and related theories with the required specificity. Plaintiffs were given leave to amend, but the SAC still rests on the same indefinite promises, the same unsettled equity terms, and the same hindsight inferences that made the First Amended Complaint ("FAC") deficient.

Plaintiffs try to obscure that failure by leading with a procedural waiver argument under Rule 12(g)(2). That argument fails for the reasons below and should not distract from the dispositive question: whether the SAC adds facts curing the deficiencies the Court identified. It does not.

That failure to cure resolves the motion. Plaintiffs still cannot plead a partnership because the allegations and incorporated documents show no definite agreement to operate as co-owners sharing profits and losses. The contract and implied covenant claims remain fatally indefinite because the SAC still does not identify the equity terms, method of determination, or final agreement necessary for enforcement. The fraud claims still fail the specificity requirements of Rule 9(b) because Plaintiffs plead later conduct, not particularized contemporaneous facts

1

showing fraudulent intent when the alleged promises were made. And the remaining claims either depend on the same unpleaded ownership rights or independently lack the required elements. The Court should dismiss the SAC with prejudice.

## II.  ARGUMENT

The Court's prior opinion supplies the framework for this reply. Plaintiffs were not invited to relabel deficient theories; they were given leave to plead facts curing identified defects. The SAC does not do so, and each amended theory fails when measured against the deficiency it was supposed to cure.

### A.  Rule 12(g)(2) Does Not Prevent the Court from Reaching the Merits.

Plaintiffs open with a procedural argument under Rule 12(g)(2), contending that Defendants cannot challenge Counts IX through XVI[1] because those claims were not challenged in the prior motion directed at the FAC. *See* Opp. at 4–5.

In some circumstances, Rule 12(g)(2) may bar a later Rule 12 motion only when the omitted defense or objection "was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Plaintiffs' reliance on *OpenTV, Inc. v. Pinterest, Inc.*, 2025 WL 1951842 (D. Del. July 16, 2025), and *Leyse v. Bank of America National Ass'n*, 804 F.3d 316, 322 n.5 (3d Cir. 2015), is misplaced because

---

[1] Plaintiffs have clarified that Claims IX through XVI include: (IX) Conversion; (X) Money Had and Received; (XI) Unjust Enrichment; (XII) Tortious Interference with Prospective Economic Advantage; (XII) Defamation; (XIV) Trade Libel; (XV) Violations of the Fair Labor Standards Act; and (XVI) Violations of Delaware's Wage Payment and Collection Act. *See*. Opp. at 3 and fn. 1.

those cases address successive motions that "did not cite any new allegations from the Amended Complaint." *OpenTV, Inc.*, 2025 WL 1951842 at *7. Third Circuit courts have clarified that "Rule 12(g) does not bar a second Rule 12 motion when a plaintiff files an amended complaint containing new factual averments." *Halperin v. Richards (In re Oldapco, Inc.)*, 622 B.R. 140, 145 (Bankr. D. Del. 2020) (citing *Roma Concrete Corp. v. Pension Assocs.*, No. CV 19-1123, 2019 WL 3683561, at *3 (E.D. Pa. Aug. 6, 2019)).

Here, Plaintiffs themselves characterize the SAC as containing "substantial amendments" to their fiduciary-duty, contract, and fraud theories (*see* Opp. at 2; *see also* D.I. 34-1 (redlined SAC showing substantial changes)), and the previously unchallenged counts now incorporate and rely on those amended allegations. *See, e.g.*, SAC ¶¶ 157, 163, 168, 175, 181, 186, 202, 206, and 214. Defendants are not advancing defenses previously withheld against a static pleading; they are responding to the *amended theory and facts* Plaintiffs filed only after their previous theories failed. Where an amended complaint materially recasts the operative theory, Rule 12(g)(2) does not bar a defendant from testing claims whose viability is altered by the new pleading.

## B. The SAC Still Fails to Plead a Partnership (Count I).

Plaintiffs now contend that Remilia DAO itself was a partnership because the founders allegedly had distinct roles, shared governance over the treasury,

3

contributed labor and intellectual property, and participated in revenue-generating NFT projects. *See* Opp. at 5–9. Even accepting those allegations, Plaintiffs have not pleaded Delaware partnership with objective assent to definite co-ownership terms.

Under Delaware's Revised Uniform Partnership Act, "the association of 2 or more persons [] to carry on as co-owners a business for profit forms a partnership." 6 Del. C. § 15-202(a). Critical to that analysis is actual co-ownership, objective manifestations of assent, and a common obligation to share both profits *and losses*. *See Grunstein v. Silva*, 2014 WL 4473641, at *16 (Del. Ch. Sept. 5, 2014); *Jackson v. Nocks*, 2018 WL 1935961, at *5 (Del. Ch. Apr. 24, 2018). Founder roles, operational contributions, and business success do not themselves establish a partnership if the economic and governance terms remain unsettled.

*First*, Plaintiffs' own exhibits show that the DAO and share structure were unsettled. The Smith, Nispel, and Duff LOIs each state that Remilia Corporation had not fully incorporated or finalized its corporate infrastructure, and each explains that the DAO structure and how shares would factor in were "still being formalized." D.I. 34-2, at 3, 9, and 15; *see also* SAC ¶¶ 40–48. Those documents are not evidence of a partnership; they show that key economic and governance terms remained open. The same exhibits frame the LOIs as written promises of roles, compensation, and expectations, underscoring the provisional nature of the arrangement. *Id.*

4

*Second*, the co-operative provisions Plaintiffs invoke cut against partnership ownership. The LOIs state that the Remilia Collective intended to operate a co-operative fund, that all members could exit the Collective and withdraw their lifetime contributions, and that the relationship included salaried employees and negotiated fees. *See* SAC ¶ 34; D.I. 34-2, at 2–10, 13–17. That is not how partnership property works. A right to withdraw individual contributions from a co-operative fund is inconsistent with assets belonging to a separate partnership entity in which members were present co-owners.

*Third*, Plaintiffs rely too heavily on conclusory labels. "Co-founder," "Chief Operating Officer," "Lead Artist," "significant stake," and "serious exposure" are titles or aspirational descriptors, not legal conclusions. *See* SAC ¶¶ 40, 42, 45, 47, 48, 83, 134. The question is not whether the parties used startup terminology, but whether they objectively assented to a definite co-ownership arrangement.

*Fourth*, the governance language Plaintiffs invoke is inconsistent with their partnership theory. The LOIs describe a traditional corporate pyramid hierarchy with an Executive Board, a CEO holding two votes, and an executive veto — all while the overall structure remained unsettled. *See* SAC ¶¶ 36, 43; D.I. 34-2, at 2–10. That is not the language of an already formed general partnership. Plaintiffs cannot convert a contemplated corporate chain of command into proof that a Delaware partnership already existed.

In short, Plaintiffs' own narrative and exhibits refute a presently formed partnership with definite ownership and loss-sharing terms. Their authorities do not say otherwise. *Grunstein* confirms the point: although no single factor controls, partnership requires more than a common enterprise or joint undertaking; the hallmark remains a common obligation to share losses as well as profits, together with indicia of control and ownership. *See Grunstein*, 2014 WL 4473641, at *53–54. Even at the pleading stage, Plaintiffs must allege facts objectively establishing partnership formation under Delaware law. The SAC does not.

## C.  The Declaratory Judgment Claim Fails (Count II).

Count II seeks declarations concerning Plaintiffs' supposed rights in the Remilia DAO, RemCorp, and RemIndustries. The problem is not this Court's power to enter declaratory relief; it is that Plaintiffs have not pleaded any substantive right supporting the declarations they request. The Declaratory Judgment Act supplies a remedy for an existing controversy over legal rights, but it does not create the ownership, contract, partnership, or LLC status that Plaintiffs still have not pleaded.

Plaintiffs argue that Count II arises under 28 U.S.C. § 2201 and that a federal court may adjudicate equitable issues after removal. *See* Opp. at 9–10. Even assuming that general proposition, Plaintiffs still must plead the rights to be declared. They have not done so.

6

Plaintiffs argue that they cured the FAC's pleading error, where they relied on 6 Del. C. § 18-112, and that the SAC relies on different sections. *See* SAC at 10. Sections 18-110 and 18-802, however, require member or manager status, and Plaintiffs concede they were never made members or managers of RemCorp or RemIndustries. The remaining LLC Act provisions do not help because Plaintiffs have not pleaded an LLC agreement right, certificate-execution right, merger right, conversion right, or other statutory entitlement independent of the same failed partnership and contract theories. Nor can Plaintiffs avoid that defect by repackaging indefinite equity expectations as declaratory relief. This Court already held that the pleaded equity bargain lacked a meeting of the minds on a material term, Memorandum Opinion at 10 (D.I. 32, "Mem. Op."), and the SAC still does not cure that defect. Without a pleaded partnership interest, enforceable contract right, LLC member or manager status, or other substantive legal entitlement, there is nothing for the Court to declare.

## D.  The Contract Claims Remain Fatally Indefinite (Counts III and IV).

Plaintiffs attempt to cure the contract defects by recasting their claim as a single oral agreement to form a legal wrapper entity while insisting that the DAO already existed as a partnership. *See* Opp. at 10–13. Neither reframing cures the problem. The Court already identified the dispositive defect: "equity ownership was material to the parties, and the parties never had a meeting of the minds as to a

material term of the alleged contract." Mem. Op. at 10. The SAC still pleads a moving target composed of LOIs, chats, NDAs, and later writings, rather than a definite agreement that concluded negotiations.

Under Delaware law, a contract is unenforceable where essential terms are left for future negotiation. *See Hindes v. Wilmington Poetry Soc'y*, 138 A.2d 501, 503–04 (Del. Ch. 1958). Delaware law does not enforce a mere "agreement to agree." *See Welsh v. Heritage Homes of DeLaWarr, Inc.*, 2008 WL 442549, at *8–9 (Del. Ch. Feb. 15, 2008). That is precisely what Plaintiffs plead. One central document is literally an *Agreement to Negotiate* executed in December 2022 concerning Duff's initial shareholding distribution. *See* SAC ¶ 83; D.I. 34-2, Ex. J. (page 33 of 47). A later agreement to negotiate the same equity issue shows no final agreement on those terms had yet been reached.

Nor does the SAC identify a definite time for formation, a final entity form, or the particular agreement that bound the parties. Plaintiffs alternately point to oral promises, LOIs, NDAs, and the Agreement to Negotiate. The Court already recognized that later discussions and writings rehashing the same equity issues suggest that no meeting of the minds had been reached, *see* Mem. Op. at 9–10, and the SAC still does not cure that uncertainty. If the Court cannot determine when the contract was made, what entity was to be formed, and which writing or oral exchange finalized the deal, the claim remains fatally indefinite.

8

Plaintiffs say Delaware law does not require a meeting of the minds as to the exact or precise amount of equity. *See* Opp. at 11. Even if accepted, that would not save their claim. The problem is not just the absence of an exact percentage. The SAC pleads no definite equity amount for any Plaintiff and no method by which a court could determine the amount. Phrases such as "significant stake," "substantial amount of equity," and "serious exposure" are not contractual metrics. The Court's prior holding that equity ownership was material to the parties remains valid, and the SAC does not cure the defect. *See* Mem. Op. at 10.

The implied covenant claim (Count IV) fails for the same reason. The implied covenant requires an underlying contract and operates only as a limited gap-filling doctrine. *Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010). Because the supposed contract remains indefinite at every material point, there is no contract and no gap for the implied covenant to fill.

**E. The Fraud Claims Do Not Satisfy Rule 9(b) (Counts V and VI).**

The SAC also fails to cure Plaintiffs' fraud-based claims. This Court previously held that Plaintiffs' broad date ranges and generalized descriptions of communications did not satisfy Rule 9(b), and that the pleading did not permit the Court to ascertain whether Okhandiar had no intention of performing when the alleged promises were made. *See* Mem. Op. at 14. Plaintiffs' promissory fraud claim (Count V) therefore still requires particularized allegations showing that Okhandiar

9

lacked present intent to perform when the alleged promises were made. *See Hopkins v. Concorde Career Colleges, Inc.*, 2016 WL 1238775, at *3 (D. Del. Mar. 29, 2016). Rule 9(b) still requires Plaintiffs to plead the "who, what, when, where, and how" of the events at issue. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997).

Plaintiffs try to plead intent almost entirely through later events: the later formation of RemCorp and RemIndustries, alleged secrecy surrounding those formations, withholding of compensation, denial of managerial roles or equity, and later ownership and control statements. *See* Opp. at 14–15. Those allegations may matter to other theories, but they do not support an inference that, when the earlier promises were made, Okhandiar already intended not to perform. Rule 9(b) requires particularized facts of contemporaneous fraudulent intent, not hindsight assembled from later disputes.

That distinction matters because promissory fraud turns on state of mind at the time of the promise. A party may later breach, conceal, or seize control without that later conduct proving what he intended at the outset. The SAC still does not identify any contemporaneous fact showing that, when the promises about equity, governance, or RemCo were made, Okhandiar had already resolved not to honor them. And to the extent Plaintiffs rely on later statements about wallet keys, company structure, or ownership roles, this Court already held that such allegations

10

either remain conclusory under Rule 9(b) or are not promissory fraud because they do not involve unfulfilled promises of future performance. *See* Mem. Op. at 14–15.

Count VI fails for a separate reason: negligent misrepresentation requires a pecuniary duty to provide accurate information, and Plaintiffs identify no such duty apart from their failed DAO partnership theory. *See* Opp. at 15. This Court previously dismissed the claim because Plaintiffs had not pleaded an enforceable contract creating such a duty. *See* Mem. Op. at 15–16. The SAC's only new answer is to relabel the same relationship as a partnership. Because Plaintiffs still have not plausibly pleaded a Delaware partnership or other independent pecuniary duty, they have not pleaded an essential element of negligent misrepresentation.

**F.  The Estoppel Claims Should Be Dismissed (Counts VII and VIII).**

The Court previously allowed limited estoppel theories to proceed based on NDA-related inducement and alleged misrepresentations regarding ownership of Remilia. *See* Mem. Op. at 16–18. That narrow ruling does not permit Plaintiffs to transform estoppel into a vehicle for enforcing the same indefinite equity, ownership, governance, and constructive-trust relief that the Court already found inadequately pleaded. *See* Mem. Op. at 9–11.

Plaintiffs contend that "the only amended language" is a prayer for constructive trust relief. Opp. at 16. But that is precisely the problem: Plaintiffs now invoke surviving estoppel labels to seek broad ownership declarations, equity rights,

11

wallet control, and constructive-trust remedies based on the same indefinite promises of a "significant stake," future RemCo equity, and DAO ownership interests. Estoppel cannot supply the material terms missing from Plaintiffs' contract and partnership theories. *See Cochran v. Nagle*, 1995 WL 819054 at *2 (Del. Ch. Feb. 27, 1996) (mere discussions about future business arrangements do not create enforceable obligations); Mem. Op. at 14 (the Court was "unable to ascertain" whether the promisor intended to perform promises that lacked specificity). Because the estoppel counts now seek the same broad relief the Court already rejected, they should be dismissed.

### G. Counts IX–XVI Fail on the Merits.

Despite Plaintiffs' substantive response to Counts IX through XVI, each count fails for independent pleading defects.

### 1. Conversion (Count IX).

To state a conversion claim, Plaintiffs must allege a present property interest in, and right to possess, specific property. Plaintiffs answer by invoking alleged promises that they were co-founders, equity holders, directors, officers, and participants in DAO profits and losses. *See* Opp. at 17. But those alleged rights depend on the same unpleaded partnership or enforceable-contract interest addressed above. A promised future equity or governance role in an unfinalized entity is not a

12

present possessory right to specific DAO assets, treasury funds, NFTs, or intellectual property.

## 2. Money Had and Received (Count X).

Plaintiffs' claim for money had and received fails for the same reason. Plaintiffs must plausibly allege that the funds held by Defendants belong to Plaintiffs in equity and good conscience. Their theory again depends on the premise that Plaintiffs were partners or owners of the DAO treasury, yet the SAC does not plausibly plead a partnership, an enforceable equity agreement, or a definite ownership allocation. Without a present legal or equitable entitlement to identifiable funds, Plaintiffs' assertion that DAO assets should have been jointly controlled is circular.

## 3. Unjust Enrichment (Count XI).

The elements of unjust enrichment require an "enrichment," an "impoverishment," and the "absence of justification." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Plaintiffs respond that partial compensation does not defeat unjust enrichment and identify alleged unpaid compensation amounts for Smith, Nispel, Roux, and Duff. *See* Opp. at 18. But unpaid compensation is not the same theory as unjust retention of DAO equity or treasury assets. To the extent Plaintiffs seek unpaid wages, bonuses, or commissions, they have legal wage or contract theories that rise or fall on their own elements. To the extent they seek equity,

13

treasury assets, or ownership benefits, the claim depends on the same unpleaded partnership or contract rights the SAC fails to establish.

### 4. Tortious Interference (Count XII).

To plead tortious interference with prospective economic advantage, Plaintiffs must allege "the reasonable probability of a business opportunity." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122–23 (Del. Ch. 2017). *Organovo* requires more than "vague statements about unknown customers." *Id.* Plaintiffs' opposition points to generalized investor trust, future cryptocurrency ventures, investor relationships cultivated by Nispel and Roux, and reputational fallout from alleged treasury activity. *See* Opp. at 18–19. That remains too nebulous. Speculative future opportunities do not plead a reasonable probability of a concrete business opportunity, and Plaintiffs identify no specific investor, transaction, terms, or causal act by RemCorp or RemIndustries that prevented an opportunity from materializing.

### 5. Defamation (Count XIII) and Trade Libel (Count XIV).

Plaintiffs try to avoid the opinion defense by characterizing the challenged statements as specific accusations of theft, extortion, criminal conduct, a Bonkler backdoor, and on-chain stealing. *See* Opp. at 19–20. Even so, the SAC does not plausibly plead actionable defamation as to Defendants. The alleged statements arose in an acrimonious public dispute over wallet control, treasury transfers, intellectual property, and competing claims to Remilia; in that context, charged

14

words such as "theft" and "extortion" are often understood as rhetorical characterizations of the parties' dispute rather than provably false statements of fact. *Agar v. Judy*, 151 A.3d 456, 480–81 (Del. Ch. 2017); *see also Cousins v. Goodier*, 283 A.3d 1140, 1153–54 (Del. 2022) (distinguishing actionable statements of fact from protected expressions of opinion).

The defamation claim also fails because Plaintiffs do not adequately plead falsity and attribution for the full set of statements they challenge. Some accusations track the existence of a real dispute over control of Bonkler smart contracts, treasury demands, wallet activity, and Plaintiffs' demand for ownership and governance rights; substantial truth or disputed interpretation cannot be converted into defamation merely by pleading a harsher characterization. And to the extent Plaintiffs rely on statements by employees, contractors, agents, third parties, or supposed sock-puppet accounts, the SAC relies on conclusory attribution rather than facts making it plausible that each statement is chargeable to Defendants. Plaintiffs cannot plead defamation by aggregating statements, speakers, and accounts; they must plausibly allege which actionable false statement by which Defendant caused which injury.

The trade libel claim is even thinner. Plaintiffs allege reputational harm in the NFT and cryptocurrency communities. *See* Opp. at 19–20. But trade libel requires specific pecuniary loss, not generalized community backlash. The SAC does not

15

identify a lost customer, lost sale, lost investor, or other concrete economic opportunity caused by a particular false statement.

## 6. FLSA and Delaware Wage Claims (Counts XV and XVI).

Plaintiffs' wage claims under the FLSA (29 U.S.C. § 201 *et seq.*) and Delaware's Wage Payment and Collection Act (19 Del. C. § 1101 *et seq.*) require a pleaded employment relationship with the Defendants who allegedly owed the wages. The SAC does not plead that relationship with the required factual detail. It does not identify when Plaintiffs were hired, the specific employment terms, applicable pay periods, work schedules, which Defendant employed Plaintiffs, or how the claimed amounts were calculated. Plaintiffs point to 2021 agreements, expected salaries, unpaid amounts, liquidated damages, and delayed payment, but those allegations do not fill the basic employment-status and wage-calculation gaps.

The wage claims also conflict with Plaintiffs' own merits theory. Plaintiffs portray themselves as co-founders, equity owners, DAO governance participants, and treasury decision-makers when seeking ownership and fiduciary relief. Those allegations point to co-venturer or independent-contractor status, not employees subject to wage-and-hour control. The SAC therefore fails both because it omits necessary employment details and because its own theory is inconsistent with employee status.

16

## III.  CONCLUSION

Dismissal should be with prejudice. Plaintiffs have had multiple opportunities to plead actionable claims arising from the same 2021 and 2022 events. The Court identified the core defects and granted leave to amend, but the SAC still lacks definite equity terms, a final agreement, and particularized fraud facts. Defendants respectfully request dismissal of the Second Amended Complaint with prejudice.

Dated: July 17, 2026

**CROSS & SIMON, LLC**

*/s/ David G. Holmes*
Christopher P. Simon (No. 3697)
David G. Holmes (No. 4718)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Tel: (302) 777-4200
csimon@crosslaw.com
dholmes@crosslaw.com

-and-

Bradley W. Madsen, Esq.
Steven J. Joffee, Esq.
Evan S. Strassberg, Esq.
**MICHAEL BEST & FRIEDRICH LLP**
650 S Main St, Suite 500
Salt Lake City, Utah, 84101
Tel: (385) 695-6450

*Attorneys for Defendants*
*Krishna Okhandiar, Remilia Corporation*
*LLC, and Remilia Industries LLC*

17

## CERTIFICATION OF WORD COUNT

Pursuant to paragraph 16 of the Court's Scheduling Order (D.I. 27) and the Stipulation and Order Regarding Enlargement of Word Count for Briefing on Defendants' Motion to Dismiss (D.I. 45), entered by the Court on July 9, 2026, I hereby certify that this brief contains no more than 4,000 words, excluding the parts of the brief exempted by Federal Rule of Civil Procedure 7 and the Court's rules.

The applicable word limit for this reply brief is 4,000 words, as stipulated by the parties and entered by the Court on July 9, 2026. This certification is based on the word-count feature of the word-processing program used to prepare this filing.

Pursuant to paragraph 17 of the Court's Scheduling Order, size 14-point font of the style Times New Roman is used.

/s/ David G. Holmes
David G. Holmes (No. 4718)

18